James C. Watson (13395)
JCWatson@traskbritt.com
Glenn R. Bronson (7362)
GRBronson@traskbritt.com
H. Dickson Burton (4004)
hdburton@traskbritt.com
TRASKBRITT, PC
230 South 500 East, Suite 300
Salt Lake City, UT 84102
Tel: (801) 532-1922
Fax: (801) 531-9168

Daniel W. McDonald (*Admitted Hac Vice*)
*DMcDonald@merchantgould.com*
Peter M. Selness (*Admitted Pro Hac Vice*)
pselness@merchantgould.com
MERCHANT GOULD P.C.
2200 Fifth Street Towers
150 South Fifth Street
Minneapolis, MN 55402-4247
Tel: (612) 332-5300
Fax: (612) 332-9081

*Attorneys for Plaintiff Crystal Lagoons U.S. Corp.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CRYSTAL LAGOONS U.S. CORP., <br><br> Plaintiff, <br><br> vs. <br><br> CLOWARD H2O LLC, <br><br> Defendant. | **FIRST AMENDED COMPLAINT** <br><br> Case No. 2:19-cv-00796 <br><br> Magistrate Judge:  Evelyn J. Furse <br><br> **[Jury Trial Demand]** |

Plaintiff Crystal Lagoons U.S. Corp. ("Crystal Lagoons"), through its undersigned

attorneys, for its Complaint against Defendant Cloward H2O LLC ("Cloward H2O") alleges as

follows:

1

**THE PARTIES**

1.      Crystal Lagoons is a Delaware corporation with its principal place of business at 2 Alhambra Plaza, PH1B, Coral Gables, FL 33134.

2.      Cloward H2O is a Delaware corporation with its principal place of business at 2696 University Avenue, Suite 290, Provo, Utah 84604.

**JURISDICTION**

3.      This is an action for patent infringement arising under the Acts of Congress relating to patents, 35 U.S.C. §§ 271, *et seq.*

4.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

5.      This Court has personal jurisdiction over Cloward H2O because Cloward H2O has a principal place of business in Provo, Utah.

6.      Venue is proper in this District under 28 U.S.C. §1400(b) because Cloward H2O resides in this district, having its principal place of business here.

**BACKGROUND**

The Patent in Suit

7.      Crystal Lagoons creates innovative large water bodies for recreational use, including swimming and bathing and the practice of water sports, and known for their high-transparency clear water and cleanliness at low costs. On information and belief, all man-made lagoons with clear waters used for direct contact recreational purposes such as swimming and bathing and also for the practice of water sports around the world are using Crystal Lagoons technology.

8.      Crystal Lagoons provides for making such recreational water bodies under the Crystal Lagoons® trademark (e.g. U.S. Reg. No. 3881936). Among other things, Crystal Lagoons' systems and the accompanying technology provide clear water, permit different zones for different recreational uses, and keep water clean in an economic and environmentally beneficial way compared to options previously available.

9.      The first system built using the proprietary technology at San Alfonso del Mar, Chile, revolutionized the surrounding recreation area, creating a beautiful venue for bathing and other water activities and spawning further development in the surrounding area including promenades, restaurants, and other facilities. An aerial view of the facility is shown below:







10.     Crystal Lagoons owns all substantial rights in intellectual property in the U.S.
including designs and several patents directed to such water systems and related structures,
methods and technology such as business methods and water treatment related methods and
systems, including the patent currently at issue in this lawsuit, United States Patent No.
8,062,514 (the "Patent in Suit" or "'514 Patent), titled: "Structure to contain a large water body
of at least 15,000 m3". Crystal Lagoons also owns the exclusive rights including but not limited

to the right to make and sell products in the U.S. that incorporate the licensed technology, including making and selling structures incorporating artificial bodies of water used for swimming and recreation. Crystal Lagoons owns all substantial rights in other patents for the technology which may be added to this complaint at a later date include:

- U.S. Patent No. 9,708,822, titled: "Process to maintain large clean recreational water bodies"

- U.S. Patent No. 8,753,520, titled: "Localized disinfection system for large water bodies"

- U.S. Patent No.7,820,055, titled: "Process to maintain large clean recreational water bodies"

- U.S. Patent No. 8,465,651, titled "Sustainable method and system for treating water bodies affected by bacteria and microalgae at low cost"

11.     Crystal Lagoons and related entities own more than 2,000 patents worldwide in more than 190 countries and territories that protect its valuable and proprietary technology and more than 350 designs. Crystal Lagoons reserves the right to assert claims for relief due to Cloward H2O's actions regarding patents other than the '514 Patent. On information and belief, Cloward H2O infringes one or more of these additional patents and intellectual property.

12.     On November 22, 2011, the United States Patent and Trademark Office ("PTO") duly and legally issued the '514 patent, entitled Structure to Contain Large Water Body of at Least 15,000 M³, to Crystal Lagoons' related company, Crystal Lagoons Corporation LLC. In 2012, Crystal Lagoons (Curacao) B.V. received by assignment all right, title and interest in the

'514 patent, by way of assignment recorded in the U.S. Patent and Trademark Office March 8, 2013.  A true and correct copy of the '514 patent is attached hereto as Exhibit A.

