James C. Watson (13395)
JCWatson@traskbritt.com
Glenn R. Bronson (7362)
GRBronson@traskbritt.com
TRASKBRITT, PC
230 South 500 East, Suite 300
Salt Lake City, UT 84102
Tel: (801) 532-1922
Fax: (801) 531-9168

Daniel W. McDonald (Pro Hac Vice)
dmcdonald@merchantgould.com
Peter S. Selness (Pro Hac Vice)
pselness@merchantgould.com
MERCHANT GOULD P.C.
2200 Fifth Street Towers
150 South Fifth Street
Minneapolis, MN 55402-4247
Tel: (612) 332-5300
Fax: (612) 332-9081

*Attorneys for Plaintiff Crystal Lagoons U.S. Corp.*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CRYSTAL LAGOONS U.S. CORP., <br><br> Plaintiff, <br><br> vs. <br><br> CLOWARD H2O LLC, <br><br> Defendant | **RESPONSE TO MOTION TO DISMISS** <br><br> Case No. 2:19-cv-00796-EJF <br><br> Judge Bruce S. Jenkins <br><br> **[Jury Trial Demand]** |

## I.        Introduction

Crystal Lagoons U.S. Corp. ("Crystal Lagoons") provided detailed allegations to support its claims in a 39-page complaint comprising over 100 paragraphs and numerous photographs. Cloward H2O LLC (Cloward)'s motion to dismiss should be denied because it ignores allegations that it asserts are missing, misquotes others, and misstates the law of standing and infringement.

For example, Cloward asserts that a non-party, Crystal Lagoons (Curacao) B.V., is "alleged to own 'all right, title and interest in the '514 Patent' to which Crystal Lagoons is merely 'an exclusive licensee,'" citing paragraph 13 of the complaint as the basis for this assertion. (Dkt. 23 at 4.) Paragraph 13 does not say this, however. Moreover, Cloward ignores case law that holds that a party in Crystal Lagoons' position has standing to sue even if it is not called the "owner" of the patent, because it has all substantial rights in the patent. As shown below, the complaint sufficiently pleads Crystal Lagoons has the requisite interest in the '514 patent to have standing.

Regarding induced patent infringement, even taking Cloward's allegations outside the pleadings as true (which is overly generous to Cloward given the proper standard for a motion to dismiss), Cloward makes a fundamental error of law. Namely, Cloward assumes that the Florida Seminole tribe is not an *infringer* merely because it has *immunity* from liability for its infringement. The case law and statutory language make clear that "whoever" makes, sells, uses, or offers to sell a patented system "infringes the patent," regardless of immunity. Cloward also ignores the allegations that it induces direct infringement by actors not even alleged by Cloward to have immunity. Cloward thus is liable as an inducer of infringement.

Moreover, Crystal Lagoons provided detailed allegations in the First Amended Complaint ("FAC") to support the allegations of direct and induced infringement of claim 1 of the '514 patent. Those allegations have not been shown to be implausible and must be taken as true in the context of this motion. Cloward cannot avoid answering for its infringement by simply disagreeing, which is all it has done here.

Cloward's attack on the trade dress claim is based on its assertion that Crystal Lagoons "fails to set forth the elements of its supposed trade dress." (Dkt. 23 at 4.) This assertion ignores paragraph 66 of the FAC, which does precisely that. Cloward's attack on this and the remaining counts of the FAC thus fail as well.

For all these reasons, Cloward's motion should be denied in its entirety. Should the Court be inclined, however, to grant any aspect of Cloward's motion, Crystal Lagoons requests that it be allowed leave to amend the FAC to address any such concerns, consistent with its showing herein, thus mooting the motion to dismiss.

## II.      Argument

Cloward's motion to dismiss, coming even before it answers the complaint, faces a high burden. *Jubber v. Mast*, No. 2:13-CV-00683 DN, 2014 WL 1320278, at *2 (D. Utah Mar. 31, 2014). Crystal Lagoons is only required to present "a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id*. The Court "must accept as true the plaintiff's well-pleaded factual allegations and all reasonable inferences must be indulged in favor of the plaintiff." *Shaw v. Valdez*, 819 F.2d 965, 968 (10th Cir. 1987). Cloward must also overcome the judicial preference that claims be decided on the merits and the "long-standing policy that leave

3

to amend should be freely given." *Smith v. Argyle*, No. 2:10-CV-01268, 2012 WL 5330981, at

*2 (D. Utah Oct. 29, 2012). Cloward's motion to dismiss has not met this high standard.

A.    **Crystal Lagoons Holds all Substantial Rights to the Patent and has Standing to Sue**

Cloward asserts that Crystal Lagoons lacks standing to sue for patent infringement

because it "alleges that it is the mere 'exclusive licensee' of" the patent owner. (Dkt. 23 at 7.)

However, in fact Crystal Lagoons is alleged to be more than a mere licensee, and has the rights

necessary to have standing. The relevant inquiry is whether Crystal Lagoons in effect has been

assigned sufficient rights to be considered a "patentee" to have standing. A patentee may be any

successor in title. *Keranos, LLC v. Silicon Storage Tech., Inc.*, 797 F.3d 1025, 1031 (Fed. Cir.

