Jared J. Braithwaite (UT State Bar No. 12455)
  jbraithwaite@mabr.com
Daniel R. Barber (UT State Bar No. 15993)
  dbarber@mabr.com
Alexis K. Juergens (UT State Bar No. 16861)
  ajuergens@mabr.com
MASCHOFF BRENNAN
111 South Main Street, Suite 600
Salt Lake City, Utah 84111
(801) 297-1850

Attorneys for Defendant Cloward H2O LLC

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **Crystal Lagoons U.S. Corp.**, and **Crystal Lagoons Technologies, Inc.**, <br><br> Plaintiffs, <br><br> v. <br><br> **Cloward H2O LLC**, <br><br> Defendant. | Civil No. 2:19-cv-00796-BSJ <br><br> **Cloward H2O LLC's Motion to Dismiss Plaintiffs' Third Amended Complaint** <br><br> District Judge Bruce S. Jenkins |

## TABLE OF CONTENTS

MOTION TO DISMISS ................................................................................................. 1

MEMORANDUM IN SUPPORT OF THE MOTION ................................................ 3

I.   INTRODUCTION ............................................................................................... 3

II.  ARGUMENT ...................................................................................................... 5

    A.   Crystal Lagoons has not pleaded facts sufficient to prevail on a claim of direct patent infringement for any of the asserted patents. ................................... 6

        1.   Crystal Lagoons fails to state a direct infringement claim for the '514 Patent because the factual allegations of the TAC do not support Cloward H2O having made, used, or sold the accused structure. .................... 7

        2.   Crystal Lagoons fails to state a claim for direct infringement of the '822 and '520 Patents because Cloward H2O is not alleged to have itself performed the steps of the method claims in those patents. ................... 9

    B.   Crystal Lagoons fails to allege sufficient facts to support a finding that Cloward H2O specifically intended for some underlying actor to directly infringe the '520 and '822 Patents, which is a predicate to viable indirect infringement claims. ..............................................................................................11

    C.   Crystal Lagoons' factual allegations are insufficient to support willful patent infringement claims. ......................................................................................... 15

III. CONCLUSION .................................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**

*Akamai Technologies, Inc. v. Limelight Networks, Inc.*,
   797 F.3d 1020 (Fed. Cir. 2015) ................................................................ 6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................. 5

*BMC Resources, Inc. v. Paymentech, L.P.*,
   498 F.3d 1373 (Fed Cir. 2007) ...............................................................11

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*,
   631 F.3d 1279 (Fed. Cir. 2011) ............................................................... 8

*Cont'l Circuits LLC v. Intel Corp.*,
   No. CV16-2026 PHX DGC, 2017 WL 2651709 (D. Ariz. June 19, 2017) ............................ 15

*Driessen v. Sony Music Entm't*,
   No. 2:09-CV-0140-CW, 2012 WL 130412 (D. Utah Jan. 17, 2012) ...................................11, 12

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
   575 F.3d 1312 (Fed. Cir. 2009) ............................................................... 6

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
   136 S. Ct. 1923 (2016) ............................................................................ 15

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
   681 F.3d 1323 (Fed. Cir. 2012) ...............................................................11, 12

*Joy Technologies, Inc. v. Flakt, Inc.*,
   6 F.3d 770 (Fed. Cir. 1993) ................................................................6, 9, 11, 13

*Kansas Penn Gaming, LLC v. Collins*,
   656 F.3d 1210 (10th Cir. 2011) ............................................................... 5

*Metricolor LLC v. L'Oreal S.A.*,
   791 F. App'x 183 (Fed. Cir. 2019) .......................................................... 6

*Microsoft Corp. v. AT&T Corp.*,
   550 U.S. 437 (2007) ............................................................................. 7, 8

*Pace v. Swerdlow*,
   519 F.3d 1067 (10th Cir. 2008) ............................................................... 5

*Ricoh Co. v. Quanata Computer Inc.*,
  550 F.3d 1325 (Fed. Cir. 2008) ................................................................................ 9

*Schumer v. Lab. Computer Sys., Inc.*,
  308 F.3d 1304 (Fed. Cir. 2002) ................................................................................ 9

