Glenn R. Bronson (7362)
GRBronson@traskbritt.com
James C. Watson (13395)
JCWatson@traskbritt.com
TRASKBRITT, PC
230 South 500 East, Suite 300
Salt Lake City, UT 84102
Tel: (801) 532-1922
Fax: (801) 531-9168

Anthony R. Zeuli (*Pro Hac Vice*)
TZeuli@merchantgould.com
Eric R. Chad (*Pro Hac Vice*)
EChad@merchantgould.com
Karen L. Beckman (*Pro Hac Vice*)
KBeckman@merchantgould.com
Peter S. Selness (*Pro Hac Vice*)
PSelness@merchantgould.com
MERCHANT & GOULD P.C.
2200 Fifth Street Towers
150 South Fifth Street
Minneapolis, MN 55402-4247
Tel: (612) 332-5300
Fax: (612) 332-9081

*Attorneys for Plaintiffs*

---

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| CRYSTAL LAGOONS U.S. CORP. AND CRYSTAL LAGOONS TECHNOLOGIES INC., <br><br> Plaintiffs, <br><br> vs. <br><br> CLOWARD H2O LLC, <br><br> Defendant | **MEMORANDUM IN SUPPORT OF PLAINTIFFS' PROPOSED CLAIM CONSTRUCTIONS** <br><br> Case No. 2:19-cv-00796-BSJ <br><br> District Judge Bruce S. Jenkins <br><br> JURY DEMANDED |

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ...................................................................................1

II.   FACTUAL BACKGROUND.................................................................2

III.  LEGAL STANDARD ...........................................................................4

IV.   ARGUMENT.........................................................................................5

    1)    TERM 1: "Delimiting zone" .......................................................6

    2)    TERM 2: "Walls"........................................................................9

    3)    TERM 3: "Covered with a plastic liner made of non-porous
        material able to be thoroughly cleaned".....................................12

    4)    TERMS 4 AND 5: "Fresh water feeding pipe system that
        allows entrance of fresh water and results in water removal by
        displacement of surface water through the skimmer system" /
        "feeding the water body with inlet water to generate
        displacement of surface water … and removing displaced
        surface water using the skimmers" .......................................13

    5)    TERM 6: "Pumping system".................................................16

    6)    TERM 7: "Moveable suction device" ................................18

    7)    TERM 8: "determining salinity of the water at the most
        unfavorable zone" / "determining the temperature of the water
        in the most unfavorable zone"...........................................20

    8)    TERM 9: "Determining the minimum ORP value based on the
        salinity of the water" / "determining the minimum period of
        time based on the water temperature"..............................23

    9)    TERM 10: "Portion of water [within the water body]" ..............25

V.    CONCLUSION......................................................................................25

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*3M Innovative Props. Co. v. Tredegar Corp.*,
 725 F.3d 1315 (Fed. Cir. 2013) ............................................................10, 13, 16

*Alifax Holding Spa v. Alcor Sci. Inc.*,
 No. 14-440, 2017 U.S. Dist. LEXIS 63859 (D.R.I. Apr. 27, 2017) .............17, 18

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*,
 512 F.3d 1338 (Fed. Cir. 2008) .........................................................................17

*Biedermann Techs. GmbH & Co. v. K2M, Inc.*,
 No. 2:18cv585, 2020 U.S. Dist. LEXIS 71244 (E.D. Va. Apr. 22,
 2020) .............................................................................................................11, 13

*Boston Sci. Scimed, Inc. v. Cordis Corp.*,
 554 F.3d 982 (Fed. Cir. 2009) .............................................................................5

*Cascades Projection LLC v. Epson Am., Inc.*,
 864 F.3d 1309 (Fed. Cir. 2017) (Reyna, J., dissenting) ......................................1

*Clinical Innovations, LLC v. Tyco Healthcare Grp. LP*,
 No. 2:05-CV-00633 BSJ, 2007 U.S. Dist. LEXIS 49602 (D. Utah
 July 6, 2007).................................................................................................4, 5, 7

*Cont'l Circuits LLC v. Intel Corp.*,
 915 F.3d 788 (Fed. Cir. 2019) ...........................................................................19

*Cormack v. United States*,
 119 Fed. Cl. 63 (2014) .......................................................................................19

*Douglas Dynamics, LLC, v. Buyers Prods. Co.*
 717 F.3d 1336 (Fed. Cir. 2013) ...................................................................13, 16

*Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*,
 527 U.S. 627 (1999).............................................................................................1

*Free Motion Fitness, Inc. v. Cybex Int'l, Inc.*,
   311 F. Supp. 2d 1297 (D. Utah 2003)...................................................................4

*Galderma Labs., L.P. v. Amneal Pharm. LLC*,
   No. 16-207-LPS, 2017 U.S. Dist. LEXIS 70248 (D. Del. May 9,
   2017) ................................................................................................................25

*GE Lighting Sols., LLC v. AgiLight, Inc.*,
   750 F.3d 1304 (Fed. Cir. 2014) ........................................................................21

*Georgetown Rail Equip. Co. v. Holland L.P.*,
   No. 6:13-cv-366-JDL, 2014 U.S. Dist. LEXIS 109222 (E.D. Tex.
   Aug. 7, 2014) ...................................................................................................20

*Gillespie v. Dywidag Sys. Int'l, USA, Inc.*,
   437 F. Supp. 2d 1261 (D. Utah 2005)................................................................10

*Info-Hold, Inc. v. Applied Media Techs. Corp.*,
   783 F.3d 1262 (Fed. Cir. 2015) ........................................................................19

*Instance v. On Serts Sys.*,
   No. 96-1112, 1997 U.S. App. LEXIS 3080 (Fed. Cir. Feb. 21,
   1997) ..................................................................................................................1

*Interactive Gift Express, Inc. v. Compuserve, Inc.*,
   256 F.3d 1323 (Fed. Cir. 2001) ..........................................................................4

*Johns Hopkins Univ. v. CellPro, Inc.*,
   152 F.3d 1342 (Fed. Cir. 1998) .................................................................8, 9, 22

*Knowles Elecs. LLC v. Iancu*,
   886 F.3d 1369 (Fed. Cir. 2018) ..........................................................................8