13.     Crystal Lagoons, the Plaintiff here, entered an Agreement in November 19, 2019 with Crystal Lagoons (Curacao) B.V., providing that the Plaintiff is the exclusive licensee of the Crystal Lagoons United States Intellectual Property (the "Crystal Lagoons US IP" as defined in such agreement), which includes the '514 Patent with all rights to enforce, sue and collect past and future damages for infringement of the '514 Patent. That November 19, 2019 Agreement substituted for and superseded the prior agreement which predated the original complaint in this case.  By its terms the November 19, 2019 agreement rendered the prior agreement null and void. In the prior agreement, the Plaintiff here, Crystal Lagoons, also received an exclusive license and all rights to sue and collect past and future damages for infringement of the '514 Patent.

14.     In December 2019 Crystal Lagoons (Curacao) B.V., due to a comprehensive international restructuring process, migrated to the United States and converted into a Delaware corporation called Crystal Lagoons Technologies, Inc., while retaining ownership of the title in the '514 patent.

15.     The '514 Patent claims priority to U.S. patent application no. 11/819,017, filed on June 25, 2007. The '514 Patent also claims priority to Serial No. 3225-2006, filed November 21, 2006 in Chile.

16.     The invention described and claimed in the Patent in Suit was the result of years of research and development by Crystal Lagoons. The invention represents a leap forward in recreational water system technology with a disruptive innovation compared to the prior art.

17.     As one example of the dramatic improvements of the first project, which resulted from using the patented technology, the above-referenced project in Chile previously used another company to provide the water quality technology. That alternative technology left the water green and murky, lacking transparency and turquoise color, as shown in the images below:

Figure 1: Initial Frustration: Murky water with a technology that did not work



18.     Crystal Lagoons' founder and the named inventor on the patent in suit, Fernando Fischmann, was left with this lagoon with poor water quality using the prior art technology.

19.     Before Mr. Fischmann invented the technology at issue, conventional wisdom was that high-transparency, clear water bodies for direct contact recreational purposes of large magnitudes could not be built and operated. Mr. Fischmann talked to renowned companies in the field from around the world, but none had a viable solution. In fact, he was told that the technology he was seeking did not exist and could not be developed. Instead, Mr. Fischmann was told that the only options were to use technologies then in use for large bodies of water at locations such as golf courses, parks, dams, and reservoirs, which did not provide the desired clear water with the aspect of tropical waters or swimming pools, suitable for recreational purposes, or conventional swimming pool technologies which would require massive amounts of

concrete, piping installations, filtration and circulation equipment, to maintain the desired look

and use on a scale which was orders of magnitude larger by volume than a typical swimming

pool. For example, the San Alfonso del Mar project shown above is a 20 acre lagoon which uses

enough water by volume to fill 6,000 standard swimming pools.

20.     Mr. Fischmann, a trained biochemist, spent several years developing the

revolutionary technology that solved the problems of the preexisting technologies. His invention

is described and claimed in the '514 patent and in all patents developed by Crystal Lagoons.

21.     The patented, disruptive technology allows for the design, construction and

operation of sustainable, clear lagoons of virtually unlimited sizes anywhere in the world and at

very low costs compared to prior systems. The technology uses less concrete, as the

implementation of very large, thick concrete surfaces has technical and structural problems in

addition to very high costs. In addition, conventional pool filtration systems require large

filtration equipment and a complex piping network in order to homogeneously filter the entire

water body. The technology enables the use of agglomeration of contaminants into particles that

sink to the bottom and are then removed without the complex piping network and filtration

equipment required for conventional swimming pools.

22.     The technology is patented worldwide to protect the innovation, today having

more than 600 projects in operation, design, construction or negotiation worldwide.

23.     The uniqueness of the technology was reinforced commercially when the clear

Lagoon in San Alfonso del Mar, 20 acres in area and 1 kilometer (0.62 miles) in length, was

awarded the 2007 Guinness World Record for the largest "swimming pool" in the world because

its cleanness and transparency properties were similar to swimming pools.

*Figure 2: San Alfonso del Mar*



24.     Crystal Lagoons pioneered and developed a market for large bodies of clear water used for recreational purposes including swimming and bathing. Several projects powered by Crystal Lagoons technology are operational in the U.S., and several more are operational worldwide. See below some photos of operational projects for reference:

*Figure 3: Balmoral, TX*



*Figure 4: Epperson Ranch, FL*



*Figure 5: Sole Mia Lagoon, FL*



25.     Crystal Lagoons has invested substantial amounts of time and resources developing and growing the market for large bodies of clear water, and educating customers and those in the development industry regarding this market and the benefits associated with it. Indeed, Crystal Lagoons remains the exclusive successful, non-infringing provider in the market. The market was created by Crystal Lagoons and thus, has also grown as a result of Crystal Lagoons' efforts.