2015). A patentee may *also* be an entity to which "all substantial rights" under the patent were

assigned. *Id.* Such a patentee has standing to bring an infringement suit in their own name.

"A party that has been granted all substantial rights under the patent is considered the

owner regardless of how the parties characterize the transaction that conveyed those rights."

*Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1250 (Fed. Cir. 2000). Thus, an agreement that

conveys all substantial rights in the patent grants the licensee standing to sue, whether or not the

agreement is labeled as an assignment. The proper focus is on the substance of what was

conveyed, not the form of the conveyance. *Id.* Determining whether an agreement constitutes a

license or assignment requires ascertaining the intent of the parties and examining the substance

of what was granted. *Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870,

874 (Fed. Cir. 1991).

Cloward complains that Crystal Lagoons does not allege facts necessary for standing

"[o]ther than asserting the mere conclusion that it owns all substantial rights in the '514 Patent."

(Dkt. 23 at 7.) This mischaracterizes the FAC. The FAC alleges "Crystal Lagoons owns all

substantial rights . . . including [in] the patent currently at issue in this lawsuit, United States Patent No. 8,062,514." (Dkt. 11 ¶10.) This in itself should be sufficient to defeat Cloward's motion. The FAC further alleges that Crystal Lagoons is the exclusive licensee of the '514 Patent, and was *also* given *additional rights*, namely "all rights to enforce, sue and collect past and future damages for infringement of the '514 Patent." (Dkt. 11 ¶13.) Thus, contrary to Cloward's assertions in its motion, the FAC asserts that Crystal Lagoons is *more than* a "mere" exclusive licensee.

Cloward appears to suggest that the nominal owner may be able to "license or transfer" the '514 Patent. (Dkt. 23 at 7.) The FAC sufficiently alleges that Crystal Lagoons has all substantial rights in the '514 Patent, which is the relevant issue. Whether the nominal title holder retains a right to transfer its nominal title is immaterial. "It is axiomatic that a party cannot sell what it does not own. Nor can it grant rights to a patent it does not hold." *3D Design Sols. LLC v. Cadence Design Sys., Inc.*, No. 3:12-CV-00625-M, 2013 WL 1293903, at *6 (N.D. Tex. Mar. 31, 2013). Here, nothing in the pleadings, taken in a light most favorable to Crystal Lagoons, indicates that the nominal owner of the patent could hinder Crystal Lagoons' substantially complete rights in any way. Cloward's implications to the contrary are unsupported by the allegations and speculative, and in any event not cognizable given its burden on its motion to dismiss. Crystal Lagoons has thus sufficiently pled that it holds all substantial rights under the patent and has standing to sue.

### B. Crystal Lagoons has pleaded facts sufficient to prevail on a claim of direct patent infringement

"[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . during the term of the patent therefore, infringes the patent." 35 U.S.C. § 271(a). Cloward argues it cannot be held liable as a direct infringer because (1) it did

not undertake the physical construction of the infringing lagoon or (2) the FAC does not

sufficiently allege Cloward performed any infringing actions involving a structure with every

element of at least one claim of the '514 patent. (Dkt. 23 at 8-10.) As shown below, the FAC

alleges facts more than sufficient to show Cloward directly infringed in multiple ways.

1.      **Crystal Lagoons has alleged facts sufficient to show that Cloward made, offered to sell, sold, or used the infringing structure.**

Cloward admits that the FAC alleges that it committed an infringing act because it made

("built") an infringing structure. (Dkt. 23 at 9.) An allegation that a party "built" an infringing

structure is sufficient as a matter of law; Cloward cites no authority to the contrary. This alone is

sufficient to defeat the motion to dismiss.

Moreover, to the extent the extensive underlying fact allegations are considered, they

strongly support the allegation that Cloward built or made an infringing structure. Those facts

must be taken in a light most favorable to Crystal Lagoons. For example, while Cloward calls the

allegation that it "built" the infringing structure conclusory, it is well founded in the FAC. As

Cloward notes, the FAC cites the Cloward website www.clowardh2o.com. (Dkt. 11 ¶61.)

Cloward *admits* on its website that "we have built" projects around the world:

HOVER OVER THE MAP TO SEE HOW MANY PROJECTS WE HAVE BUILT AROUND THE WORLD

**Cloward statement at its website (website referenced in FAC)**

The website lists 355 projects in North America alone that Cloward "built." (Declaration of Peter

Selness ¶ 3, Ex. A.) So the allegation that Cloward "built" the accused structure is indeed much

more than plausible, it is supported by Cloward's own words, and is more than enough to support

an allegation that Cloward "made" the infringing structure and thus infringed. Cloward further states that it provides services in "planning and conceptual design", "project management & construction documents", "construction services", and "commissioning and start-up." (Selness Decl. ¶ 4, Ex. B) (also available from www.clowardh2o.com).