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ....................................................................... 1

## MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Cloward H2O LLC ("Cloward H2O") moves to dismiss certain causes of action contained in Crystal Lagoons' Third Amended Complaint ("TAC"; Docket No. 77). The TAC purports to state causes of action for direct and indirect infringement of U.S. Patent Nos. 8,062,514 ("'514 Patent"); 9,708,822 ("'822 Patent"); and 8753,520 ("'520 Patent"). The Court should dismiss the claim for direct infringement of the '514 Patent and the direct and indirect infringement claims based on the '822 and '520 Patents because the TAC fails sufficiently allege facts to state plausible claims therefor.

First, Crystal Lagoons fails to plead factual allegations to plausibly allege that Cloward H2O directly infringed any of the asserted patents. Crystal Lagoons' non-conclusory factual allegations are that Cloward H2O provided design services to the actual owner and operator of the accused structure. There are no well-pleaded facts that Cloward H2O actually constructed the accused structure or actively maintains it. Therefore, Cloward H2O did not make, use, or sell the accused structure of the '514 patent or perform each of the specific method steps in the claims of the '822 or '520 Patents.

Second, Crystal Lagoons fails to plead plausible allegations for indirect infringement of the '822 or '520 Patents. Indirect infringement requires a direct infringer and specific intent of the accused indirect infringer to cause the direct infringement. But here, Crystal Lagoons' factual allegations do not support the existence of an underlying direct infringer that performs each of the method steps of any of the claims of the '822 or '520 Patents. Moreover, Crystal Lagoons' factual allegations do not support any finding of Cloward H2O's intent to cause infringement of the '822 or '520 Patents.

1

Accordingly, the Court should dismiss all the TAC's claims of direct patent infringement, and the claims of indirect infringement of the '822 or '520 Patents.

Dated: November 30, 2020.                    Respectfully Submitted,

                                                            MASCHOFF BRENNAN

                                       By:   */s/ Jared J. Braithwaite*
                                                    Jared J. Braithwaite
                                                    Daniel R. Barber
                                                    Alexis K. Juergens

                                       Attorneys for Defendant Cloward H2O LLC

## MEMORANDUM IN SUPPORT OF THE MOTION

## I.   INTRODUCTION

As detailed in earlier filings, this case involves two aquatic structure designers: Cloward H2O and Crystal Lagoons. This suit originated when Cloward H2O was selected over Crystal Lagoons to provide design services in connection with a hotel swimming lake and pool structure at the Hard Rock Hotel & Casino, which is owned by third-party Hard Rock Seminole d/b/a/ Seminole Gaming. Crystal Lagoons filed its original Complaint on October 21, 2019 and alleged only that Cloward H2O infringed U.S. Patent No. 8,062,514 (the "'514 Patent") by designing a large water structure for a casino and hotel owned by third-party Hard Rock Seminole d/b/a/ Seminole Gaming. The accused structure is located on tribal land in Florida, and Crystal Lagoons did not name the hotel owner (the Seminole Tribe), the construction contractor (Pacific Aquascape International),[1] or the pool maintenance provider as parties to the lawsuit.

Crystal Lagoons amended its original complaint to address various pleading deficiencies and added claims of trade dress, unfair competition, and tortious interference claims. (Docket No. 11.) Cloward H2O moved to dismiss Crystal Lagoons' First Amended Complaint for a myriad of pleading deficiencies, and the Court dismissed the First Amended Complaint giving Crystal Lagoons leave to amend. (Order, Docket No. 37.) Accordingly, Crystal Lagoons filed its Second Amended Complaint on June 1, 2020, this time only with a claim for patent infringement of the '514 Patent, and Cloward H2O answered the Second Amended Complaint. (Docket Nos. 39–40.)

---

[1] *See* Declaration of the President of Pacific Aquascape International, Docket No. 42-2.

On the last day to move to amend its pleading, Crystal Lagoons sought file the Third Amended Complaint to add claims for direct and indirect infringement of two additional patents regarding methods for cleaning or maintaining water, the '822 Patent (a process to maintain a water body), and the '520 Patent (a method for controlling microbiological properties). Crystal Lagoons then filed the Third Amended Complaint on November 16, 2020. (Docket No. 77.)