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
   358 F.3d 898 (Fed. Cir. 2004) .....................................................................19, 21

*N. Telecom Ltd. v. Samsung Elecs. Co.*,
   215 F.3d 1281 (Fed. Cir. 2000) .....................................................................5, 19

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) .....................................................................5, 10

*Roche Diagnostics Operations, Inc. v. Abbott Diabetes Care*,
    667 F. Supp. 2d 429 (D. Del. 2009)......................................................................20

*Samsung Elecs. Co. v. NVIDIA Corp.*,
    No. 3:14-cv-757, 2015 U.S. Dist. LEXIS 99897 (E.D. Va. July 30,
    2015) ..................................................................................................................20

*Thorner v. Sony Comput. Entm't Am. LLC*,
    669 F.3d 1362 (Fed. Cir. 2012) ................................................................4, 19

*Toshiba Corp. v. Imation Corp.*,
    681 F.3d 1358 (Fed. Cir. 2012) ..........................................................4, 15, 19

*Travelers Indem. Co. v. Integrated Claims Sys., LLC*,
    IPR2016-00659, Paper 6 (P.T.A.B. Aug. 31, 2016).........................................25

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996) ...............................................................8, 9

*Vivid Techs., Inc. v. Am Sci. & Eng'g, Inc.*,
    200 F.3d 795 (Fed. Cir. 1999). ...................................................................4

## I.    INTRODUCTION

A patent granted by the United States is a property right. *Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S. 627, 642 (1999); *Cascades Projection LLC v. Epson Am., Inc.*, 864 F.3d 1309, 1316-17 (Fed. Cir. 2017) (Reyna, J., dissenting). A patent represents a bargain between the Government and the inventor for the public disclosure of an invention. Inventor, Fernando Fischmann, accepted this bargain many times—having over 2,000 patents worldwide. He was not required to make this bargain. But, having done so, Mr. Fischmann and his company Crystal Lagoons, owner of the patents, are entitled to enjoy and profit from their patent-protected systems and methods for building and operating multi-acre, man-made lagoons for the term of the patents' exclusivity. After more than 15 years of such enjoyment, an accused infringer of those rights now asks the Government, through this Court, to significantly curtail Crystal Lagoons' property rights. The Federal Circuit has cautioned that claim construction should not be used to narrow property rights granted where the inventor chose not to include limiting terms in his broadest claims. *Instance v. On Serts Sys.*, No. 96-1112, 1997 U.S. App. LEXIS 3080, at *7-8 (Fed. Cir. Feb. 21, 1997). That is what Defendant proposes.

This Court should not now alter the bargain entered into between Mr. Fischmann and the Government—which would negatively affect the benefits of the bargain Mr. Fischmann and Crystal Lagoons enjoy absent Defendant's infringement—unless Defendant has proven Mr. Fischmann "*unequivocally*" disclaimed the broader scope of patent protection that he was granted. Defendant has not done so. Instead, Defendant wants this Court to narrow claims that the Patent Office previously approved to create non-infringement defenses. That is not the purpose of the claim construction. It is disfavored and should be rejected.

## II.    FACTUAL BACKGROUND

Before Fernando Fischmann ("Fischmann") invented and developed Crystal Lagoons'

technology, there were mainly two different types of water bodies used for recreational purposes:

(1) natural and man-made lakes and ponds, and (2) traditional small-sized swimming pools:

Lakes and Ponds (left) and Traditional Swimming Pools (right)

 

Each of these types of water bodies had significant limitations when creating a very large

(multi-acre), man-made lagoon with excellent water quality for recreational purposes:

Crystal Lagoons Epperson Project, Florida (7 acres)



Lakes and ponds have natural treatment systems that rely on microbiological equilibrium, but are generally murky and not inviting. Man-made lakes and ponds can be large bodies of water, but are similarly unappealing to some swimmers. (Joint Appendix (J.A.) 14 col. 3, ll. 5-11.)

While swimming pools have the color, transparency and cleanness desired, they are too expensive to build and operate on such a large scale. (*Id*., ll. 12-16, 23-26.)  When Fischmann, founder of Crystal Lagoons, told those in the aquatic industry what he wanted to do, they said that it could not be done. However, Fischmann solved the problems above, and many others, by inventing technologies to build and maintain large man-made water bodies with excellent water quality at low costs. (*Id*., ll. 65-67.) The three patents in this lawsuit protect some of those inventions.

The structural patent, U.S. Patent No. 8,062,514 ("'514 Pat."), protects the structure of multi-acre, man-made lagoons having excellent color, transparency and cleanness characteristics similar to swimming pools or tropical seas at low cost. (J.A. 15, col. 6, ll. 50-57.) ("The present invention also discloses a structure to contain large water volumes.") U.S. Patent No. 9,708,822 ("'822 Pat.") protects processes for maintaining such large man-made lagoons. (J.A. 39, Abst.) ("The invention discloses a process to implement and maintain water bodies larger than 15,000 $m^3$ for recreational use, such as lakes or artificial lagoons, with excellent color, transparency and cleanness properties at low cost.") The third patent, U.S. Patent No. 8,753,520 ("'520 Pat.") protects a specific maintenance process. (J.A. 23, Abst.) ("The present disclosure relates to a method for controlling the microbiological properties of a portion of water within a large body of water . . . .") Defendant asks the Court to rewrite the meaning of nine of ten claim terms.

## III.  LEGAL STANDARD

"Only those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy." *Free Motion Fitness, Inc. v. Cybex Int'l, Inc.*, 311 F. Supp. 2d 1297, 1302 (D. Utah 2003) (quoting *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999)). However, a defendant cannot argue that "black" means "white" to create a self-serving controversy and rewrite the patent claims to avoid liability.

Where there is a legitimate dispute, "[t]he Court must determine the proper construction of the terms of this claim using the language of how it is actually defined and described in the patents." *Free Motion Fitness*, 311 F. Supp. 2d at 1301. "The claim construction inquiry begins and ends with the actual words of the claim." *Id.*; *see also Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001). Absent definitions of some of the disputed terms in the claim, the Court construes the terms using their ordinary and accustomed meaning. *Free Motion Fitness, Inc.*, 311 F. Supp. 2d at 1301. "**Absent disclaimer or lexicography, the plain meaning of the claim controls**." *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1369 (Fed. Cir. 2012) (emphasis added).