26.     The Crystal Lagoons technology has been the reason for a number of awards issued to Mr. Fischmann and the Crystal Lagoons companies, including the Best Real Estate Innovation awarded by Overseas Property Professional English magazine, Ernst & Young Innovator of the Year and Innovation of the Year from the Stevie® Awards (the World's Premier Business Award Competitions), and the Real Innovator Award from the London Business School, among others. He has also been invited as the keynote speaker to several conferences and universities throughout the world to discuss the technology and how this innovation created a new concept, including in the U.S. Harvard, MIT, Babson College, Duke, UCLA, the University of California at Berkeley, and in the APEC Conference (U.S.).

27.     Cloward H2O has designed and engineered water projects around the world including water parks, lazy rivers, and spas. However, Cloward H2O has never before designed or built a facility which incorporates and maintains clarity and cleanliness for a large body of water similar to the clarity and cleanliness of lagoons using Crystal Lagoons technology for direct contact recreational purposes such as bathing, as is found at the accused, infringing Hard Rock Hollywood project, which was inaugurated in October 2019.

**After Crystal Lagoons provided a proprietary design for the Hard Rock Hollywood Project and was the presumptive design company for the Project, Cloward H2O took the project from Crystal Lagoons and made the infringing structure now found at the Project.**

28.     In about late 2015, Hard Rock Seminole (HRS) d/b/a Seminole Gaming was planning an expansion project for their Hollywood, Florida Hard Rock Hotel & Casino location (the "Hard Rock Hollywood Project"). Even before such planning began, Crystal Lagoons had a signed project involving Hard Rock Hotels & Casinos-- Hard Rock Cancun, which is now in the design stage. Crystal Lagoons provided considerable valuable technical information to Hard Rock Hotels & Casino and its vendors in connection with the Cancun project as well as the Hard Rock Hollywood Project.

29.     EDSA, the landscaping firm for the Hard Rock Hollywood, Florida project, contacted Crystal Lagoons through its Miami office, to request a proposal for including a clear lagoon at the Hollywood site. EDSA has worked on other projects with Crystal Lagoons using patented and proprietary Crystal Lagoons technology as the landscaping/architectural company for these prior projects. One of EDSA' principals, Mrs. Hoffman, visited Chile and met with Crystal Lagoons' technical staff and visited operational lagoons, obtaining information about the Crystal Lagoons' concept and technology. In addition, the architect working in Crystal Lagoons at the time and who was in charge of this project, left the company and was then hired by EDSA and may have continued to be involved in the design of this project even though he had a non-compete clause in his contract with Crystal Lagoons.

30.     The original site of the Hard Rock Hollywood Project can be seen below in an annotated Google Earth aerial view, which included a retention pond:

*Figure 6: Original Site - Google Earth Aerial View*



31.    The original plan of the project sent by EDSA did not include a clear lagoon or anything similar, but rather included conventional pools and cabanas, keeping a large portion of the retention pond untouched, as shown in the annotated figure below:

*Figure 7: Original Plan for the project sent by EDSA*



32.     Crystal Lagoons proposed replacing the retention pond with a clear, clean tropical style lagoon to which Hard Rock Seminole agreed in concept. Crystal Lagoons' proposal included a clear lagoon of approximately four acres in size, and Hard Rock indicated it had space to relocate the retention pond.

33.     Crystal Lagoons sent a proposal and concept design to Hard Rock Seminole, which included replacing the retention pond with an elongated clear lagoon for the practice of water sports. The documents bear a copyright notice as proprietary to Crystal Lagoons, as indicated in the below annotated figure.

*Figure 8: Proposal sent to HRS*



35.     Thereafter a series of meetings and calls took place between EDSA and Crystal

Lagoons, which resulted in Crystal Lagoons proposing a lagoon that covered the complete

retention pond with an elongated shape, as it can be seen in the annotated figure below:

*Figure 9: Final proposal sent to HRS*



36.     To protect its confidential information, in about April 2016, Crystal Lagoons sent a non-disclosure agreement (NDA) for HRS's signature, which was returned signed on behalf of Seminole Gaming/HRS. HRS signed a modified version of the NDA also in about April 2016.

37.     Crystal Lagoons also sent NDA's to the EDSA and architects Klai Juba. These companies signed and returned copies of the NDAs to Crystal Lagoons. The NDAs cover any work with third parties, and specifically mention that no Crystal Lagoons information can be provided to Cloward H2O. Cloward H2O knew or should have known about these NDA's, at least because Cloward H2O was actively engaged in communications involving Crystal Lagoons at the time the NDA's were entered, and knew Crystal Lagoons considered its technical information about the water technology to be valuable and proprietary.