Moreover, Cloward fails to show how the extensive fact allegations regarding its conduct, and indeed its own admission, taken in a light most favorable to Crystal Lagoons, are insufficient to show it "made" the infringing structure. Those allegations further include:

-- Cloward's website admission that its "dedicated attention touches every aspect of a project, starting with the planning stages and powering through final implementation and maintenance." (Dkt. 11 ¶61.)

--Cloward "took over the design of the infringing large clear lagoon based on Crystal Lagoons concept and technology." (Dkt. 11 ¶53.)

Cloward contends in its brief that it is not a construction company. (Dkt. 23 at 9.) Cloward provides no support for this bald and conclusory allegation, which is contradicted by its own website. (Selness Decl. ¶ 4, Ex. B) (Cloward website touting "construction services" as one of its services provided). At most, Cloward has identified a fact issue improper for decision at this early stage.

Moreover, "makes" is not the only way to directly infringe a patent. Crystal Lagoons' FAC also sufficiently alleges facts showing that Cloward directly infringed the '514 patent under other theories of direct infringement, including "uses," "offers to sell," and "sells."

First, Cloward directly infringed the patent by offering to sell and selling the infringing lagoon to Hard Rock. "An offer to sell is a distinct act of infringement separate from an actual sale . . . ." *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Constr. USA, Inc.*, 617 F.3d

7

1296, 1308 (Fed. Cir. 2010). An offer to sell under § 271(a) is analyzed using traditional contract principles. *Id.* "Under Utah contract law, a construction bid constitutes an offer." *Triax Pac., Inc. v. Am. Ins. Co.*, 69 F.3d 548 (10th Cir. 1995); *see also City of Aurora v. PS Sys.*, 720 F. Supp. 2d 1243, 1252 (D. Colo. 2010) ("Construction bids typically are considered to be offers."). The four elements of an infringing offer for sale are "(1) parties competent to contract, (2) mutual assent, (3) a thing capable of being transferred, and (4) a price in money paid or promised." *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1319 (Fed. Cir. 2005).

As shown above, the FAC and website cited therein allege Cloward played the role of directing and overseeing subcontractors to build the infringing structure, provides "construction services," and "touches every aspect" of the project to build the accused structure. Cloward does not contend that these allegations are implausible—indeed, those types of activities are its business. Cloward's conclusory and unsupported denial that it is a construction company cannot defeat the fair inference from these allegations that Cloward's role was sufficient to make its actions an infringing "offer for sale" of the accused structure.

Crystal Lagoons has alleged sufficient facts to raise a plausible inference that Cloward's presentation of designs for the infringing lagoon, along with cost information, was an offer for sale under 35 U.S.C. § 271(a). Crystal Lagoons started as the planner and designer and provided a proposal, but was replaced in this planning/designing role by Cloward, who continued to use Crystal Lagoons' plans and provided the client with modified "plans" used for building the project (using Crystal Lagoons intellectual property). (Dkt. 11 ¶¶ 33, 35, 43-47). This constitutes an offer to sell and sale. *See Aurora*, 720 F. Supp. 2d at 1253; *cf. FieldTurf Int'l, Inc. v. Sprinturf, Inc.*, 433 F.3d 1366, 1370 (Fed. Cir. 2006). Cloward is more than an infringer; it is the

lead entity behind the whole project and the unauthorized use of Crystal Lagoons' proprietary technology. It cannot evade responsibility for its actions.

Further, Crystal Lagoons has alleged sufficient facts to raise a plausible inference that the parties were competent to contract, and that there was mutual assent for Cloward to provide an infringing lagoon to Hard Rock in exchange for compensation. (Dkt. 11 ¶¶ 44, 47, 49); *see also Aurora*, 720 F. Supp. 2d at 1253; *c.f. FieldTurf*, 433 F.3d at 1370. Cloward fails to address these allegations. Crystal Lagoons has sufficiently pleaded a claim for direct infringement of the '514 patent through an "offer to sell" or sale.

Moreover, Cloward infringed because it "used" the patented invention. "Courts' interpretations of the meaning of 'use' have consistently followed the Supreme Court's lead in giving the term a broad application." *Inline Connection Corp. v. AOL Time Warner, Inc.*, 472 F. Supp. 2d 598, 599 (D. Del. 2007). "The ordinary meaning of 'use' is to 'put into action or service.'" *NTP*, 418 F.3d at 1316. "An alleged infringer uses a claimed system when the alleged infringer exercises control over the system and obtains beneficial use of the system." *CIVIX-DDI, LLC v. Cellco P'ship*, 387 F. Supp. 2d 869, 884 (N.D. Ill. 2005).

Crystal Lagoons has alleged that Cloward exercised control over the system, in the form of overseeing its construction and bringing it online. (Dkt. 11 ¶¶53, 55.) Such use is beneficial to Cloward because it can plausibly be inferred that, under the contract(s) between Cloward and Hard Rock, Cloward would be paid based on whether it provided the proposed lagoon to the customer. As such, Crystal Lagoons has sufficiently pled a claim for direct infringement of the '514 patent under a "use" theory.