But, Crystal Lagoons failed to allege sufficient facts to support these last-minute claims. In terms of direct infringement, Crystal Lagoons obtained Cloward H2O's project file for the accused structure through discovery, which aligns with the factual allegation that Cloward H2O was merely the designer of the accused structure and that Cloward H2O did not build, sell, use, own, operate, or maintain the accused structure. As such, Crystal Lagoons' TAC fails to state a plausible claim that Cloward H2O directly fringes the '514 Patent by having made, used, or sold the accused structure. Similarly, because Cloward H2O was only the designer, Crystal Lagoons factual allegations fail to state a plausible claim that Cloward H2O infringes the newly added patents for performing water maintenance processes under either the '822 or '520 Patents.

As for indirect infringement, Crystal Lagoons' claims require factual allegations that Cloward H2O specifically intended for some other party to infringe the asserted patents. But not only does the TAC fail to set forth factual allegation sufficient to support a finding that any other party performed each of the required steps of the claimed water maintenance methods in the '822 or '520 Patents, it fails to allege that Cloward H2O intended for that party to perform each of the required steps.

Lastly, Crystal Lagoons has failed to allege sufficient facts to support claims of willful patent infringement. While Crystal Lagoons alleges that Cloward H2O had knowledge of the

asserted patents through the filing of this lawsuit, that allegation alone cannot support a willful patent infringement claim. Crystal Lagoons must plead facts to support the inference that Cloward H2O had knowledge of the asserted patents at the time of Cloward H2O's allegedly infringing actions along with something more that allows the inference of egregious or willful intent to infringe. Without that, there is no inference that Cloward H2O committed "egregious misconduct."

Accordingly, Crystal Lagoons' TAC fails to set forth facts to support plausible claims of direct infringement of the '514 Patent, direct or indirect infringement of the '822 or '520 Patents, and willful patent infringement claims for any of the asserted patents. The Court should therefore dismiss those claims.

## II.   ARGUMENT

"To withstand a motion to dismiss, a complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Tenth Circuit has noted that this pleading requirement "serves two purposes: 'to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense,' and 'to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim.'" *Kansas Penn Gaming*, 656 F.3d at 1215 (quoting *Pace v. Swerdlow*, 519 F.3d 1067, 1076 (10th Cir. 2008)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. Whether a complaint states a plausible claim

for relief will be a context-specific undertaking, "[b]ut where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

Crystal Lagoons fails to allege sufficient facts in its pleading to state a claim for each of the direct infringement claims, the indirect infringement claims for the '822 and '520 Patents, and its willful infringement claims. Each of those claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

### A. Crystal Lagoons has not pleaded facts sufficient to prevail on a claim of direct patent infringement for any of the asserted patents.

In order to survive a motion to dismiss under *Twombly* and *Iqbal*, a plaintiff must plead facts alleging that the accused product infringes each element or limitation of at least one patented claim. *See Metricolor LLC v. L'Oreal S.A.*, 791 F. App'x 183 (Fed. Cir. 2019) (unpublished); *see also Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1320 (Fed. Cir. 2009) ("Direct infringement requires a party to perform each and every step or element of a claimed method or product."). For patented methods, "[d]irect infringement under § 271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity." *Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015). And a sale of a product that can perform a method is not a sale of the method itself. *Joy Technologies, Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993).

Crystal Lagoons fails to allege sufficient facts to make a plausible claim that Cloward H2O made, used, sold, or offered to sell the structure accused of infringing the '514 Patent or that Cloward H2O itself performed the method steps of either the '822 or '520 Patents. While Crystal Lagoons may claim that Cloward H2O sold "plans and engineering schematics," schematics and

6

architectural plans do not infringe the *structure* claimed in the '514 Patent, nor do "plans and engineering schematics" perform any method steps of the '822 or '520 Patents.