"Although words in a claim are generally given their ordinary and customary meaning, a patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history." *Clinical Innovations, LLC v. Tyco Healthcare Grp. LP*, No. 2:05-CV-00633 BSJ, 2007 U.S. Dist. LEXIS 49602, at *9 (D. Utah July 6, 2007). The Federal Circuit has cautioned, however, that a court must not import limitations from the specification into the claims. *See, e.g.*, *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1366 (Fed. Cir. 2012) ("We do not read limitations from the specification into claims."); *N. Telecom Ltd. v.*

*Samsung Elecs. Co.*, 215 F.3d 1281, 1290 (Fed. Cir. 2000) ("This court has repeatedly and clearly held that it will not read unstated limitations into claim language.").

Generally, "an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term. In such circumstances, it is improper to rely on extrinsic evidence." *Clinical Innovations*, 2007 U.S. Dist. LEXIS 49602, at *13-14. "In cases where the intrinsic evidence does not resolve the ambiguity in a claim term, the court may rely on extrinsic evidence, which includes all evidence that is external to the patent and prosecution history, such as expert testimony, dictionaries, and learned treatises. But extrinsic evidence is less significant than the intrinsic record in determining the meaning of a disputed claim." *Id.*; *see also, e.g.*, *Boston Sci. Scimed, Inc. v. Cordis Corp.*, 554 F.3d 982, 985-87 (Fed. Cir. 2009); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1322 (Fed. Cir. 2005).

## IV.   ARGUMENT

The parties agree that the great majority of claim terms in the patents-in-suit need no construction at all, because a jury would understand them—most are common English words. Of those initially disputed, the parties agreed on a construction for five of the terms as follows:

| Claim Term | Agreed Construction |
|---|---|
| "sanitary compliance zone"<br>'520 patent—Claims 1 and 16 | "the portion of water, within the large water body, which is established for recreational purposes, and required to comply with specific microbiological sanitary conditions, when used for recreational purposes or when it is needed" |
| "flocculating agent"<br>'822 Patent—Claims 1 and 7 | "chemical substance or compound that promotes the combination, agglomeration, or coagulation of suspended particles in water" |
| "cationic polymer"<br>'822 Patent—Claim 7 | "polymer bearing a positive charge or incorporating cationic functional groups in its structure" |
| "precipitated impurities"<br>'822 Patent—Claim 1 | "material that is forced out of a solution by some chemical reaction" |
| "coupling means"<br>'514 Patent—Claim 1 | "coupler" |

However, the following 10 claim terms remain in dispute. Nine of the 10 were proposed by Defendant alone, inviting the Court to rewrite the words accepted by the U.S. Patent & Trademark Office and improperly import limitations into the claims. To do so would be error.

**1)    TERM 1: "Delimiting zone"**

| Claim Term | Defendant's Construction | Plaintiffs' Construction |
|---|---|---|
| "delimiting zone" '520 patent—Claim 1 | "a virtual zone that delimits the sanitary compliance zone from the rest of the water body that is not treated" | "a virtual zone that delimits the sanitary-compliant zone, and does not require a physical barrier" |

Claim 1 of the '520 patent is representative, and states:

> a. identifying a portion of water intended for recreational purposes within the water body, the portion of water comprising one or more zones wherein:
>
> at least one zone is designated a sanitary compliance zone,
>
> at least one zone is designated a **delimiting zone**, and
>
> one zone is designated a most unfavorable zone

(J.A. 37, col. 19, l. 41 (emphasis added).)

The '520 patent relates to treating a portion of a large water body to achieve specific microbiological sanitary conditions and generate a safe sanitary-compliant zone for recreational purposes, such as bathing, within the large water body. For example, it is common for the lagoons of the invention (and all Crystal Lagoons® amenities) to have a designated swimming area having stricter sanitary requirements, *i.e.*, the sanitary-compliance zone, than other areas of the lagoon.

The '520 patent protects Crystal Lagoons' inventions that treat these stricter-compliance areas (or zones) (Element 1 in Patent Figures) without having to treat the entire lagoon (Element 2 in Patent Figures) in the same manner:

6

Figures 1 and 2 of the '520 Patent



These sanitary-compliant areas or zones need not be physically separated from the rest of the lagoon (note the dashed line in Fig. 2 denoting a non-physical barrier). They are virtually separated as explained in the specification: "[T]he sanitary-compliant zone is virtually bounded by the delimiting zone (4)." (J.A. 32, col. 10, ll. 1-3.)

Defendant asks this Court to rewrite the entire meaning of the claim by adding that "the rest of the water body that is not treated." The rest of the lagoon *is* treated, but with a different treatment. Crystal Lagoons® amenities using the method from the '520 patent have a designated swimming area that has a different and more intensive treatment than the rest of the lagoon water volume, but both areas are treated. (Plaintiffs' Appendix ("P.A.") 1802, ¶ 3.) There is no support for adding such a new, limiting term—especially when the patent specifically defines this term.

## A.   The patent explicitly defines "delimiting zone."

"Delimiting zone" is a defined term in this patent. Yet, Defendant asks this Court to rewrite a defined term in this patent and effectively change the entire meaning of the claim by deleting words within such definition and adding that "the rest of the water body that is not treated." The case law is clear - an inventor can act as his own lexicographer – defining a term or

phrase within the patent. *Clinical Innovations*, 2007 U.S. Dist. LEXIS 49602, at *9; *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Here, the patent explicitly defines "delimiting zone": "***a virtual zone that delimits the sanitary compliance zone, and does not require a physical barrier***." (J.A.31, col. 7, ll. 28-30 (emphasis added).) Plaintiffs' proposed construction adopts this express definition verbatim. Fischmann acted as his own lexicographer and defined the term "delimiting zone." That definition should control.