16

38.     In mid-2016, Crystal Lagoons understood that all entities involved with the project considered Crystal Lagoons to be the designer of the project and that Crystal Lagoons would be involved as a vendor. Later in 2016, however, Crystal Lagoons learned that a bid had gone out for the project to several General Contractors, the bids including a clear lagoon as proposed by Crystal Lagoons. Crystal Lagoons learned of the bidding request through receiving many calls from contractors asking for prices of the liner, technology, etc. Crystal Lagoons learned that plans were sent to possible contractors for the pools and other facilities of the Casino and Hotel, showing parts of the lagoon labeled as "Crystal Lagoon" as shown, for example, in the annotated figures below:

*Figure 10: Reference in EDSA Plans to "Crystal Lagoon"*





40.   Those plans made numerous references to the lagoon as a "Crystal Lagoon"

41.     After Crystal Lagoons saw the above plans, it contacted HRS. HRS represented to Crystal Lagoons that they were building a swimming pool similar to what was being built in the existing hotel, and possibly the retention pond, and what they were planning was not similar to a Crystal Lagoons lagoon. The area of the original pool of the Hard Rock hotel was much smaller than the lagoon Crystal Lagoons has proposed—only about 1,500 m².

42.     Crystal Lagoons thereafter wrote to HRS to confirm HRS was not doing an artificial clear lagoon in the project. HRS did not dispute Crystal Lagoon's understanding.

43.     Meanwhile, unbeknownst to Crystal Lagoons, Cloward H2O and the resort owner, Seminole Hard Rock Hotel & Casino, conspired to "Fast-Track" the project without Crystal Lagoons' involvement. See www.construction-today.com/sections/commercial/3696-seminole-gaming-seminole-hard-rock-hotel-casino-hollywood, which mentioned that "it requires a consolidated effort to complete well over a billion dollars of work in place on a fast track schedule". Such "fast-tracking" was only possible because Cloward H2O used Crystal Lagoons' design work and technology.

44.     Crystal Lagoons later, in about the summer of 2017, received information indicating that HRS, contrary to its prior representation, was having built a large swimming/recreational sports lake, located where the retention pond had been (just as Crystal Lagoons has proposed). HRS solicited contractors, including Defendant Cloward H2O, using the concept and plans derived from Crystal Lagoons.

45.     Cloward H2O used confidential, valuable information provided by Crystal Lagoons to third parties including EDSA and Hard Rock Seminole to copy significant aspects of

the Crystal Lagoons design and technology. On information and belief, Cloward H2O and EDSA are partners and have been involved in many projects together.

46.     On information and belief, Cloward H2O had access to the construction plans and operation details of Crystal Lagoons technology through one of its signed and already operational projects, even though there are confidentiality clauses within its licensing agreements associated with such projects.

47.     Cloward H2O provided the design of the large lagoon which had been falsely represented to Crystal Lagoons as being built and to be operated as a swimming pool. In fact, the facility uses patented Crystal Lagoons technology for construction and operation.

48.     Furthermore, this project was not approved under the conventional permitting process for a lagoon of this type in Florida, as it is located within tribal land which exempts them to go through a normal regulatory process and public information acts which would have allowed Crystal Lagoons to review plans and permits previous to the construction of the lagoon. As a result, information about the project that would normally be publicly accessible was not so accessible to Crystal Lagoons.

49.     The project has now opened and is operational.

50.     On information and belief, Cloward H2O has entered and seeks to expand its entry into the market for large water structures for swimming and recreational purposes. Rather than put in the time and resources necessary to independently develop a distinct and innovative structure and system like Crystal Lagoons did, Cloward H2O instead has chosen to take advantage of the innovative development work performed by Crystal Lagoons and claimed in the Patent in Suit.

## COUNT I – INFRINGEMENT OF THE '514 PATENT

51.     Crystal Lagoons incorporates Paragraphs 1-49 by reference as if set forth fully as part of this count.

52.     Cloward H2O has infringed and induced infringement, and continues to infringe and induce infringement, literally and/or under the doctrine of equivalents, of at least independent claim 1 of the '514 patent by making or selling the Hard Rock Hollywood Project clear lagoon and inducing others to make, use and sell the Hard Rock Hollywood Project lagoon.

53.     Cloward H2O originally was involved in the Hard Rock Hollywood Project but only as the designer of the conventional water features, including the swimming pools overlooking cabanas. Cloward H2O later took over the design of the infringing large clear lagoon based on Crystal Lagoons concept and technology.

54.     Claim 1 of the '514 Patent states as follows (each technical feature has been numbered for ease of reference):

A structure to contain a large water body, including a water body larger than 15,000 m³ (**feature 1**), for recreational use with color, transparency and cleanness characteristics similar to swimming pools or tropical seas (**feature 2**), wherein the structure includes a bottom and walls covered with a plastic liner made of a non-porous material able to be thoroughly cleaned (**feature 3**); wherein the depth of the structure to the bottom is about 0.5 meters or higher (**feature 4**), wherein the structure includes a system of skimmers for the removal of impurities and surface oils (**feature 5**), a fresh water feeding pipe system that allows entrance of fresh water and results in water removal by displacement of surface water through the skimmer system (**feature 6**), and a pumping system including a

coupling means connected to a moveable suction device for cleaning the plastic liner (**feature 7**).