Finally, Cloward is liable for direct infringement for "making" "offering to sell," "selling," and "using" the infringing lagoon because it directed or controlled the activities of the

companies that performed the actual labor of constructing the infringing lagoon. *See Magna Elecs., Inc. v. TRW Auto. Holdings Corp.*, No. 1:12-CV-654, 2015 WL 11422305, at *3 (W.D. Mich. Dec. 16, 2015) (citing *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020 (Fed. Cir. 2015)). As the Federal Circuit noted in *Akamai*, "an actor 'infringes vicariously by profiting from direct infringement' if that actor has the right and ability to stop or limit the infringement." *Akamai*, 797 F.3d at 1022-23. As the designer of the infringing lagoon, Cloward plausibly directed and controlled the construction of that lagoon and was in a position to stop or limit infringement of the '514 patent. Thus, Cloward's direction of other parties also shows it infringed by making, using, offering for sale, or selling the accused structure. (Dkt. 11 ¶¶44, 47.)

For any and all of the above reasons, Crystal Lagoons has pleaded sufficient factual allegations to give rise to a plausible inference that Cloward directly infringed the '514 patent.

> **2.     Crystal Lagoons has pleaded sufficient facts to show that Cloward has directly infringed by practicing all elements of at least one claim of the '514 patent**

The FAC specifically links a particular structure—a lagoon located at Hollywood Hard Rock—to each and every element of claim 1 of the '514 Patent. (Dkt. 11 ¶¶54-61.) Cloward's brief (Dkt. 23 at 10) only disputes *one part of one element* of claim 1, highlighted below from paragraph 54 of the FAC, effectively admitting Crystal Lagoons' allegations are otherwise plausible:

A structure to contain a large water body, including a water body larger than 15,000 m³ (**feature 1**), for recreational use with color, transparency and cleanness characteristics similar to swimming pools or tropical seas (**feature 2**), wherein the structure includes a bottom and walls covered with a plastic liner made of a non-porous material able to be thoroughly cleaned (**feature 3**); wherein the depth of the structure to the bottom is about 0.5 meters or higher (**feature 4**), wherein the structure includes a system of skimmers for the removal of impurities and surface oils (**feature 5**), a fresh water feeding pipe system that allows entrance of fresh water and results in water removal by displacement of surface water through the skimmer system (**feature 6**), and a pumping system including a

coupling means connected to a moveable suction device for cleaning the plastic liner (**feature 7**).

Crystal Lagoons alleges that the Hollywood Hard Rock structure meets this element: "The accused structure further includes a bottom and walls covered with plastic liner made up of non-porous material . . . ." (Dkt. 11 ¶56.) Paragraph 56 of the FAC further supports this allegation with pictures showing the liner covering the bottom and walls of the Hollywood Hard Rock structure:

Figure 12: Plastic liner at the lagoon during its installation process



Figure 13: Liner being installed directly over soil at Hard Rock Lagoon, during the installation

process



Figure 14: Hard Rock Lagoon's Inner Surface covered with a liner



This showing, viewed with the proper deference to inferences in Crystal Lagoon's favor, sufficiently alleges infringement of the disputed element of claim 1.

In response, Cloward claims that these images "directly contradict" the allegation of infringement. (Dkt. 23 at 10.) The short answer is, no they do not. At an absolute minimum, Cloward's argument shows there is an issue of fact that should not be decided at this early stage. Cloward's argument ignores the high standard of proof it must meet.

Cloward ignores the basic requirement that patent infringement analysis involves a two-step process: first, determine the scope and meaning of the asserted patent claim, and second, compare the claims as construed to the accused structure. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd,* 517 U.S. 370 (1996). Ignoring step one, Cloward asserts that the photos show "exposed concrete walls that are not covered with a liner." *Id.* Claim 1, however, does *not preclude* such a feature. It recites a structure that "***includes*** a bottom and walls covered with plastic liner." "Includes" requires the following recitations, but is ***not limited to*** the recited elements. *Callicrate v. New Age Indus. Corp.*, No. 04-4008-JAR, 2005

WL 1027095, at *16 (D. Kan. Apr. 27, 2005). Thus, even if Cloward's deficient analysis is ignored and its unsupported and conclusory assertion is over-generously assumed to be true, and the accused structure *also* includes exposed concrete, that does not defeat infringement as a matter of law.

Cloward's oversight of step one of the analysis shows it failed to construe, and misconstrued implicitly, the claim recitation that a bottom and "walls" are "covered" with a plastic liner. The plain meaning of "walls" is "a structure that serves to hold back pressure (as of water or sliding earth)," "a material layer enclosing space," and "something that acts as a barrier." merriam-webster.com/dictionary/wall (Last Visited March 11, 2020). None of the specification of the '415 Patent, the prosecution history for the '415 Patent, nor Cloward's own Motion to Dismiss puts forth a definition for the claim term "walls" that would contradict or otherwise modify this plain and ordinary meaning. As the photographs included with the complaint show, portions of the accused structure, including the curved, sloping surfaces covered by the white liner shown in Figures 12 through 14, "serve[] to hold back pressure," form "material layer[s] enclosing [portions of the] space," and "act[] as a barrier" of the accused structure. Cloward cannot reasonably maintain that these surfaces are not "walls" consistent with the plain meaning of that term and the intrinsic evidence. Even if Cloward had properly developed such an allegation in its Motion to Dismiss, that allegation at most would have revealed a need for further claim construction or fact development, not disposition at this early stage.