1.   **Crystal Lagoons fails to state a direct infringement claim for the '514 Patent because the factual allegations of the TAC do not support Cloward H2O having made, used, or sold the accused structure.**

Whoever "makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. §271. But Crystal Lagoons does not allege facts to support an allegation that Cloward H2O made, used, sold, or offered to sell the accused structure. Instead, Crystal Lagoons alleges that Cloward H2O was the "engineer of record for the infringing lagoon and provided plans and engineering schematics used to build the accused lagoon structure, and worked with various contractors to carry out the lagoon's construction." (TAC, ¶ 56).

The provision of plans and engineering schematics of a structure is not the same as making, using, offering to sell, or selling that structure. The '514 Patent claims' are directed to "structures"—not drawings. The Supreme Court has already rejected the argument that plans or blueprints constitute all or even a portion of a patented invention. *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 450–451 (2007). In *Microsoft v. AT&T*, the Supreme Court addressed the question of whether exported software would induce infringement of a patented, physical computer made and sold in another country with respect to liability for patent infringement for exporting components of a patented invention. *Id.* The Supreme Court compared software to "a detailed set of instructions" such as a "blueprint [that] may contain precise instructions for the construction and combination of the components of a patented device, but it is not itself a

combinable component of that device." *Id*. Accordingly, Crystal Lagoons' allegation that Cloward H2O provided engineering and design schematics is not a manufacture, sale, or offer to sell the accused structure or even a component of the accused structure.[2]

Crystal Lagoons also alleges that Cloward H2O was "on site during construction … and provided oversight of the construction" and tested and monitored the performance of the accused structure, which Crystal Lagoons alleges as use of the accused structure (TAC at ¶¶ 56, 58.) But these allegations alone are not infringing "uses" within the meaning of the Patent Act. Being in the vicinity of, or observing a patented device is not an infringing "use." The Federal Circuit states "to 'use' a system for purposes of infringement, a party must put the invention into service, i.e., control the system as a whole and obtain benefit from it." *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011). Direct infringement by "use" of a system claim requires a party to use each and every element of the claimed system. *Id.* Crystal Lagoons' fails to allege facts sufficient to plausibly state that Cloward H2O used every element of a claim of the '514 Patent, controlled the accused structure as a whole, or obtained a benefit from control of the accused structure.

Crystal Lagoons only real claim, which still lacks merit, is that Cloward H2O induced infringement of the '514 Patent by providing instructions for others to build and use the accused structure. And Cloward H2O is not seeking dismissal of Crystal Lagoons indirect infringement

---

[2] Crystal Lagoons may argue in response that the TAC alleges that Cloward H2O actually constructed the accused structure and sold it the Hard Rock Hotel & Casino. To the extent Crystal Lagoons alleges this, such allegations are baseless and made in bad faith and will be addressed by separate motion with a standard applicable to such allegations.

claims for the '514 Patent by this Motion. Crystal Lagoons' direct infringement claim against

Cloward H2O is legally impermissible on the facts alleged and should be dismissed.

> **2.    Crystal Lagoons fails to state a claim for direct infringement of the '822 and '520 Patents because Cloward H2O is not alleged to have itself performed the steps of the method claims in those patents.**

Both the '822 and '520 Patents recite method claims, meaning a series of steps that is

"infringed only by one practicing the patented method." *Schumer v. Lab. Computer Sys., Inc.*,

308 F.3d 1304, 1309 n. 3 (Fed. Cir. 2002). Practice of a method claim cannot be a manufacture or

sale because even instructions for performance of a method is not performance of method steps

themselves. *See Ricoh Co. v. Quanata Computer Inc.*, 550 F.3d 1325, 1335 (Fed. Cir. 2008)

(noting that software is not itself a sequence of actions, but rather it is a set of instructions that

directs hardware to perform a sequence of actions). Thus, "[t]he law is unequivocal that the sale

of equipment to perform a process is not a sale of the process within the meaning of section

271(a)." *Joy Technologies*, 6 F.3d at 773.