## B.   Defendant's added language contradicts the specification.

Defendant's proposed limitation that the delimiting zone is a division between treated and untreated areas of the lagoon is contradicted by the specification, which contemplates that the entire lagoon may be treated, but in different manners. For instance, an area of a lagoon outside the sanitary compliance zone will receive oxidizing agents—*i.e.*, be "treated." (J.A. 31-34, col. 7, ll. 5-19; col. 12, ll. 4-10; col. 13, ll. 24-28.) Simply put, the patent contemplates that the rest of the lagoon *is* treated, but with a different treatment. Crystal Lagoons® amenities using the method from the '520 patent have a designated swimming area that has a different and more intensive treatment than the rest of the lagoon water volume, but both areas are treated. (P.A. 1802, ¶ 3.) Thus, requiring that the delimiting zone separate a treated and an untreated zone not only improperly adds limitations to the claims, but also adds limitations that contradict the specification. That would violate precedent. *Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1355 (Fed. Cir. 1998) ("A claim construction that does not encompass a disclosed embodiment is thus rarely, if ever, correct and would require highly persuasive evidentiary support." (internal quotation omitted)); *see also Knowles Elecs. LLC v. Iancu*, 886 F.3d 1369, 1375 (Fed. Cir. 2018). No support exists for Defendant's proposed construction, wherein

Defendant deletes words from a definition and adds such a new, limiting term—especially when the patent specifically defines "delimiting zone." (J.A.31, col. 7, ll. 28-30.)

**2)    TERM 2: "Walls"**

| Claim Term | Defendant's Construction | Plaintiffs' Construction |
|---|---|---|
| "walls"<br>'514 Patent—Claim 1<br>'822 Patent—Claim 1 | "substantially vertical surface of the structure" | Plain and ordinary meaning.<br><br>If a construction is required: "structure that serves to hold back pressure." |

Claim 1 of the '514 patent is representative:

> A structure to contain a large water body . . . wherein the structure includes **a bottom and walls** covered with a plastic liner made of a non-porous material able to be thoroughly cleaned . . . .

(J.A. 22, Claim 1 (emphasis added).) Defendant wants this Court to create a non-infringement argument by limiting "walls" to "substantially vertical walls." But walls come in all shapes and sizes, not only vertical, especially in man-made aquatic structures where the use of sloped or inclined walls is highly common:



(P.A. 1802-04, ¶¶4-7.) Crystal Lagoons did not limit the walls of its invention to only vertical walls, which would make no sense, considering aquatic structures almost always have non-vertical walls to hold back pressure, keeping the water in and supporting the structure. (*Id.* at 1802-03, ¶ 5.) Further, Crystal Lagoons® amenities have both sloped and vertical walls, with lagoons having sloped walls with a liner, and concrete vertical walls. (*Id.*, ¶ 8.)

More importantly, the liner covers the bottom and sloped walls. Limiting the invention to covering only "substantially vertical" walls would result in the patent **not** covering the embodiments and commercial installations, which is rarely, if ever, correct. *Johns Hopkins*, 152 F.3d at 1355; *Vitronics*, 90 F.3d at 1583. Similarly, Defendant's lagoon walls are both vertical and sloped, also having a bottom surface:

Cloward Lagoon Section



(P.A. at 1801, ¶ 9.)

## A.    The claims do not require the "walls" to be "substantially vertical."

The term "walls" is not modified by "substantially vertical" in the claims. *See Gillespie v. Dywidag Sys. Int'l, USA, Inc.*, 437 F. Supp. 2d 1261, 1263 (D. Utah 2005) ("[T]he court must give a claim term the full range of its ordinary meaning as understood by persons skilled in the relevant art.") (internal quotation omitted). "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313. One of ordinary skill in the art would readily understand that lagoon "walls" in aquatic structures need not be vertical as long as they function to hold back pressure by keeping the water in the lagoon and support the lagoon structure. (P.A. 1813.)

Defendant's proposed construction, requiring the "walls" to be "substantially vertical," attempts to interject a made-up limitation not present in the asserted claims, or even in the

specification. Nothing in the claim language of the '514 patent suggests, let alone requires, "walls" to be "substantially vertical" as Defendant proposes. The word "vertical" is never used in the patent claims. (*See also* J.A. 22, claims 7-9 and J.A. 62.) *None* of these claims suggest that the "walls" need to be substantially vertical. Defendant's attempt to interject limiting terms where none are present in the claim language should be rejected. *See 3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1333 (Fed. Cir. 2013) (reversing district court's insertion of a limiting term and construing term in accordance with its plain and ordinary meaning).

**B.   Nothing in the specification supports Defendant's attempt to interject the made-up limitation "substantially vertical."**

The specification is also clear that "walls" need not be "substantially vertical." The specification simply states that the invention "includes bottoms and **walls** built with low permeability materials such as clay and bentonite, coated by a non-porous material" and that in one example "[t]he *walls* were built in cement and clay and lined with LLDPE and HDPE membranes." (J.A. 17, col. 9, ll. 27-32; *Id.* at 18, col. 12, ll. 30-31; *see also id.* at 17, col. 10, ll. 12-15; J.A. 57, col. 9, ll. 37-42; *Id.* at col., 10, ll. 24-26; *id.* at 58, col. 12, ll. 43-44 (emphasis added).) Nothing in the specification requires the "walls" to be substantially vertical. In other words, the walls could be vertical, sloped, curved, or other shapes as long as they contain the lagoon water within and support the lagoon structure by holding back the pressure. (P.A. 1813.) Vertical walls alone are not required to contain the lagoon water, and the '514 patent never, ever uses the term "vertical" concerning the walls. Further, in large water structures, walls usually are not vertical, and they are sloped. Even further, if the sloped walls are built with liner over soil (as the case of the Cloward Lagoon), for technical reasons such walls cannot be vertical.

The inventor understood the difference. He used the term "vertical" to describe the orientation of unrelated PVC tubes. (J.A. 18, col. 11, ll. 63-64 ("formed by vertical PVC

tubes").) In other words, Fischmann used the term "vertical" when he meant to do so evidencing that he did **not** intend to do so regarding "walls," which he never limited to vertical.

Finally, Defendant's addition of the nebulous term "substantially" should be rejected because it makes the claim less clear, not more clear. *Biedermann Techs. GmbH & Co. v. K2M, Inc.*, No. 2:18cv585, 2020 U.S. Dist. LEXIS 71244, at *32 (E.D. Va. Apr. 22, 2020) (rejecting attempt to add "nebulous word 'substantially'" to construction because it is not helpful).