55.     Cloward H2O is the "aquatic designer" (see https://blooloop.com/news/cloward-h2o-hard-rock-hollywood/) for and has built at the Hard Rock Hollywood site a structure to contain a large lagoon, that as required by the Crystal Lagoons' patent, has color, transparency and cleanness characteristics similar to swimming pools or tropical seas, as depicted in the following image:

*Figure 11: Hard Rock Hollywood Lagoon 1*



56.     The body of water designed and built by Cloward H2O is more than 15,000 m³ (**feature 1**). The body of water is for recreational use, including swimming (**feature 2**). The water, as depicted above, has color, transparency and cleanness characteristics similar to swimming pools or tropical seas (**feature 2**). The accused structure further includes a bottom and walls covered with plastic liner made of non-porous material able to be thoroughly cleaned (**feature 3**). The liner is depicted in the photos below obtained during construction:

Figure 12: Plastic liner at the lagoon during its installation process



Figure 13: Liner being installed directly over soil at Hard Rock Lagoon, during the installation

process



Figure 14: Hard Rock Lagoon's Inner Surface covered with a liner



57.     The depth of the accused structure is more than 0.5 m (**feature 4**), which is evident from at least the following figure:

*Figure 15: Person in the lagoon*



58.     The accused structure includes a system of skimmers for removal of impurities and surface oils (**feature 5**) as seen in the following Figure:



*Figure 16: Skimmers*



59.     The accused structure also includes a fresh water feeding pipe that allows entry of fresh water and results in water removal by displacement of surface water through the skimmer system (**feature 6**).

*Figure 17: Fresh water feeding pipes*



60.     The accused structure's system includes a pumping system connected to a moveable suction (vacuum) device for cleaning the plastic liner (**feature 7**) as seen in the following figures 16, 17, 18 and 19.

*Figure 18: Pumping system connected to a moveable suction device*




*Figure 19: The vacuum system operated by a boat*



*Figure 20: Diver operating the suction device*



*Figure 21: moveable suction (vacuum) device connected to a pumping system:*



61.     Cloward H2O touts its involvement in building water projects under its management. Its website clowardh2O.com states, "We specialize in all things water. Our team's dedicated attention touches every aspect of a project, starting with the planning stages and powering through final implementation and maintenance." Cloward H2O's actions involving making and using the accused system thus meets all elements of claim 1 of the '514 patent and Cloward H2O infringes that patent.

62.     Regarding the different ways to maintain water bodies, it is important to understand that in order to eliminate suspended particles from recreational water bodies, two different technologies are used: (1) Traditional swimming pool filtration technologies that is usually applied in relatively small water bodies that consists of a centralized filtration system and a large number of inlets/outlets and piping network located in the structure of the water body in order to allow the filtration of the entire volume of water homogeneously and efficiently, and (2) the use of flocculants to flocculate suspended particles that fall into the bottom and are then removed by a suction device, which is usually applied in larger water bodies and is part of Crystal Lagoons technology.

63.     On information and belief, the Hard Rock lagoon was previously designed as a conventional swimming pool with a swimming pool filtration system and a large number of inlets and outlets to filter the entire volume of water, and therefore would not infringe Crystal Lagoons patents, however, from what it has been observed at the site there would not be a traditional filtration system since there is a small number of inlets and outlets that would not allow filtering the entire volume of water, as well as not having the proper amount of filtration systems for this purpose.

64.     The company that has done or is doing the current cleaning operations of the Hard Rock Hollywood Project lagoon is a company that operates at least two lagoons powered by Crystal Lagoons technology.

65.     Crystal Lagoons is concerned that its image may be damaged by Cloward H2O's infringing acts, as on information and belief, aspects of the implementation of the infringing technology may involve undesirable environmental impacts that are avoided when Crystal Lagoons controls the design and implementation of the technology. This harm risks irreparably damaging the image of the Crystal Lagoons technology and of Crystal Lagoons as a company.

66.     The damage to reputation will be exacerbated because relevant members of the public may improperly associate the Hard Rock Hollywood Project with Crystal Lagoons due to similarities in the appearance of the Hard Rock Hollywood Project as compared to Crystal Lagoons authorized facilities, which have a distinct and unique appearance including man-made tropical style lagoons with high-transparency clear water with a beach area and a water sports area, surrounded by commercial facilities such as a hotel, with rounded shapes and curved geometry.

67.     As addressed above, and based on information and belief, the lagoon at the Hard Rock Hollywood Project might not have a traditional swimming pool filtration system capable of filtering the entire volume of water in a homogeneous and efficient manner. Even further, on information and belief, the initial drawings for the lagoon included more than 80 inlets located in the lagoon's bottom and walls, which are not present in the currently built lagoon at the Hard Rock Hollywood Project. Additionally, it appears that the lagoon is designed with an insufficient filtration system, such that the lagoon as constructed requires the use of Crystal Lagoons

technology for its operation. Even further, on information and belief, since the lagoon was filled with water, the filtration system installed on site has not been fully operational and appears to be operating with Crystal Lagoons technology. Moreover, on information and belief, flocculants have been used in the lagoon in order to precipitate suspended solids into the lagoon's bottom, and then a cleaning company has been engaged (which is the same company that operates some of Crystal Lagoons projects) in order to clean the bottom of the lagoon. Due to at least these reasons, other Crystal Lagoons patents and even Crystal Lagoons' proprietary trade dress rights might be under infringement.