Moreover, the plain meaning of "cover" is "to lie over, ENVELOP" or "lay or spread something over: OVERLAY," such as "now covered the hills." *See* www.merriam-webster.com. Just as snow may "cover" hills even if a section of those hills is "exposed," the plain meaning of

the term "covered" simply requires that the liner lie or spread over the bottom and walls of the structure. As the photographs included with the complaint show, Cloward does not and cannot dispute that a liner lies over a bottom and walls of the accused structure. Indeed, a liner appears to cover the vast majority of the walls and bottom of the structure. Cloward's effort to evade infringement is based on an implied interpretation of "covered" that is contrary to the term's plain meaning, not tied to the patent, and not supported in any way. Its attack on the allegations thus fails.

Crystal Lagoons has pointed to specific structure that infringes every element of Claim 1 of the '514 patent. (Dkt. 11 ¶¶ 54-62.) Crystal Lagoons has pleaded sufficient allegations to give rise to a reasonable inference that Cloward's structure directly infringes the '514 patent. Cloward's challenge is not only extremely premature, it is deeply flawed. Cloward's motion to dismiss Crystal Lagoons' direct infringement claim should be denied.

### C.    There is a direct infringer to support Crystal Lagoons' claim of indirect infringement

Cloward has argued it cannot be liable for inducing infringement of the '514 patent because there is no direct infringer. (Dkt. 23 at 11.) Crystal Lagoons does not dispute the need for direct infringement when inducement is alleged, but its FAC more than plausibly contends such direct infringement.

Cloward bases its argument that there is no direct infringement on a four-part argument:

(1) Its conclusory, unsupported allegation that the owner of the Hard Rock Hollywood water facility is the Seminole Tribe of Florida;

(2) The assumption, not proven or even alleged, that this owner is the only plausible direct infringer alleged in the FAC;

(3) The unproven assumption that this entity is immune from a lawsuit, and

(4) The legal error that an entity immune from suit is not an "infringer" under the law. This cascade of assumptions does not hold water.

Addressing the last part of the argument first, direct infringement is defined by 35 U.S.C. § 271(a). Indeed, Cloward quotes the pertinent section: "Whoever makes, uses, offers to sell, or sells and patented invention, within the United States, during the term of the patent therefor, infringes the patent." (Dkt. 23 at 8.) Under this definition, there is no dispute that the FAC adequately pleads that the owner of the accused structure, whether or not it may be a sovereign entity immune from suit, is a direct "infringer."

Cloward cites *Home Bingo Network v. Multimedia Games, Inc.*, No. 1:05-CV-0608, 2005 WL 2098056, at *1 (N.D.N.Y. Aug. 30, 2005), to support its assertion that the assumed owner of the infringing structure, the Seminole Tribe, is a sovereign tribe and thus "is not a direct infringer." (Dkt. 23 at 11.) *Home Bingo* did not, however, address whether an Indian tribe can be a direct infringer. Rather, it found that a federally-recognized subdivision of the Miami Tribe of Oklahoma was *immune from suit* due to tribal sovereignty. *Home Bingo*, 2005 WL 2098056, at *1. The case does not address 35 U.S.C. § 271(a) or discuss whether the tribal defendant was a direct infringer. Cloward has no authority for its contention that a sovereign Indian tribe cannot be a direct infringer. Indeed, even *Home Bingo* recognized that under some conditions immunity may be waived. *Id*. Such waiver does not create the infringement; it only creates the right to sue for the infringement that already occurred.

 "Whether an Indian tribe is *subject* to a statute and whether the tribe may be *sued* for violating the statute are two entirely different questions." *Florida Paraplegic Ass'n v. Miccosukee Tribe of Indians*, 166 F.3d 1126, 1129-30, 1133-34 (11th Cir. 1999); *see also Specialty House of Creation, Inc. v. Quapaw Tribe*, No. 10-CV-371-GKF-TLW, 2011 WL

308903, at *2-3 (N.D. Okla. Jan. 27, 2011). Whether or not Crystal Lagoons has a remedy against the Seminole Tribe, the Tribe infringed Crystal Lagoons' patent, and Cloward is liable for inducing those infringing activities.

Moreover, Cloward's other assumptions are flawed. Cloward incorrectly asserts that the FAC states that the accused water facility "is owned by Hard Rock Seminole." (Dkt. 23 at 11.) There is no supporting cite provided regarding this undefined entity; the FAC states no such thing. Cloward also asserts in conclusory fashion, with no support, that it is "notable" that this undefined entity is "owned by the Seminole Tribe in Florida." *Id.* Cloward improperly relies on unproven allegations outside the pleadings to support its motion.