In contrast to the law governing infringement of method claims, Crystal Lagoons

repeatedly states that Cloward H2O directly infringed the claims of the '822 and '520 Patents by

making, using, offering for sale, and/or selling the lagoon constructed for the Hard Rock

Siminole …." (TAC at ¶¶ 68, 76.) In fact, Crystal Lagoons' allegations are presented mostly in

passive voice and fail to identify any actor supposedly performing the method steps, only

alleging that each step of the method claims "is infringed *at* the Cloward Hard Rock Lagoon"[3]

---

[3] Crystal Lagoons restyled the accused structure as the "Cloward Hard Rock Lagoon" in the Third Amended Complaint perhaps to imply that Cloward H2O built, owns, or is otherwise more responsible for the accused structure than it really is. Crystal Lagoon's previous descriptions of the accused structure as the "Hollywood project" from the Second Amended Complaint are more

but failing to identify by whom. (TAC at ¶¶ 30.1–30.7 and 32.1–32.3 (emphasis added)). Even if Crystal Lagoons alleges that someone performed some action regarding the method claims, Crystal Lagoons makes clear that it was some other unidentified company as opposed to Cloward H2O. (TAC at ¶ 31.7.)[4]

Crystal Lagoons' only non-conclusory allegations about what Cloward H2O does is that Cloward H2O visited the site of the accused structure to oversee construction, maintains a relationship with the owner of the accused structure, and was involved in permitting of the accused structure—none of which are steps of the method claims in the '822 or '520 Patents. (*See* TAC at ¶¶ 69–71.) Those patents do not cover construction, relationships, or permitting. They are instead directed to specific steps of water treatment.

Claim 1 of the '822 Patent relates to, among other things, a "process to maintain a water body" by maintaining pH levels, adding oxidizing agent at precise levels for a specific period of time, adding flocculating agent at specific concentrations once every six days, removing impurities, adding new water to displace surface impurities, and performing the process without traditional filtration. ('822 Patent, Docket No. 77-2, at col. 19.) There are no allegations that Cloward H2O performs these steps itself—as opposed to performance by unidentified others.

The same is true with respect to claim 1 of the '520 Patent, which relates to, among other things, a "method for controlling microbiological properties of a portion of water," by identifying

---

accurate. (*See* Redline Third Amended Complaint, Docket No. 70-2 (showing modified name throughout))

[4] "…a company and its crew were hired to maintain the lagoon (the same company which currently operates other projects using Crystal Lagoons' technology), where from information and belief flocculants were used …" (TAC at ¶ 31.7.)

various zones of water, taking measurements of salinity and temperature, calculating treatment parameters according to specific equations, and dispensing chemical agents into the water. ('520 Patent, Docket No. 77-3, cols. 19–20.) Again, there are no non-conclusory allegations that Cloward H2O performs these steps itself—as opposed to performance by unidentified others.

Lastly, Crystal Lagoons allegations that Cloward H2O was the designer and engineer that created plans for the accused structure to enable others to build and sell the accused structure to the Hard Rock Hotel & Casino, do not support a claim for direct infringement by Cloward H2O. *See Joy Technologies*, 6 F.3d at 773 ("The law is unequivocal that the sale of equipment to perform a process is not a sale of the process within the meaning of section 271(a).").

Accordingly, Crystal Lagoons' TAC lacks sufficient allegations to make plausible claims of direct infringement of the '822 and '520 Patents against Cloward H2O, and the Court should grant the Motion to dismiss those claims.

### B. Crystal Lagoons fails to allege sufficient facts to support a finding that Cloward H2O specifically intended for some underlying actor to directly infringe the '520 and '822 Patents, which is a predicate to viable indirect infringement claims.

Crystal Lagoons also alleges that Cloward H2O "induced infringement" of the '822 and '520 Patents. (TAC at ¶¶ 80–81.) But induced infringement "requires, as a predicate, a finding that some party amongst the accused actors has committed the entire act of direct infringement." *Driessen v. Sony Music Entm't*, No. 2:09-CV-0140-CW, 2012 WL 130412, at *1 (D. Utah Jan. 17, 2012) (quoting *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1378–79 (Fed Cir. 2007)). While, "a plaintiff need not identify a specific direct infringer," it must plead "facts sufficient to allow an inference that at least one direct infringer exists." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012).