### 3)   TERM 3: "Covered with a plastic liner made of non-porous material able to be thoroughly cleaned"

| Claim Term | Defendant's Construction | Plaintiffs' Construction |
|---|---|---|
| "covered with a plastic liner made of non-porous material able to be thoroughly cleaned" '514 Patent—Claim 1 | "with a uniform plastic liner made of a non-porous material forming the exposed surface such that the exposed plastic liner can be thoroughly cleaned" | Plain and ordinary meaning. |

Claim 1 of the '514 patent is representative:

> A structure to contain a large water body . . . wherein the structure includes a bottom and walls **covered with a plastic liner made of a non-porous material able to be thoroughly cleaned**. . . .

(J.A. 22, Claim 1 (emphasis added).)

Defendant seeks to have this Court add two additional limitations, *i.e.*, "uniform," and "forming the exposed surface such that the exposed plastic liner" can be thoroughly cleaned. Neither limitation is found in the patent. Adding narrowing limitations is not the purpose of claim construction. It is improper and should be disregarded. Plastic liners are well known in the aquatic industry. (P.A. 1808, ¶ 11.) In addition, adding "uniform" is unclear and would require its own construction and definition.

12

A.     **The claims do not require the plastic liner to be "uniform" or to "form[] the exposed surface" of the bottom and walls.**

Defendant seeks to add limitations that are not present in the claim language. Nothing in the claim language requires the plastic liner to be "uniform" as Defendant proposes. Nor does the claim language require the plastic liner to "form[] the exposed surface." Claim 1 simply states that the structure "includes a bottom and walls covered with a plastic liner" and that plastic liner is "made of a non-porous material able to be thoroughly cleaned." (J.A. 22, Claim 1.) Defendant's new limitations are contrary to the plain language of the claims. This phrase is not ambiguous and does not have any specialized and unique meaning. No construction is necessary. *See 3M Innovative Props. Co.*, 725 F.3d at 1333; *Douglas Dynamics, LLC, v. Buyers Prods. Co.* 717 F.3d 1336, 1342 (Fed. Cir. 2013).

B.     **The specification does not require the plastic liner to be "uniform" or "form[] the exposed surface" of the bottom and walls.**

Likewise, nothing in the specification requires the plastic liner to be "uniform" as Defendant argues. Uniform is never used in the patent. The liner need only cover the bottom and walls and the "plastic liner must have non-porous characteristics." (J.A. 17, col. 10, ll. 5-6; *see also id.* at col. 10, ll. 14-15.) Adding "uniform" would make the claim less clear, not more clear, as there is nothing in the patent to explain it in connection with the liner. *Biedermann Techs.,* 2020 U.S. Dist. LEXIS 71244, at *32.

4)     **TERMS 4 AND 5: "Fresh water feeding pipe system that allows entrance of fresh water and results in water removal by displacement of surface water through the skimmer system" / "feeding the water body with inlet water to generate displacement of surface water … and removing displaced surface water using the skimmers"**

| Claim Term | Defendant's Construction | Plaintiffs' Construction |
|---|---|---|
| "fresh water feeding pipe system that allows entrance of fresh water and results in water | "new intake water feeding pipe system that allows entrance of new intake water into the structure and results in | Plain and ordinary meaning. |

| removal by displacement of surface water through the skimmer system" '514 Patent—Claim 1 | elimination of a substantially equivalent amount of water from the structure by displacement of surface water through the skimmer system" | If a construction of "fresh water" is required: "new water" |
|---|---|---|
| "feeding the water body with inlet water to generate displacement of surface water … and removing displaced surface water using the skimmers" '822 Patent—Claim 1 | "feeding the water body with new intake water to generate displacement of surface water … and elimination of a substantially equivalent amount of displaced surface water from the structure using the skimmers" | Plain and ordinary meaning.<br><br>If a construction of "fresh water" is required: "new water" |

Claim 1 of the '514 patent is representative:

> A structure to contain a large water body . . . wherein the structure includes a system of skimmers for the removal of impurities and surface oils, a **fresh water feeding pipe system that allows entrance of fresh water and results in water removal by displacement of surface water through the skimmer system** . . . .

(J.A. 22, Claim 1 (emphasis added).)

Claim 1 of the '822 patent is likewise representative:

> A process to maintain a water body . . . the process comprising: . . . **feeding the water body with inlet water to generate displacement of surface water** containing impurities and surface oils **and removing displaced surface water using the skimmers** . . . .

(J.A. 62, Claim 1 (emphasis added).).

The parties essentially agree that "fresh water" is "new water," but Cloward seeks to add a limitation ("elimination of a substantially equivalent amount of water from the structure") that is not found in the patent. One skilled in the art would understand that the amount of fresh water added in Claim 1 would not necessarily be substantially equivalent to the amount of surface water displaced in Claim 1, given that the structure in Claim 1 also contains a large water body for recreational use. Such water body, by its nature, would have other water inflows and water outflows including, without limitation, leakage, evaporation of water, rainfall, etc. Thus, the

14

amount of fresh water that results in water displacement through the skimmer system would not generally be equal or substantially the same as the amount of water displaced through the skimmer system because the amount of fresh water would depend on compensation for other water flows and renewal rates.

Fresh water must be added to a lagoon to compensate for water losses and outflows, and to renew the water in the lagoon, where entrance of such fresh water into the lagoon results in water displacement of surface water through the skimmer system as stated in Claim 1. If there is no addition of fresh water, then there would be no displacement of water through the skimmers.

## A.   The claims do not require "elimination of a substantially equivalent amount of water from the structure."

Defendant's proposed construction that "results in elimination of a substantially equivalent amount of water from the structure by displacement of surface water," makes no sense. This is not a construction of "fresh water," it is a wholesale adding of new limitations to the claims. As seen above, nothing in the claim language of asserted Claim 1 requires elimination of a "substantially equivalent" amount of surface water by displacement. These limitations are also absent from asserted dependent Claim 6, which states:

> The structure according to claim 1, wherein said structure has a water inlet line and water inlet chambers through which water is extracted to feed the fresh water feeding pipe system of the structure.

(J.A. 22, Claim 6.) The unasserted claims likewise lack Defendant's proposed limitations. (*See id.*, Claims 8 and 13.)