68.     Crystal Lagoons has complied with the marking requirements of 35 U.S.C. § 287, at least through notifying Cloward H2O before this complaint was filed that it was infringing the '514 patent through its actions at the Hard Rock Hollywood Project, and through delivering a copy of the original complaint and the '514 patent to the President of Cloward H2O via overnight delivery on October 21, 2019. Cloward H2O also had actual knowledge of at least the '514 Patent since long prior to receiving notice of this complaint.

69.     Cloward H2O is and has been on notice of the alleged infringement of the '514 patent before Crystal Lagoons filed and provided notice of this Complaint. Cloward H2O's copying of Crystal Lagoons' technology as it continued efforts to make, use, or sell the Hard Rock Hollywood lagoon system and induce others to use and maintain the system constitutes willful infringement.

70.     Cloward H2O has also contributed to, and continues to contribute to, the infringement of at least independent claim 1 of the '514 patent at least by providing engineering and consulting services which facilitate the use of the infringing Hard Rock Hollywood water

facility by Hard Rock Seminole, hotel customers, and others through its related instructions, customer assistance, and marketing activities which encourage, instruct, assist, and/or promote use of the Hard Rock Hollywood lagoon system in an infringing manner.

71.    On information and belief, Cloward H2O's customers and business partners are making and using or will use the Hard Rock Hollywood lagoon system, thereby directly infringing the '514 patent. Cloward H2O knows and intends that its customers and partners use the Hard Rock Hollywood lagoon system in a manner that infringes the '514 patent.

72.    Crystal Lagoons has been damaged by Cloward H2O's actions regarding the '514 patent and its tarnishing of the reputation of lagoon-sized recreational water structures and will continue to be damaged in the future unless Cloward H2O is permanently enjoined from infringing, directly or indirectly, the '514 patent.

73.    Damages are due in an amount not less than a reasonable royalty, and specifically for the Hard Rock project the final proposed royalty was US$8,000,000. Crystal Lagoons was requested to build the water structure at the Hard Rock Hollywood site, and would have received the contract and profited from such contract but for Cloward H2O's decision to infringe Crystal Lagoons' rights and build a similar, infringing structure on the exact same site where the infringing structure now sits. Cloward H2O, at a minimum, owes Crystal Lagoons millions of dollars in lost profits directly caused by Cloward H2O's infringement.

74.    The lost profits for which Cloward H2O is liable are only a fraction of the damages Crystal Lagoons has and is likely to suffer from the infringement. To date, Crystal Lagoons has been the exclusive provider of its patented and revolutionary large scale tropical-quality water structures in the U.S., known worldwide as the only provider of these prestigious

and valuable facilities. Its (and its contribution to its parent company's) valuation and ability to secure financing are greatly enhanced by this exclusivity. The valuation of Crystal Lagoons intellectual property (patents) is estimated to be in excess of two billion dollars.

75.     Cloward H2O's infringement has damaged the exclusivity Crystal Lagoons has earned by virtue of its R&D efforts and intellectual property. The lost exclusivity is likely to significantly reduce the valuation of Crystal Lagoons and could impede its ability to secure financing for further growth.

76.     Cloward H2O's infringement also creates the risk of damaging the reputation of high-quality lagoon-sized water facilities that Crystal Lagoons has carefully developed over many years. On information and belief, while Cloward H2O has experience in traditional water parks and similar water structures, it has no prior experience H2O with structures of the type covered by Crystal Lagoons' patent and as built at Hard Rock Hollywood.

77.      Monetary damages are significant, but will be inadequate to fully compensate Crystal Lagoons for these various forms of damages. A permanent injunction is also necessary to redress the full extent of the harm caused by the infringement as described herein.

78.     Cloward H2O was well aware of Crystal Lagoons' ownership of the proprietary technology used in the accused structure, including specifically awareness of the'514 patent. Cloward also knew it was copying Crystal Lagoons' unique technology to build a structure significantly different from any structure Cloward H2O had built before. Cloward nevertheless built the accused structure on a "fast track" knowing it was at a high risk of infringing Crystal Lagoons' rights including specifically the '514 patent. Cloward H2O's infringement is willful,

justifying a significant enhancement of any monetary damages award and providing grounds for

an award of attorney's fees as well.

## COUNT II – FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF
## ORIGIN UNDER 15 U.S.C. § 1125(a)

79.     CRYSTAL LAGOONS incorporates Paragraphs 1-78 by reference as if set forth

fully as part of this count.