Last but not least, Cloward ignores the fact that the FAC alleges that Cloward induced "others to make, use and sell the Hard Rock Hollywood Project lagoon." (Dkt. 11 ¶¶ 52, 69.) Cloward ignores that the FAC plausibly pleads that persons who, for example, use the infringing structure (such as hotel guests) are direct infringers through their "use" of the facility, and that Cloward's alleged actions induced such infringement. *Id.* Because any and all of Cloward's assumptions underlying this aspect of its motion are incorrect, its effort to dismiss the induced infringement claim should be denied.

### D. Trade dress infringement has been sufficiently plead

A trade dress comprises the "total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 765 n.1 (1992). Trade dress infringement falls under § 43(a) of the Lanham Act. Obtaining relief under the Lanham Act requires a showing that "(1) The trade dress is inherently distinctive or has become distinctive through secondary meaning; (2) There is a likelihood of confusion among consumers as to the source of

the competing products; and (3) The trade dress is nonfunctional." *Kodiak Cakes LLC v. Cont'l Mills, Inc.*, 358 F. Supp. 3d 1219, 1227 (D. Utah 2019). Crystal Lagoons has sufficiently alleged each of these elements.

        **1.**      **Crystal Lagoons has identified the elements of its claimed trade dress**

Cloward first bases its request to dismiss this claim on its assertion that "the FAC makes *no effort to identify* what elements of the 'overall appearance of Crystal Lagoons structures' comprise the 'look and feel' of its purported trade dress." (Dkt. 23 at 13.) (Emphasis added). This allegation is incorrect. Cloward ignores paragraph 66 of the FAC, (Dkt. 11), which sets forth the alleged elements of Crystal Lagoons' trade dress. Paragraph 66 specifically claims as Crystal Lagoons' trade dress the "unique appearance including man-made tropical style lagoons with high-transparency clear water with a beach area and a water sports area, surrounded by commercial facilities such as a hotel, with rounded shapes and curved geometry." *Id.* Cloward fails to refute or even address this combination of features in its motion to dismiss.

Furthermore, Cloward's argument that Crystal Lagoons' structures have different shapes, volumes, flora, and seating arrangements is unavailing. For one, it fails to take into account the actual alleged trade dress as stated in paragraph 66. Moreover, as Cloward states, it is the overall appearance and look and feel that make up a protectable trade dress. There is no requirement that the structures contain the same volume of water or have identical shapes. It is enough that the overall look and feel of the structure acts as a source indicator and calls to mind Crystal Lagoons when viewed by the public.

The unique and distinctive transparency and color of the water, the massive size, and the rounded shapes and curved geometry in conjunction with the lagoons' layout constitute Crystal

Lagoons' protectable trade dress. As such, Crystal Lagoons has alleged the elements of a protectable trade dress and met its burden under the pleading standard.

### 2. Crystal Lagoons has sufficiently alleged that its trade dress is nonfunctional

The question of functionality is characterized as a defense, and the burden of proof is thus placed on Cloward. *Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 520 (10th Cir. 1987). Furthermore, "whether a product feature is functional is a factual finding." *Id.* "[T]he question of whether the feature is functional should turn on whether the protection of the configuration would hinder competition or impinge upon the rights of others to compete effectively in the sale of goods." *Id.* Furthermore, "a trade dress may be a composite of several features in a certain arrangement or combination which produces an overall distinctive appearance." *Hartford House, Ltd. v. Hallmark Cards, Inc.*, 846 F.2d 1268, 1272 (10th Cir. 1988). In this case, the question becomes whether the combination of features comprising Crystal Lagoons' trade dress is functional. *Id.* Under such an analysis, "[a] combination of features may be nonfunctional and thus protectable, even though the combination includes functional features." *Id.*

Here, Crystal Lagoons has pleaded sufficient facts to show that the trade dress in question is nonfunctional. Crystal Lagoons has claimed trade dress protection in the "unique appearance including man-made tropical style lagoons with high-transparency clear water with a beach area and a water sports area, surrounded by commercial facilities such as a hotel, with rounded shapes and curved geometry." (Dkt. 11 ¶ 66.) Cloward's challenge must fail at this early stage as it fails to address the trade dress as actually described in the FAC.

Cloward cites *Vornado Air Circulation Sys., Inc. v. Duracraft Corp.*, 58 F.3d 1498, 1503 (10th Cir. 1995) for the contention that where a product configuration is part of a claim in a utility patent, and a significant aspect of the invention, it is not protectable even if it is

nonfunctional. (Dkt. 23 at 14.) This assertion fails because, again, Cloward fails to analyze the trade dress as alleged, let alone tie it to the elements of any claim of the patent. In *Vornado* the court of appeals reversed a district court decision following a bench trial. The "disputed product configuration" was found to be a "significant inventive aspect of the invention . . . so that without it the invention could not fairly be said to be the same invention." *Vornado*, 58 F.3d at 1510. The present case contrasts with *Vornado*, where the Plaintiff sought trade dress protection for the design of its grill structure, included that same grill structure as an element of its patent claims, and stated in the patent specification that the grill structure configuration provided an optimum airflow. *Id*. Cloward made no such showing here. That *Vornado* resolved this fact-intensive analysis following a bench trial only confirms the issue here should not be resolved at this early stage.