Additionally, for indirect infringement claims to survive a motion to dismiss, the complaint must contain facts plausibly showing that the defendant specifically intended another to infringe the asserted patents. *Id.* at 1339. Crystal Lagoons' allegations in the TAC are insufficient under each requirement.

Crystal Lagoons factual allegations are not sufficient to establish an inference of a direct infringer of the claims of the '822 and '520 Patents. As set forth above, the allegations in the TAC do not describe how any of the specific steps in the '822 and '520 Patents were performed by anyone—reciting only that each step is performed "*at* the Cloward Hard Rock Lagoon." (TAC at ¶¶ 30.1–30.7 and 32.1–32.3 (emphasis added)) These vague allegations that "someone" did something are insufficient. *Driessen v. Sony Music Entm't*, 2012 WL 130412, at *1 (D. Utah Jan. 17, 2012) Judge Waddoups specifically commented that "attempt[s] to plead in such a manner as to include every possible defendant in any possible legal theory that may support a cause of action … is confusing and suffers from the weakness that it does not require Plaintiffs to exercise the discipline of testing whether they in fact have facts sufficient to plead a cause of action." *Id.* Accordingly, in *Drieseen*, where the plaintiff failed plead facts about what method steps were performed by whom, and failed to allege facts sufficient to support a finding that any single party performed all required method steps, the Court dismissed the indirect patent infringement claims. *Id.* at *1–2. Because there are not facts to support the inference of a direct infringer here, the Court should likewise dismiss the claims.

Additionally, Crystal Lagoons' allegations that Cloward H2O indirectly infringed the claims of the '822 and '590 Patents by providing drawings, and that Cloward H2O induced other contractors to infringe by building the accused structure are not legally sufficient to support

infringement of *method* claims for water treatment. Manufacture or sale of a product to perform a process is not performance of the process itself. *Joy Technologies*, 6 F.3d at 773.

Lastly, Crystal Lagoons allegations are insufficient to support a finding that Cloward H2O specifically intended for someone else to infringe the '822 and '520 Patents. As noted above, the claims of the '822 and '520 Patents are directed toward a series of water-treatment steps, including the taking of measurements, making specific calculations of treatment parameters according to specific equations, and adding certain chemicals at specific concentrations over specific periods of time. ('822 Patent, Docket No. 77-2, at col. 19; '520 Patent, Docket No. 77-3, cols. 19–20.)

For the '822 Patent, the claims specifically require that the claimed method is performed without traditional filtration. Yet, Crystal Lagoons specifically alleges that Cloward H2O's plans for the accused structure show it having a "number of inlets as well as filtration equipment that theoretically achieved a filtration of the total volume of water 4 times per day." (TAC at ¶ 31.2). Thus, Cloward H2O's alleged intent was that the accused structurer use traditional filtration. Crystal Lagoons' allegations go on to allege (falsely) that the filtration system designed by Cloward H2O only operates a few hours per day before becoming clogged such that supplemental filtration is used. (TAC at ¶ 31.11, Figure 33–35.)

These allegations fatally undermine Crystal Lagoons' direct infringement claims for the '822 Patent. First, they do not support the inference that Cloward H2O intended that the accused structure be cleaned without traditional filtration—quite the opposite because a traditional filtration system was part of Cloward H2O's design. Second, if supplemental filtration is being used by the owner or maintenance company for the accused structure, then there is no underlying

direct infringement because the water is not being maintained without traditional filtration. Accordingly, Crystal Lagoons' allegations, even if true, do not support claims that Cloward H2O specifically intended that another infringe the '822 Patent, or that the other actor does, in fact, infringe the '822 Patent.