As with "fresh water" in the '514 patent, Defendant attempts to read in limitations absent from the claims and specification into the claims of the '822 patent where none are present. Nothing in the claim language of the '822 patent requires that "substantially equivalent" water be removed. (J.A. 62, Claim 1.) Doing so would leave the lagoon nonoperational.

15

There is nothing about the terms "fresh water" or "intake water" that requires removal of a substantially similar volume of the water added. "Absent disclaimer or lexicography, the plain meaning of the claim controls." *Toshiba*, 681 F.3d at 1369. There was no disclaimer or lexicography. The plain meaning should control – not an opposite meaning. *See 3M Innovative Props. Co.*, 725 F.3d at 1333; *Douglas Dynamics, LLC*, 717 F.3d at 1342.

**B.    The specification does not require removal of the "substantially equivalent" water that was just added.**

Defendant's proposed claim constructions are also contrary to the specifications. Nothing in the specification of the '514 patent requires displacement of a substantially equivalent amount of water added. Fresh water is water that makes-up for water losses, and other outflows, and that allows water renewal. Likewise, nothing in the specification of the '822 patent requires that the new water be removed. (J.A. 56, col. 7, ll. 13-14, 1-36; *see also id.* at 57, col. 9, ll. 53-64.)

**5)    TERM 6: "Pumping system"**

| Claim Term | Defendant's Construction | Plaintiffs' Construction |
|---|---|---|
| "pumping system" '514 Patent—Claim 1 | "pump and associated piping connected to a moveable suction device to remove settled debris and suspended solids from the surface of the plastic liner by suction of water mixed with the debris and suspended solids and disposal of that water mixed with debris suspended solids, removing them from the structure" | Plain and ordinary meaning.<br><br>If a construction is required: "suction pump" |

A pumping system is connected to the moveable suction device that cleans the plastic liner. Claim 1 is representative:

A structure to contain a large water body . . . wherein the structure includes . . . a **pumping system** including a coupling means connected to a moveable suction device for cleaning the plastic liner.

(J.A. 22, Claim 1 (emphasis added).)

"Pumping system" is another example of an unambiguous, two-word English phrase, that the jury will easily understand. Yet, Defendant seeks to add 49 words! Other courts have agreed that this term, or "pump," needs no construction because juries understand English. *See Alifax Holding Spa v. Alcor Sci. Inc.*, No. 14-440, 2017 U.S. Dist. LEXIS 63859 at *24 (D.R.I. Apr. 27, 2017) ("The Court will apply the plain and ordinary meaning to the term 'pump.'").

**A.    Nothing in the claim language supports Defendant's new 49 words.**

Claim construction is not an opportunity for the Defendant to rewrite the claims of the patent, but that is exactly what Defendant is doing here. Nothing in the claim language supports Defendant's attempt to add 49 new words into the claim.

Claim 1 states only that the pumping system include a coupling means to the suction device. (J.A. 22, Claim 1.) The parties have agreed that "coupling means" means "coupler." There is nothing in the claim language to support Defendant's attempt to add a functional limitation "to remove settled debris and suspended solids from the surface of the plastic liner by suction of water mixed with the debris and suspended solids and disposal of that water mixed with debris suspended solids, removing them from the structure." *See Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1344 (Fed. Cir. 2008) ("Courts must generally take care to avoid reading process limitations into an apparatus claim.").

**B.    Nothing in the specification supports Defendant's complete rewriting of Plaintiffs' patent claim.**

The specification also does not limit the "pumping system" to the construction proposed by Defendant. The specification refers to "the movable electric suction pump (37)" and states that the "suction device operates by suctioning dirt through connecting hoses by means of a pumping system, said device being pulled by a system that includes a propelling device to move

the suction device . . . ." (J.A. 15, col. 6, ll. 15-17; *id.* at 18, col. 11, ll. 19-22.) There is nothing

in the specification that includes Defendant's additional proposed functional limitation.

**6)     TERM 7: "Moveable suction device"**

| Claim Term | Defendant's Construction | Plaintiffs' Construction |
|---|---|---|
| "moveable suction device" <br> '514 Patent—Claim 1 <br> '822 Patent—Claim 1 | "cleaning device for removal of debris and suspended solids that completely replaces a traditional filtering system together with the use of flocculants" | Plain and ordinary meaning. <br><br> If a construction is required: "vacuum" |

Claim 1 of the '514 patent is representative:

> A structure to contain a large water body . . . wherein the structure includes . . . a pumping system including a coupling means connected to a **moveable suction device** for cleaning the plastic liner.

(J.A. 22, Claim 1; *see also id.* at 62, Claim 1 ("removing precipitated impurities from the bottom

with a movable suction device").) Again, Defendant does not claim that the disputed phrase is

ambiguous or unclear, but rather seeks to insert several new limitations. That would be improper.

The words describe a device such as a vacuum, or similar devices, used to clean the lagoon.

**A.     The claim language does not require the "moveable suction device" to "completely replace[] a traditional filtering system together with the use of flocculants."**

The claim term "moveable suction device" is common English that will be readily

understood by the jury. No specific construction is necessary. It clearly describes a vacuum or

similar device. Nothing in the claim language supports Defendant's attempt to interject the

limitations that the suction device "completely replaces a traditional filtering system together

with the use of flocculants." The claim language of the '514 patent states only that the

"moveable suction device" is "for cleaning the plastic liner." (J.A. 22, Claim1; *see also id.* at

Claim 8 (same).)

Likewise, the claim language of the '822 patent states that the "moveable suction device" serves to "remov[e] precipitated impurities from the bottom." (J.A. 62, Claim 1.) Defendant's proposed construction just adds more words, which rarely makes language more understandable. *See Cormack v. United States*, 119 Fed. Cl. 63, 74 (2014) (rejecting defendant's proposal to add additional words in construing the claim term and determining that no construction is required). Nothing about this term requires construction. "Absent disclaimer or lexicography, the plain meaning of the claim controls." *Toshiba*, 681 F.3d at 1369.