80.     CRYSTAL LAGOONS is the only producer of structures providing clear artificial

bodies of water for both swimming and the practice of water sports, and virtually all such

functional structures incorporating artificial bodies of water worldwide incorporate CRYSTAL

LAGOONS technology.

81.     As such, the overall appearance of CRYSTAL LAGOONS structures

incorporating artificial bodies of water have taken on a distinctive "look and feel" resulting in

protectable and proprietary trade dress.

82.     Through its promotional efforts, business conduct, and continuous use of its trade

dress, CRYSTAL LAGOONS has developed and maintained clients throughout the world.

Through its widespread and favorable acceptance and recognition by the consuming public, the

"look and feel" of CRYSTAL LAGOONS water structures including depictions thereof in

planning drawings and marketing materials has become an asset of substantial value as a symbol

of CRYSTAL LAGOONS, its high quality products, services and goodwill.

83.     CLOWARD H2O has knowingly and intentionally incorporated CRYSTAL

LAGOONS' patented and trade dress protected features into their design of the Hard Rock Hotel

& Casino structure for its artificial bodies of water, without CRYSTAL LAGOONS' permission.

84.     CLOWARD H2O used confidential information provided by CRYSTAL LAGOONS to third parties under Non-Disclosure Agreements to copy significant aspects of the CRYSTAL LAGOONS design and patented technology.

85.     CLOWARD H2O's unauthorized use of CRYSTAL LAGOONS intellectual property and confidential information in connection with the design and oversight of construction of the structure incorporating artificial bodies of water for Hard Rock Hotel & Casino is likely to cause confusion and to deceive consumers as to the source of origin of CLOWARD H2O's structures. Such confusion may lead consumers to believe that CLOWARD H2O's structure was designed, created, endorsed, approved, licensed, and/or authorized by CRYSTAL LAGOONS.

86.     CLOWARD H2O's unauthorized use of CRYSTAL LAGOONS' protected trade dress secured a lucrative contract between CLOWARD H2O and Hard Rock Hotel & Casino for the design and construction of the structure incorporating artificial bodies of water.

87.     CLOWARD H2O has been unjustly enriched by passing off CRYSTAL LAGOONS' protected trade dress as their own.

88.     By directly engaging in the foregoing misconduct, CLOWARD H2O has and will continue to knowingly engage in unlawful unfair competition with CRYSTAL LAGOONS in violation of 15 U.S.C. § 1125(a).

89.     As such, CRYSTAL LAGOONS is entitled to recover its actual damages, CLOWARD H2O's profits, and the costs of this action.

## COUNT III – STATE LAW UNFAIR COMPETITION,

## UTAH CODE ANN. § 13-5A-102(4)

90.     CRYSTAL LAGOONS incorporates Paragraphs 1-89 by reference as if set forth fully as part of this count.

91.     CLOWARD H2O, by its actions set forth hereinabove, has engaged in intentional business acts or practices that are unlawful, unfair, and/or fraudulent by intentionally infringing CRYSTAL LAGOONS' rights and goodwill so as to take from Plaintiff potential customers seeking the benefit of CRYSTAL LAGOONS designs and technology.

92.     For the reasons set forth above, CLOWARD H2O has and will continue to knowingly engage in unlawful unfair competition with CRYSTAL LAGOONS in violation of Utah Code § 13-5a-102(4).

93.     CLOWARD H2O's conduct as set forth above gives rise to a cause of action for unfair competition and related wrongs under the statutory and common law of the State of Utah.

94.     By reason of the foregoing, CRYSTAL LAGOONS has suffered damages and irreparable harm.

95.     As such, CRYSTAL LAGOONS is entitled to actual and punitive damages from CLOWARD H2O, along with its attorney's fees and costs pursuant to at least Utah Code Ann. § 13-5a-103(1)(b).

## COUNT IV - TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

## UNDER UTAH COMMON LAW

96.     CRYSTAL LAGOONS incorporates Paragraphs 1-95 by reference as if set forth fully as part of this count.

97.     CLOWARD H2O has tortiously interfered with CRYSTAL LAGOONS' contractual relationships with Seminole Gaming, EDSA, Inc. (EDSA), and Klai Juba Wald Architects (Klai Juba) (collectively the "NDA Parties").

98.     CRYSTAL LAGOONS and has Non-Disclosure Agreements regarding CRYSTAL LAGOONS confidential and proprietary information with each of Seminole Gaming, EDS, and Klai Juba dated 2016.

99.     The Non-Disclosure Agreements placed confidentiality obligations on the NDA Parties. Pursuant to the Non-Disclosure Agreement, the NDA Parties are required to treat CRYSTAL LAGOONS' confidential information as confidential and take reasonable precautions to prevent its acquisition by unauthorized third parties, including CLOWARD H2O.