### 3.  Crystal Lagoons has alleged facts sufficient to show that its trade dress has acquired secondary meaning

"Whether a trade dress has acquired secondary meaning is a question of fact." *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 978 (10th Cir. 2002). A trade dress may acquire secondary meaning when its primary significance in the minds of consumers is not as an indicator of a product, but an indicator of the product's source or brand. *Id.* A history of successful sales, evidence of intentional copying, and long use of the trade dress in question are given particularly heavy weight, and are enough to establish secondary meaning on their own. *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 978 (10th Cir. 2002).

Here the FAC, taken in a light favorable to Crystal Lagoons, alleges facts which plausibly support a finding of secondary meaning. Crystal Lagoons has long been the sole producer of structures providing clear artificial bodies of water for both swimming and the practice of water sports. (Dkt. 11 ¶ 80.) Crystal Lagoons is a pioneer in an industry that did not previously exist,

and incurred significant advertising expenditures in its promotional efforts to alert consumers to its new and unique product. (Dkt. 11 ¶ 82.) Furthermore, Crystal Lagoons invested substantial time and resources developing and growing the market, and any development of this market is the direct result of Crystal Lagoons' efforts in this area. (Dkt. 11 ¶ 25.)

Crystal Lagoons' artificial bodies of water have achieved significant sales successes worldwide. (Dkt. 11 ¶ 80.) Crystal Lagoons has provided specifications for the design of more than 350 lagoons. (Dkt. 11 ¶ 11.) Crystal Lagoons participates in over 600 projects worldwide. (Dkt. 11 ¶ 22.) The FAC illustrates examples of several of these projects from locations in San Alfonso del Mar, Texas, and Florida. (Dkt. 11 Figs. 2-5.) Such a significant global presence for Crystal Lagoons' products weighs in favor of a finding of secondary meaning.

The FAC also lists numerous awards won by Crystal Lagoons for its innovative designs. Crystal Lagoons was awarded the 2007 Guinness World Record for the largest "swimming pool" in the world. (Dkt. 11 ¶ 23.) Crystal Lagoons and/or its founder received the Best Real Estate Innovation award from Overseas Property Professional English Magazine, the Ernst & Young Innovator of the Year award, the Innovation of the Year award from the Stevie® Awards, and the Real Innovator Award, among others. (Dkt. 11 ¶ 26.) Such numerous accolades for Crystal Lagoons' products strongly support secondary meaning.

Cloward has knowingly and intentionally copied Crystal Lagoons' trade dress features in the design of the Hard Rock Hotel & Casino structure. (Dkt. 11 ¶ 83.) Cloward copied significant aspects of Crystal Lagoons design. (Dkt. 11 ¶¶ 38-40, 84, Fig. 10.) Copying is further evidence that Crystal Lagoons' products have achieved secondary meaning.

Regarding exclusivity, with the irrelevant exception of the infringing structure at issue in the FAC, Crystal Lagoons remains the only producer of large bodies of clear water in the world.

(Dkt. 11 ¶ 25.) The market for this product was created and developed by Crystal Lagoons. Crystal Lagoons remains the sole user of the trade dress associated with its products. Thus, this factor also supports secondary meaning.

All of the above supporting facts are alleged in the FAC. Crystal Lagoons has thus pleaded sufficient facts to state a claim upon which relief may be granted, and Cloward has failed to show how these facts are insufficient at this early stage of the case.

### E.   Crystal Lagoons statutory unfair competition claim is not preempted

Contrary to Cloward's assertions as to the third cause of action, Crystal Lagoons has sufficiently pleaded facts to avoid preemption of its statutory unfair competition claim. Utah Code § 13-5a-102(4) requires an unfair competition claim to be "unlawful, unfair, or fraudulent; and . . . lead[] to a material diminution in value of intellectual property; and" relate to "infringement of a patent, trademark, or trade name." Preemption does not occur when a state law cause of action requires "at least one extra element that would not be included" in the federal claims. *Customs & Classics v. Bonneville St. Rods, LLC*, No. 2:06-CV-828 TS, 2007 WL 1601483, at *2 (D. Utah June 4, 2007). Some claims such as breach of contract "are based on alleged violations of the written agreement under which Plaintiffs allege that they retained certain rights." *Id.* Thus, unfair competition claims alleging the existence and breach of a contract are not preempted due to the additional elements required under contract law. *See id.*

Cloward asserts that Crystal Lagoons only alleged "conclusory statements" to provide the additional element needed. (Dkt. 23 at 18.) To the contrary, contract-related elements are pled with particularity. Cloward "used confidential information provided by Crystal Lagoons to third parties under Non-disclosure Agreements to copy significant aspects of the Crystal Lagoons design and patented technology." (Dkt. 11 ¶¶ 36-37, 45-46, 84.) These facts are incorporated by

reference into Crystal Lagoons' statutory unfair competition claim. (Dkt. 11 ¶ 90.) Thus, Crystal Lagoons has alleged a material diminution in the value of its intellectual property stemming from the additional act of Cloward causing and benefiting from the breach of non-disclosure agreements. This sufficiently pleads at least one additional element outside the bounds of federal patent and trademark law. Moreover, as shown above, both the patent infringement and trade dress infringement claims are sufficiently pled. Therefore, Crystal Lagoons' statutory unfair competition claim is not preempted by federal law.