Turning to the '520 Patent, Crystal Lagoons alleges that that each step of the method claim of the '520 Patent is performed "at the Cloward Hard Rock Lagoon," but again does not identify whom Cloward H2O supposedly induced to perform the claimed method steps. (TAC at ¶¶32.1–32.3.) Further the production documents cited bearing the bates numbers beginning with "CLOWARD" are a Cloward H2O internal email with a spreadsheet attachment. These documents do not show that Cloward H2O specifically intended others to perform the steps required by the claims for the '520 Patent, including identification of various zones, taking of measurements, making specific calculations of treatment parameters according to specific equations, and adding certain chemicals at specific concentrations over specific periods of time. The only other allegation regarding the '520 Patent, is the "noticeable odor of chlorine" from the accused structure—a swimming pool. The noticeable smell of chlorine from a swimming pool is not enough to *plausibly* state that Cloward H2O is infringing a 2014 patent to a specific water treatment method. It may mean that the water is treated with chlorine, but that fact cannot provide the unreasonable inference that each and every one of the numerous steps of the method claims of the '520 Patent are being performed or that Cloward specifically intended their performance.

Accordingly, Crystal Lagoons' factual allegations fail to support plausible indirect infringement claims for both the '822 and '520 Patents. The Court should, therefore, grant Cloward H2O's Motion and dismiss those claims.

### C.   Crystal Lagoons' factual allegations are insufficient to support willful patent infringement claims.

Section 284 of the Patent Act provides that the Court may in its discretion increase damages for patent infringement, and that the "sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016). Willful infringement must be pleaded and supported in the pleadings. *Cont'l Circuits LLC v. Intel Corp.*, No. CV16-2026 PHX DGC, 2017 WL 2651709, at *7 (D. Ariz. June 19, 2017) ("Courts (including this one in its previous order) have universally—either in word or deed—required plaintiffs to plead facts showing willfulness.") And pleading knowledge of the patent at the time of infringement is not enough, as most courts require pleading facts showing "egregious" conduct or other facts to support subjective willfulness on that part of the accused infringer. *Id.* at *7–8 (collecting cases).

While Crystal Lagoons variously asserts that Cloward H2O had notice of the '514 Patent based on delivery of a copy of the '514 Patent to Cloward H2O on October 21, 2019 (when the original Complaint was filed), that is not sufficient to support the inference that Cloward H2O knew of the patent at the time of the accused acts of infringement. Instead, it highlights that the accused structure had already been designed and built by October 21, 2019 and could not have been deliberately designed and constructed to infringe. (*See* TAC at ¶ 85.) Likewise, with respect to the '822 and '520 Patents, Crystal Lagoons alleges that Cloward H2O was on notice of these

15

patents through references to them in the original Complaint. (TAC at ¶ 87.) Again, these allegations only go to Cloward H2O's knowledge after it had already designed the accused structure—i.e., after the alleged infringement. Accordingly, there is no support for the pre-infringement knowledge element of Crystal Lagoons' willful infringement claims. Without knowledge, there can also be no addition facts showing egregious conduct or other subjective willful infringement by Cloward H2O. The Court should, therefore, also dismiss Crystal Lagoons' willful patent infringement claims.

## III.  CONCLUSION

The accused structure was not alleged in good faith to be built by Cloward H2O, is not allegedly owned by Cloward H2O, and is not allegedly maintained on a daily basis by Cloward H2O. Nevertheless, Crystal Lagoons brings its patent infringement claims based on the accused structure only against Cloward H2O, in apparent retaliation for Cloward H2O winning the design contract for the accused structure. Crystal Lagoons' allegations in the TAC thus resort to vague allegations that someone has done something to infringe the various asserted patents, and that somehow Cloward H2O should be responsible. Such allegations are not sufficient to support the various of claims that Crystal Lagoons tries to raise because they fail to adequately tie the supposed infringement back to Cloward H2O, and in certain cases fail to even plead facts sufficient to support an allegation of any infringement at all. Accordingly, for the foregoing reasons, the Court should dismiss the direct infringement claims for the asserted patents, dismiss the indirect infringement claims based on the '822 and '520 Patents, and dismiss the willful patent infringement claims from the TAC.

Dated: November 30, 2020.                    Respectfully Submitted,

                                             MASCHOFF BRENNAN

                                     By:     /s/ Jared J. Braithwaite
                                             Jared J. Braithwaite
                                             Daniel R. Barber
                                             Alexis K. Juergens

                                             Attorneys for Defendant Cloward H2O LLC