**B.    It is erroneous to read limitations from the specification into the claims.**

While the specification explains that the movable vacuum can be used in lagoons not having traditional filtration, that is a statement of capability, not requirement. (*See* J.A. 17, col. 9, ll. 1-6; J.A. 57, col. 9, ll. 11-19.) Reading this limitation into the claims is per se improper. *See, e.g.*, *Thorner*, 669 F.3d at 1366 ("We do not read limitations from the specification into the claims."); *N. Telecom* 215 F.3d at 1290 ("This court has repeatedly and clearly held that it will not read unstated limitations into claim language."). These explanations in the specification are not a clear disavowal of claim scope and reading them into the claims would be error. *Cont'l Circuits LLC v. Intel Corp.*, 915 F.3d 788, 797 (Fed. Cir. 2019) (reversing district court decision importing limitation from specification into claims); *see also Info-Hold, Inc. v. Applied Media Techs. Corp.*, 783 F.3d 1262, 1266 (Fed. Cir. 2015); *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

The patent claims and specification require only that the suction device (vacuum) be able to clean the lagoon. While such a device could replace traditional filtration, most often it would be used in conjunction with filtration systems. Crystal Lagoons® amenities have a filtration system that is not a traditional swimming pool filtration system, in addition to a suction cleaning

device. (P.A. 1808, ¶ 12.) The U.S. Patent & Trademark Office did not require Defendant's extra words be added to the claim for allowance. This Court should not either.

7)   **TERM 8: "determining salinity of the water at the most unfavorable zone" / "determining the temperature of the water in the most unfavorable zone"**

| Claim Term | Defendant's Construction | Plaintiffs' Construction |
|---|---|---|
| "determining salinity of the water at the most unfavorable zone" / "determining the temperature of the water in the most unfavorable zone"<br>'520 Patent—Claim 1 | "testing or measuring the salinity of the water at the most unfavorable zone" / "testing or measuring the temperature of the water in the most unfavorable zone" | Plain and ordinary meaning.<br><br>If a construction is required, "determining" should be construed to mean "to find out or come to a decision about by investigation, reasoning, or calculation" |

Defendant is improperly attempting to limit the word "determining" to only "testing or measuring." The remainder of Defendant's proposed construction simply repeats the claim language verbatim.

"Determining" is an English word that is neither ambiguous nor confusing. It is not defined in the patent but is defined in the dictionary as "to find out or come to a decision about by investigation, reasoning, or calculation," and should not be limited to only "testing or measuring" as Defendant is attempting. (P.A. 1812.) Jurors will have no problem understanding and applying such a common term. That is why almost every other court has refused to construe "determining." *E.g.*, *Samsung Elecs. Co. v. NVIDIA Corp.*, No. 3:14-cv-757, 2015 U.S. Dist. LEXIS 99897, at *45 (E.D. Va. July 30, 2015); *Georgetown Rail Equip. Co. v. Holland L.P.*, No. 6:13-cv-366-JDL, 2014 U.S. Dist. LEXIS 109222, at *25 (E.D. Tex. Aug. 7, 2014) *Roche Diagnostics Operations, Inc. v. Abbott Diabetes Care*, 667 F. Supp. 2d 429, 441 (D. Del. 2009). Thus, Plaintiffs propose that this Court also decline to provide a construction for "determining" and permit the jury to apply the plain and ordinary meaning of the phrases.

However, if a construction is necessary, Plaintiffs propose construing "Determining" as "to find out or come to a decision about by investigation, reasoning, or calculation," which aligns with the broad scope intended as demonstrated by the claim language itself and the '520 patent's specification, dictionary definitions, and other courts' constructions. (P.A. 1812.) Claim 1 is representative:

> i. **determining** the salinity of the water at the most unfavorable zone;

> iii. **determining** the temperature of the water in the most unfavorable zone;

(J.A. 37, col. 19, ll. 50-51, 64-65.)

## A.   The asserted, and non-asserted, claim language supports Plaintiffs' construction and contradicts Defendant's construction.

The language of the asserted and non-asserted claims supports Plaintiffs' proposal and contradicts Defendant's proposed construction. Claim 1 of the '520 patent uses "determining" broadly and does not require that there is testing or measuring of the salinity and the temperature of the water. This is demonstrated in the claims themselves because non-asserted Claim 13 uses the narrower "determined by empirical methods," which is testing or measuring. It would violate the doctrine of claim differentiation if the Court adopted Defendant's construction. If Defendant's proposed constructions of these "determining" claim phrases are adopted, then claim 1 already requires that the salinity and the temperature of the water are "determined by empirical methods"—*i.e.* testing or measuring. Such a situation would improperly render the scope of claim 1 and claim 13 identical. Such a construction cannot be proper. *GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1310 (Fed. Cir. 2014); *Liebel-Flarsheim*, 358 F.3d at 909-10. No construction of this common English term is needed.

However, if construction is needed, Plaintiffs' proposal provides the necessary differentiation in scope by permitting the determining of salinity and temperature by any

methods, by finding out or coming to a decision after investigation, reasoning, or calculations, which could include, for instance, deciding the salinity and temperature of the water during design of a water body or obtaining the values from public knowledge. Because "determining" is a generally understood word to the public at large and is not being used in any specialized manner in connection with the '520 patent, no construction is necessary.

**B.     The specification further bolsters Plaintiffs' position.**

Plaintiffs' proposal is further supported by the specification of the '520 patent, which makes clear that both the salinity and temperature of the water body can be determined by any of a variety of methods, where such parameters may also ***be publically [sic] known or can be information from other sources, among others***." (J.A. 35, col. 15, ll. 22-33 (emphasis added).) The specification thus contemplates that some embodiments of the method claimed by the '520 patent involve "determining" the salinity and temperature of the water body by means other than testing or measuring. The "can be information from other sources, among others" language is particularly broad. Defendant's proposal improperly reads these embodiments out of claim 1 of the '520 patent without support from the specification. *Johns Hopkins*, 152 F.3d at 1355. Defendant can point to no "highly persuasively evidentiary support," *id.*, supporting the exclusion of the embodiments disclosed by the '520 patent's specification, and its attempt to do so should be rejected.

No construction is needed. If, however, the Court is nevertheless inclined to construe "determining," it should adopt Plaintiffs' proposed construction: "to find out or come to a decision about by investigation, reasoning, or calculation."