100.     CLOWARD H2O had knowledge of the Non-Disclosure Agreements.

101.     Despite this knowledge, CLOWARD H2O intentionally interfered with the NDA Parties' Agreements with CRYSTAL LAGOONS (in particular, confidentiality obligations) by, for example, (1) causing the NDA Parties to improperly disclose at least to Cloward H2O and/or improperly use CRYSTAL LAGOONS confidential and proprietary information, including CRYSTAL LAGOONS' name and design features, without CRYSTAL LAGOONS' permission, and (2) intending to benefit from such misappropriated information. Such intentional conduct, giving rise to breaches of the CRYSTAL LAGOON Non-Disclosure Agreements with the NDA Parties, interfered with the NDAs by improper means and for improper purposes.

102.     CRYSTAL LAGOONS has been harmed by CLOWARD H2O's improper and intentional interference with its contractual relationship with the NDA Parties, at least because its

Proprietary Information has now been accessed by its competitor, and its proprietary technology has been disclosed.

103.    CRYSTAL LAGOONS is entitled to damages in an amount to be determined at trial.

## COUNT V - INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS UNDER UTAH COMMON LAW

104.    CRYSTAL LAGOONS incorporates Paragraphs 1-103 by reference as if set forth fully as part of this count.

105.    CLOWARD H2O was fully aware that CRYSTAL LAGOONS had a business relationship with Seminole Gaming, which was very likely to result in an economically advantageous relationship between CRYSTAL LAGOONS and Seminole Gaming.

106.    CLOWARD H2O subsequently engaged in unlawful conduct with the intent to interfere with and/or destroy the economically advantageous relationship between CRYSTAL LAGOONS and Seminole Gaming.

107.    Such conduct on behalf of CLOWARD H2O included wrongly misappropriating information from third parties subject to a Non-disclosure agreement, infringing CRYSTAL LAGOONS' patents, and passing off CRYSTAL LAGOONS proprietary trade dress features as CLOWARD H2O's own in designing the artificial body of water.

108.    The above mentioned conduct was carried out by CLOWARD H2O with the intent of destroying the economically advantageous relationship between CRYSTAL LAGOONS and Seminole Gaming, so that CLOWARD H2O could secure the contract for the

design and construction of an artificial body of water instead of CRYSTAL LAGOONS.  Such

conduct was for improper purpose and by improper means.

109.    As a proximate result of CLOWARD H2O's conduct as alleged herein,

CRYSTAL LAGOONS has been damaged in an amount to be proven at trial.

## REQUEST FOR RELIEF

CRYSTAL LAGOONS requests the following relief:

a.      A judgment that CLOWARD H2O infringed and induced infringement of United

States Patent No. 8,062,514, and that such infringement has been willful;

b.      An injunction enjoining and restraining CLOWARD H2O , its officers, directors,

agents, servants, employees, attorneys, and all others acting under or through it from directly or

indirectly infringing United States Patent No. 8,062,514;

c.      A judgment and order requiring CLOWARD H2O to pay all damages arising out

of CLOWARD H2O's infringement of United States Patent No. 8,062,514, including treble

damages for willful infringement as provided by 35 U.S.C. § 284, with interest;

d.      A judgment and order directing CLOWARD H2O to pay the costs and expenses

of this action and attorneys' fees as provided by 35 U.S.C. § 285 and under other applicable law,

with interest;

e.      A judgment and order that CLOWARD H2O has engaged in unlawful unfair

competition with CRYSTAL LAGOONS in violation of 15 U.S.C. § 1125(a), awarding damages

and other monetary relief for such conduct and willful conduct as permitted by law, awarding

attorney's fees and costs as are available for such violations, and awarding an injunction against

future unfair competition;

f.      A judgment and order that CLOWARD H2O's conduct constitutes unfair competition and related wrongs under the statutory and common law of the State of Utah, and awarding damages including punitive damages and appropriate injunctive relief against future violations, along with Plaintiff's attorney's fees and costs pursuant to at least Utah Code Ann. § 13-5a-103(1)(b);

g.      A judgment and order that Cloward H2O's conduct constitutes tortious interference with contractual relations and prospective business relationships, and awarding damages and other monetary relief as may be available for such tortious conduct; and

h.      Such other and further relief as this Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

CRYSTAL LAGOONS hereby demands that all issues be determined by jury.

Respectfully submitted,

Date: January 15, 2020                    By: */s/ James C. Watson*

James C. Watson (13395)
JCWatson@traskbritt.com
H. Dickson Burton (4004)
hdburton@traskbritt.com
TRASKBRITT, PC
230 South 500 East, Suite 300
Salt Lake City, UT 84102
Tel: (801) 532-1922
Fax: (801) 531-9168

Daniel W. McDonald (*Pro Hac Vice to be Filed*)
*DMcDonald@merchantgould.com*
Peter M. Selness (*Pro Hac Vice to be Filed)*
pselness@merchantgould.com
MERCHANT GOULD P.C.
2200 Fifth Street Towers
150 South Fifth Street
Minneapolis, MN 55402-4247

Tel: (612) 332-5300
Fax: (612) 332-9081

*Counsel for Plaintiff*
*Crystal Lagoons US Corp*

<u>Defendant's Address:</u>

Cloward H2O
2696 University Avenue, Suite 290
Provo, Utah 84604