### F.   Crystal Lagoons has sufficiently pleaded improper means in its interference claim

Crystal Lagoons has sufficiently pleaded improper means for both its interference based claims. Tortious interference with economic relations is established when the plaintiff proves: "(1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) . . . by improper means, (3) causing injury to the plaintiff." *Mint Solar, LLC v. Savage*, No. 2:18-CV-569 TS-PMW, 2018 WL 5924410, at *5 (D. Utah Nov. 13, 2018). Improper means includes "those actions that are contrary to law, such as violations of statutes, regulations, or recognized common-law rules, or actions that violate an established standard of a trade or profession." *C.R. England v. Swift Transportation Co.*, 437 P.3d 343, 353 (Utah 2019). Furthermore, conduct that constitutes improper means includes deceit or misrepresentation, and other acts that are illegal or tortious in themselves. *Id.*

The FAC has sufficiently pleaded improper means for the interference claims as Cloward used deceit and misrepresentations in its dealings with the Hard Rock Hotel and various sub-contractors, violating standards of the profession. As stated in the complaint, Cloward misrepresented to the Hard Rock Hotel that Crystal Lagoons' plans for the project were actually created by Cloward. (Dkt. 11 ¶¶ 38-40, Fig. 10.) In so doing, Cloward passed off Crystal

Lagoons' proprietary plans and technologies as its own when seeking to obtain the bid for the Hard Rock Hollywood Project. Cloward did not even bother to remove Crystal Lagoons' trademarks from the plans they presented to the Hard Rock Hotel as their own. *Id.* Cloward's alleged activities also constitute improper means at least because they violate a number of established engineering standards of conduct. See, e.g., NSPE National Society of Professional Engineers) Code of Ethics for Engineers 4.a. ("Engineers shall not, without the consent of all interested parties, promote or arrange for a new employment or practice in connection with a specific project for which the engineer has gained particular and specialized knowledge."); 6 ("Engineers shall not attempt to obtain employment or advancement or professional engagements by . . . improper or questionable methods"); 9 ("Engineers shall give credit for engineering work to those whom credit is due, and will recognize the proprietary interests of others."), available at nspe.org/resources/ethics/code-ethics .

Cloward came into possession of Crystal Lagoons' confidential and propriety information by causing multiple third parties to breach the non-disclosure agreements they had in place with Crystal Lagoons. (Dkt. 11 ¶¶ 36-37, 45-46, 97-101.) Cloward ignored Crystal Lagoons' proprietary trademark, trade dress, confidentiality, and patent rights. Such actions are deceitful and contrary to law, and violate established professional standards. The FAC thus sufficiently pleaded the improper means element for its interference claims.

### G. Should the court deem the allegations for any cause of action in the First Amended Complaint insufficient, Crystal Lagoons asks for leave to file a Second Amended Complaint

Crystal Lagoons submits that the FAC amply supports the counts for the reasons stated. To the extent the Court may find any count insufficiently pleaded, the proper course of action is not dismissal. Courts prefer that claims be decided on the merits, and there is a "long-standing policy that leave to amend should be freely given." *Smith*, 2012 WL 5330981 at *2. Any

purported deficiency in the current FAC may be readily addressed by further amendment. Crystal Lagoons thus should be allowed an opportunity to amend if that is deemed necessary.

## III.      Conclusion

The First Amended Complaint provides significant and ample factual support for every asserted cause of action. Cloward's arguments to the contrary ignore or mischaracterize the allegations and are premised on misunderstandings of the law underlying the claims. The motion to dismiss should, therefore, be denied.

Respectfully submitted,

Date: March 12, 2020                    By:  /s/  James C. Watson

James C. Watson (13395)
JCWatson@traskbritt.com
Glenn R. Bronson (7362)
GRBronson@traskbritt.com
TRASKBRITT, PC
230 South 500 East, Suite 300
Salt Lake City, UT 84102
Tel: (801) 532-1922
Fax: (801) 531-9168

Daniel W. McDonald (*Pro Hac Vice*)
*DMcDonald@merchantgould.com*
Peter S. Selness (*Pro Hac Vice)*
pselness@merchantgould.com
MERCHANT GOULD P.C.
2200 Fifth Street Towers
150 South Fifth Street
Minneapolis, MN 55402-4247
Tel: (612) 332-5300
Fax: (612) 332-9081

*Counsel for Plaintiff*
*Crystal Lagoons US Corp.*