8)   **TERM 9: "Determining the minimum ORP value based on the salinity of the water" /
"determining the minimum period of time based on the water temperature"**

| Claim Term | Defendant's Construction | Plaintiffs' Construction |
|---|---|---|
| "determining the minimum ORP value based on the salinity of the water" / "determining the minimum period of time based on the water temperature" '520 Patent—Claim 1 | "performing the provided calculation or choice for the minimum ORP governed by the salinity of the water at the most unfavorable zone" / "solving one of the provided equations to calculate the minimum period of time based on the temperature of the water in the most unfavorable zone" | Plain and ordinary meaning. If a construction is required, "determining" should be construed to mean "to find out or come to a decision about by investigation, reasoning, or calculation" |

Oddly, Defendants want this Court to adopt a different meaning for "determining" for these claims: "performing the provided calculation or choice"—further evidence that Defendant's constructions are merely self-serving attempts to avoid liability and not real disputes about the meaning of these terms. "Determining" is described in the dictionary as "to find out or come to a decision about by investigation, reasoning, or calculation," and therefore cannot be limited to performing a calculation process as Defendant is improperly proposing.

Claim 1 is representative:

> ii. **determining** the minimum ORP value based on the salinity of the water . . .
>
> iv. **determining** the minimum period of time based on the water temperature . . .

(J.A. 37, col. 19, ll. 52-53, 66-67.)

**A.   The asserted, and non-asserted, claim language supports Plaintiffs' proposal and contradicts Defendant's construction.**

As above, Plaintiffs propose that these claim phrases need no construction at all because "determining" is neither ambiguous nor confusing. None of the words of these phrases are given any specialized or unique meaning in the context of the '520 patent. Alternatively, if the Court does adopt a construction, it should mean "to find out or come to a decision about by investigation, reasoning, or calculation," for the same reasons as above.

As with the "determining" claim phrases addressed in the previous section, "determining" as used in the claim phrases addressed in this section, is broader than Defendant's self-serving construction. Again, claim 13 requires that the "ORP . . . [is] determined by empirical methods." (J.A. 37, col. 20, ll. 54-56.) Claim 13, depending from claim 1, must add at least one limitation to claim 1. *Curtis-Wright*, 438 F.3d at 1380. Under Defendant's proposal, determination of an ORP value by empirical methods would be required by claim 1, improperly rendering claim 13 meaningless. Such a construction is inappropriate.

Moreover, Defendant's proposal improperly adds limitations to the claims relating to the temperature-dependent minimum period of time for maintaining a minimum ORP level. The claim's plain language requires only that **a minimum period of time be determined that satisfies the recited equations**, it **does not** require that the calculation according to the recited equations be continually run based on temperature. (J.A., col. 19, ln. 66-col. 20, ln. 13.) Nothing in claim 1 says that calculations based on the equations cited therein must actually be performed. Defendant is again adding limitations that do not appear in the claims for the purpose of bolstering its non-infringement defense.

## B.    The specification supports Plaintiffs' proposal and contradicts Defendant's.

Nothing in the specification for the '520 patent indicates that "determining" or any of the other words present in the contested claim phrases is used in a specialized or unique way. Defendant can point to no language disclosed therein that would support its torturing of the claim language to support its non-infringement position. For the same reasons as explained above, the Court should reject Defendant's proposed construction and decline to construe these phrases. Alternatively, it should construe "determining" to mean "to find out or come to a decision about by investigation, reasoning, or calculation."

9)      **TERM 10: "Portion of water [within the water body]"**

| Claim Term | Defendant's Construction | Plaintiffs' Construction |
|---|---|---|
| "portion of water [within a water body]" '520 Patent—Claim 1 | "part of the entire water body" | Plain and ordinary meaning. |

This is yet another English term that needs no construction. It is not ambiguous or unclear. Most other courts have refused to construe it. *See Galderma Labs., L.P. v. Amneal Pharm. LLC*, No. 16-207-LPS, 2017 U.S. Dist. LEXIS 70248, at *18 (D. Del. May 9, 2017); *Travelers Indem. Co. v. Integrated Claims Sys., LLC*, IPR2016-00659, Paper 6 at 7 (P.T.A.B. Aug. 31, 2016). Defendants cannot rewrite patent terms that need no construction.

Claim 1 is representative:

> 1. A method for controlling microbiological properties of a **portion of water** within a water body

(J.A. 37, col. 19, ll. 34-35 (emphasis added).)

The phrase "portion of water" appears in a number of the asserted and non-asserted claims of the '520 patent, including claims 1, 6-9, 14, 15, and 17. (J.A. at 37.) None of these claims indicates that "portion of water" is used in a unique or specialized sense in the '520 patent. Each of the words of this phrase is easily understood. No construction is necessary.

**V.      CONCLUSION**

Defendant's proposed constructions are self-serving and litigation inspired. The Court should reject them. Plaintiffs' proposed constructions, on the other hand, are supported by the intrinsic and extrinsic evidence.

Date: May 24, 2021          By:      /s/ James C. Watson
                                     James C. Watson (13395)
                                     JCWatson@traskbritt.com
                                     Glenn R. Bronson (7362)
                                     GRBronson@traskbritt.com
                                     TRASKBRITT, PC
                                     230 South 500 East, Suite 300
                                     Salt Lake City, UT 84102
                                     Tel: (801) 532-1922
                                     Fax: (801) 531-9168

                                     Anthony R. Zeuli (*Pro Hac Vice*)
                                     TZeuli@merchantgould.com
                                     Eric R. Chad (*Pro Hac Vice*)
                                     EChad@merchantgould.com
                                     Karen L. Beckman (*Pro Hac Vice*)
                                     KBeckman@merchantgould.com
                                     Peter S. Selness (*Pro Hac Vice)*
                                     PSelness@merchantgould.com
                                     MERCHANT & GOULD P.C.
                                     2200 Fifth Street Towers
                                     150 South Fifth Street
                                     Minneapolis, MN 55402-4247
                                     Tel: (612) 332-5300
                                     Fax: (612) 332-9081

                                     *Counsel for Plaintiffs Crystal Lagoons US Corp*
                                     *and Crystal Lagoons Technologies Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2021, a true and correct copy of the following

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' PROPOSED CLAIM**

**CONSTRUCTIONS** was served on all counsel of record, via ECF.

/s/ Carrie W. Watters