IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CRYSTAL LAGOONS U.S. CORP. and CRYSTAL LAGOONS TECHNOLOGIES INC., <br><br> Plaintiffs, <br><br> v. <br><br> CLOWARD H2O LLC and PACIFIC AQUASCAPE INTERNATIONAL, INC., <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER ON STANDING** <br><br> Case No. 2:19-CV-00796-BSJ <br><br> Hon. Bruce S. Jenkins |

On April 3, 2023, the Court held a status and scheduling conference in the above-entitled action. Appearances were made by Anthony R. Zeuli and James C. Watson for the Plaintiffs, and Jared J. Braithwaite for the Defendants. Among the matters discussed at the conference were the Defendants' several separate summary judgment motions. The Court directed the Defendants to consolidate those motions into a single motion for summary judgment. The Court separately addressed the Defendants' pending Motion to Dismiss for Lack of Standing. [*See* ECF No. 238.] The Court directed the Plaintiffs to file their response to that motion by May 1, 2023, which they did. [*See* ECF No. 296.] The Court having reviewed the pleadings, memoranda, and declarations submitted by the parties, and

1

the relevant law, and after fully considering the same, and for reasons discussed more fully below, GRANTS in part Defendant Cloward H2O LLC's Motion to Dismiss for Lack of Standing.[1]

## DISCUSSION

*A. Relevant Procedural Background*[2]

This action was initially commenced by the filing of a Complaint on October 20, 2019. The sole named Plaintiff was Crystal Lagoons U.S. Corp. ("Crystal U.S."), and the only Defendant was Cloward H2O LLC ("Cloward"). [*See* ECF No. 2.] In that complaint Crystal U.S. alleged that Cloward had infringed on United States Patent No. 8,062,514 (the " '514 Patent"). On January 15, 2020, before Cloward appeared in the action, Crystal U.S. filed a First Amended Complaint. [*See* ECF No. 11.] The First Amended Complaint restated the patent infringement claims that were asserted in the initial Complaint and included new claims for federal trade dress infringement and state law claims for unfair competition and tortious interference.

Cloward moved to dismiss the First Amended Complaint on February 13, 2020. [*See* ECF No. 23.] One of the dismissal arguments made by Cloward was that, at the inception of this action, Crystal U.S. lacked constitutional and statutory

---

[1] On January 20, 2022, this action (2:19-cv-796) was consolidated with action 2:21-cv-507, a later filed action that was brought by Plaintiffs against Pacific Aquascape International, Inc., which alleged similar patent infringement claims. This decision addresses standing solely in the context of the claims asserted in the 2:19-cv-796 action by Plaintiff Crystal Lagoons U.S. Corp. against Defendant Cloward H20 LLC.

[2] Because the parties have been vigorously litigating since October 2019, they are familiar with all the underlying facts and procedural history of this action. Accordingly, the Court will limit its discussion solely to those facts and procedural events necessary to resolve the standing issue.

2

standing to assert infringement claims relating to the '514 Patent. [*See* ECF No. 23.] On May 11, 2020, the Court entered an Order granting Cloward's motion but also gave Crystal U.S. leave to file a new amended complaint. [*See* ECF No. 37.] In its Order the Court did not expressly rule on the standing issue, but instead noted that "[i]t appears from the complaint that Crystal Lagoons likely has standing, but the Court stated at the teleconference that the question of standing could be satisfied by an appropriate reference to the license agreement."

Eventually, Crystal U.S. filed a Third Amended Complaint. [ECF No. 77.] The Third Amended Complaint added additional patent infringement claims for two additional patents: United States Patent 9,708,822 (the "'822 Patent") and United States Patent No. 8,753,520 (the "'520 Patent").[3] On January 27, 2023, Cloward filed a new motion to dismiss for lack of standing. [ECF No. 236.] In its motion, Cloward asserts that discovery has revealed that Crystal U.S. was not the owner of the asserted patents when this action was initiated on October 20, 2019. Cloward also contends that "a post-lawsuit exclusive license" between Crystal Lagoons Technologies, Inc. (the purported owner of the patents) and Crystal U.S. cannot cure Crystal U.S.'s lack of standing as a matter of law. Because Crystal U.S lacked standing at the time this action was commenced, Cloward argues this Court lacks subject matter jurisdiction and Cloward's patent claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1). [*See id.*]

---

[3] Plaintiff Crystal Lagoons Technologies, Inc. is named as a plaintiff in this pleading, and was initially added as a plaintiff in the Second Amended Complaint filed on June 1, 2020.

As noted above, the Court directed Crystal U.S. to respond to this motion. In it is response, Crystal U.S., for the first time, expressly identified to the Court the existence of a May 12, 2014 Technology License Agreement (the "2014 TLA"), which purportedly gives Crystal U.S. "exclusionary rights" to the '514 Patent that provides Crystal U.S. with the constitutional standing to bring this action. [*See* ECF No. 296.] Crystal U.S. filed a copy of the 2014 TLA and a later executed November 19, 2019 License Agreement (the "November 2019 License") in support of its response. [*See* ECF No. 301, Exs. 3, 4.]

*B. Analysis*

A determination of whether Crystal U.S. has constitutional standing turns on whether, at the time this action was initially filed, Crystal U.S., the only then-named Plaintiff, owned the '514 Patent, had obtained "all substantial rights" to the '514 Patent, or held an exclusive license to the '514 Patent. That determination, in turn, requires an analysis of any assignments or licenses relating to the '514 Patent. In opposing Cloward's motion, Crystal U.S. submitted various assignments and licenses purporting to establish its constitutional and statutory standing. [*See* ECF Nos. 296, 298, 301.] No party has objected to their submission or to the Court's review of these materials, which were referenced in the Plaintiffs' pleadings.[4] [*See* ECF No. 77, ¶¶ 9-13.]

---

[4] *Cf. Shandong Shinho Food Indus. Co., Ltd. v. May Flower Int'l, Inc.*, 521 F. Supp. 3d 222, 233 n.2 (E.D.N.Y. 2021) (noting in case alleging trademark infringement that court could consider license to use the mark on a motion to dismiss because the license was "integral" to the complaint).

Whether Crystal U.S. had constitutional standing is a threshold jurisdictional issue that may be raised at any time and cannot be waived. *See, e.g., Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1336 (Fed. Cir. 2007) ("Standing is a legal question and jurisdictional issue . . . ."); *Cirba Inc. v. VMware, Inc.*, C.A. 19-742, 2020 WL 2992348, at *4 (D. Del. June 3, 2020) (addressing standing after trial awarding $236 million to plaintiff); *Medtronic Sofamor Danek USA, Inc. v. Globus Med., Inc.*, 637 F. Supp.2d 290, 298 (E.D. Pa. 2009) (citing cases that the question of standing is not subject to waiver and may be raised at any time). Pursuant to Federal Rule of Civil Procedure 12(b)(1), a complaint is subject to dismissal for lack of jurisdiction if the plaintiff lacks standing to bring its claim. And constitutional standing in a patent case is determined at the time the action is initially commenced without any regard to any later amendments of the complaint. *See Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1202 n.3 (Fed. Cir. 2005) ("The initial standing of the original plaintiff is assessed at the time of the original complaint, even if the complaint is later amended.") (citations omitted). If a plaintiff in a patent case lacks constitutional standing, the action "must be dismissed and the jurisdictional defect cannot be cured by the addition of a party with standing . . . [or] by the subsequent purchase of an interest in the patent in suit." *See Schreiber Foods*, 402 F.3d at 1203 (citations omitted).

In patent cases such as this action, it is well-established that "the touchstone of constitutional standing in a patent infringement suit is whether a party can establish that it has an exclusionary right in a patent that, if violated by another,

would cause the party holding the exclusionary right to suffer legal injury." *See WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1265 (Fed. Cir. 2010). Such a right can be established by the patent owner, who by statute has the right to exclude others, and may sue in its own name. *See Morrow*, 499 F.3d at 1339-40; *see also* 35 U.S.C. § 281 (establishing that "patentee" has right to initiate "civil action for infringement of his patent).

In addition, because an assignee of "all substantial rights" in the patent holds the exclusionary rights of the patent owner, such an assignee has constitutional standing and may sue in its own name. *See id.* And finally, an exclusive licensee that holds some but not "all substantial rights" to the patent may have constitutional standing if it "hold[s] exclusionary rights and interests created by patent statutes." *See id.* at 1340; *see also Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1553 (Fed. Cir. 1995) ("To be an exclusive licensee, a party must have received, not only the right to practice the invention within a given territory, but also the patentee's express or implied promise that others shall be excluded from practicing the invention within that territory.").

If the licensee has not received this promise of exclusivity, which is "the right to exclude others from making, using, or selling the patented invention, the [licensee] has only a 'bare license'." *See Rite-Hite*, 56 F.3d at 1552. A bare licensee, or a non-exclusive licensee, lacks standing to sue others for patent infringement because it did not receive the necessary rights to exclude others. *See id.* at 1553; *Morrow*, 499 F.3d at 1340-41; *Propat Int'l Corp. v. RPost, Inc.*, 473 F.3d 1187, 1193

(Fed. Cir. 2007). This is so even if the non-exclusive licensee may have been harmed or may have suffered damages due to the alleged infringement. *See Ortho Pharmaceutical Corp. v. Genetics Institute, Inc.*, 52 F.3d 1026, 1031 (Fed. Cir. 1995) (citations omitted).

In this case, the issue before the Court is to determine whether Crystal U.S. held an exclusive license or a non-exclusive license. If it is the former, Crystal U.S. has constitutional standing, if the latter, this action must be dismissed, despite its advanced procedural stage, because Crystal U.S. lacked standing when it initiated this action. Guidance in making that determination comes from the Federal Circuit in its decision in *Textile Productions, Inc. v. Mead Corp.*, 134 F.3d 1481, 1484 (Fed. Cir. 1998). In *Textile Productions,* the court instructed that the district court must review the terms of the license agreement and examine the substance of the license. It also warned lower courts that the use of the word "exclusive" within the license "is not controlling; what matters is the substance of the arrangement." *Id.* Further, it instructed that:

> Because patent rights are rights to "exclude others," a licensee is an exclusive licensee only if the patentee has promised, expressly or impliedly, that "others shall be excluded from practicing the invention" within the field covered by the license. Put another way, an exclusive license is a license to practice the invention ... accompanied by the patent owner's promise that others shall be excluded from practicing it within the field of use wherein the licensee is given leave. Thus, if a patentee-licensor is free to grant licenses to others, licensees under that patent are not exclusive licensees.

*Id.* (cleaned up).

7

As applied here, this means that if, after examining the text of the 2014 TLA, the Court determines that Crystal U.S. did not receive the right to exclude others from making, using, or selling the '514 Patent, Crystal U.S. has a non-exclusive license and, lacking any exclusionary rights, also lacks standing to sue for patent infringement. *See Rite-Hite*, 56 F.3d at 1552.

Crystal U.S. argues that the 2014 TLA granted exclusionary rights in the following manner: 1) by stating that Crystal U.S. has an "exclusive" license to use the '514 Patent within the United States; 2) by granting Crystal U.S. an "'exclusive license' to 'sublicense' the Technology . . . without restriction"; and 3) by giving Crystal U.S. the right to directly provide service to sublicensees. [*See* ECF no. 296 at 2-3, 6.]

As to the first point, the Federal Circuit has made it clear that the use of the word "exclusive" in a license agreement is not determinative of whether the license is an exclusive license that contains exclusionary rights. *See, e.g., In re Cirba Inc.*, No. 2021-154, 2021 WL 4302979, at *2 (Fed. Cir. Sept. 22, 2021) (citing cases); *see also Textile Prods.*, 134 F.3d at 1484 ("The use of the word 'exclusive' is not controlling; what matters is the substance of the arrangement."); *Ortho Pharm.*, 52 F.3d at 1032 (explaining "it is the licensee's beneficial ownership of a right to prevent others from making, using or selling the patented technology" that determines if it is exclusive licensee, "not simply that the word 'exclusive' may or

8

may not appear in the license").[5] Even the cases relied on by Plaintiffs, *Lone Star Silicon Innovations LLC v. Nanya Technology Corp.*, 925 F.3d 1225, 1230 (Fed. Cir. 2019), and *Morrow v. Microsoft Corp*, 499 F.3d 1332, 1340 n.7 (Fed Cir. 2007), recognize that the labels used in a license agreement are not controlling as to what rights have been transferred.

And as to the third point (that is, that Crystal U.S. may provide services to sublicenses), this provision is simply the recognition of how Crystal U.S. may use the '514 Patent—it does not grant any exclusionary rights. There is no provision in the 2014 TLA that limits any other entity from supplying similar services to the sublicensees or grants Crystal U.S. the power to exclude others from doing so. In fact, the 2014 TLA notes that Crystal U.S. may provide these services "directly, or through third parties," which suggests that Crystal U.S.'s supply of these services and its use of the '514 Patent is not exclusive. *See* 2014 TLA ¶ 3.2.[6]

And insofar as the power to grant sublicenses is concerned, it is correct that some courts have considered the power to grant sublicenses some evidence of an exclusive license. A grant of that right alone, however, does not establish that Crystal U.S. held any exclusionary rights to the '514 Patent. Courts have declined to recognize constitutional standing notwithstanding the fact that the licensee also held sublicensing rights. For example, in *Sherman & Associates, Inc. v. Oxford*

---

[5] Plaintiffs' citation to *Viam Mfg., Inc. v. Iowa Export-Import Trading Co.*, 243 F.3d 558, 2000 WL 1234623, at *1 (Fed. Cir. Aug. 31, 2000), offers no assistance. Most important, it goes against the weight of Federal Circuit decisions cited above.

[6] To the extent a third-party provider is called upon to provide these services to a sublicensee, it appears that the third-party provider must necessarily use the '514 Patent to provide such services.

*Instruments, PLC*, C-11-00827, 2012 WL 78462, *3-6 (N.D. Cal. Jan. 10, 2012), the court concluded that a licensee who had been granted an "exclusive" sublicensing right did not have standing to sue in its own name, absent a right to practice in the patent and a right to enforce the patent through litigation. Crystal U.S., as discussed below, lacked that enforcement right.

And in *Propat International Corp. v. Rpost, Inc.*, 473 F.3d 1187 (Fed. Cir. 2007), the court held that a licensee who had been given the responsibility to sublicense the patent to third parties, nevertheless lacked constitutional standing. The court focused its attention on the fact that the licensor retained a right to veto any sublicenses as defeating any right to exclude. *Id.* at 1191.[7] Although the 2014 TLA does not contain any express veto rights as to sublicensing,[8] it also does not include any agreement by the licensor, Crystal Lagoons B.V.,[9] that it will not license the '514 Patent to anyone else or give anyone else a right to sublicense the

---

[7] The court in *Propat* denied standing even though the license also had a right to sue for any alleged infringement—a right notably absent from the 2014 TLA. *See* 473 F.3d at 1191-94. As noted below, the fact that Crystal U.S. may not commence litigation to protect or defend the '514 Patent weighs heavily against finding Crystal U.S. had an exclusive right in the '514 Patent that would support standing.

[8] Paragraph 11.1 of the 2014 TLA provides that, "without the prior written consent of [Crystal Lagoons B.V.]," Crystal U.S. may not "assign or transfer the rights or obligations to which it is bound and that arise from this Agreement." *See* 2014 TLA ¶ 11.1. Although it is not entirely clear that this limitation also requires consent for any sublicenses, it could reasonably be interpreted that way. If so, because Crystal U.S. required Crystal Lagoons B.V.'s consent to any sublicense further supports the conclusion that Crystal U.S. lacked exclusionary rights in the '514 Patent. *See Propat*, 473 F.3d at 1191.

[9] When the 2014 TLA was signed, Crystal Lagoon's B.V. (a Curacao corporation) was purportedly the holder of all rights to the '514 Patent. In December 2019, after this action was commenced, Crystal Lagoons B.V. converted to a Delaware corporation and changed its name to Crystal Lagoons Technologies, Inc. [*See* ECF No. 301, Ex. 5.]

'514 Patent. To the contrary, the 2014 TLA provides that the licensor has retained the right to "dispose of, sell or transfer" the '514 Patent as it saw fit. *See* 2014 TLA ¶ 3.3.

Additionally, in *ChromaDex, Inc. v. Elysium Health, Inc.*, 507 F. Supp 3d. 579 (D. Del. 2020), the court concluded that a licensee who had the right to grant sublicenses nevertheless lacked constitutional standing because the right to sublicense also rested with an affiliate of the licensee. *Id.* at 585. Here, too, the licensor, Crystal Lagoons B.V., remained free to grant licenses or sublicenses.

Moreover, Crystal Lagoons B.V. also retained important control over any sublicensing. Among other things, the 2014 TLA required that any sublicense agreement contain certain provisions, including that Crystal Lagoons B.V. remained the exclusive owner of the '514 Patent, that Crystal Lagoons B.V. was not limited in its rights to dispose of, sell, or transfer any or all parts of the '514 Patent, and that the sublicensee had "no property right or title whatsoever" in the '514 Patent. *See* 2014 TLA ¶ 3.4 (citing 2014 TLA ¶¶ 6-11). Retention of these rights in the context of a sublicensing provision further supports the conclusion that Crystal U.S. held a non-exclusive license. *Cf. E8 Pharms. LLC v. Affymetrix, Inc.*, 680 F. Supp. 2d 292, 298 (D. Mass. 2010) (noting that licensee's power to set the terms of sublicense agreements was limited because it had to include a provision setting forth the licensor's right to terminate the sublicense and had to incorporate certain terms and conditions into the sublicense so as to enable the licensee to comply with

11

the license agreement, and the licensee had to include the licensor as a third-party beneficiary under all sublicense agreements).[10]

Taking into consideration Plaintiffs' arguments and reviewing the entire 2014 TLA, it is the Court's conclusion that the provisions of the 2014 TLA establish that Crystal U.S. lacked the necessary exclusionary rights to establish constitutional standing. These include the following provisions: 1) that the licensor, Crystal Lagoons B.V., retained "exclusive ownership" of the '514 Patent; 2) that any improvements to the '514 patent by Crystal U.S. shall be under the licensor's "exclusive ownership"; 3) that Crystal U.S. acknowledged that it "acquires only a license to use the ['514 Patent] . . . without the foregoing entailing any acquisition of property right or title whatsoever . . . over the ['514 patent]"; 4) that the licensor "shall under no circumstances be limited in the exercise of its authority, as the holder of the rights to the ['514 Patent] being able to howsoever dispose of, sell or transfer for any purpose all or part of the ['514 Patent]"; 5) that Crystal U.S. could not "assign or transfer" any of its rights under the 2104 TLA without Crystal Lagoons B.V.'s prior written consent; and 6) that "[n]o rights or licenses are granted or deemed to be granted hereunder or in connection herewith, other than those

---

[10] *See also Melea Ltd. v. ADAC Plastics, Inc.*, No. CV 09-10499, 2009 WL 10720705, at *2-3 (E.D. Mich. May 6, 2009). In *Melea*, even though the various agreements gave the licensee the right to negotiate, execute, and even enforce sublicense agreements, the court found there was no constitutional standing. Rather, the court noted that "the majority of specific rights enjoyed by [licensee] under the license agreement pertained only to its relationships with its sublicensees." *Id.* at *3. The court found that those rights conferred "no property interest in the monopoly of the patent, nor any proprietary authority to take legal action to ensure that others shall not practice the invention." *Id.* Accordingly, the court held that the license conveyed "'no more than a covenant by the patentee not to sue the licensee for making, using, or selling the patented invention, the patentee reserving the right to grant others the same right.'" *Id.* at *3 (citing *Ortho Pharma.*, 52 F.3d at 1031).

rights or licenses expressly granted in this Agreement." *See* 2014 TLA ¶¶ 7.1, 7.2, 7.3; 3.3, 11.1, 17.6. These express provisions demonstrate that it was the licensor, Crystal Lagoons B.V., and not the licensee, Crystal U.S., that maintained control over the right to exclude others. S*ee, e.g., Hill-Rom Co. v. General Elec. Co.*, Civ. No. 2:14-cv-187, 2014 WL 3871223, at *2 (E.D. Va. Aug. 6, 2014) (recognizing that agreement under which the licensor retained the right to enforce the patents and clarified that the licensor remained owner of the patents, and that nothing in the agreements "should be construed to establish ownership in" any of the patents, demonstrated licensee's lack of standing).

Any doubt as to that determination is resolved by the provisions in the 2014 TLA that delegated the sole right to enforce and protect the '514 Patent with Crystal B.V., and not Crystal U.S. *See* 2014 TLA ¶¶ 7.2, 8.1, 8.2. These provisions make plain that, at least at the time this action was initially filed, Crystal U.S. lacked any rights to commence any infringement action regarding the '514 Patent against anyone. The 2014 TLA expressly provides that the right to defend the '514 Patent was the "exclusive responsibility" of the licensor, Crystal Lagoons B.V. *See* 2014 TLA ¶ 8.2; *see also* 2014 TLA ¶ 7.2 (establishing that the "right to seek legal protection . . . or other recognition of evidence of intellectual property rights in connection with or related to the Technology shall belong exclusively to [Crystal Lagoons B.V.]"). Crystal U.S.'s obligations regarding any infringement were limited to informing Crystal Lagoons B.V. of the infringement, and reasonably aiding Crystal Lagoons B.V. in any proceeding concerning the '514 Patent that Crystal

Lagoons B.V. might initiate. *See* 2014 TLA ¶¶ 8.1, 8.2. Under these provisions it is indisputable that Crystal U.S. lacked the most important exclusionary right: the right to exclude anyone for using or infringing on the '514 Patent. At the time this action was commenced, that right remained solely with the licensor, Crystal Lagoons B.V.

Where, as here, the sole and exclusive right to initiate infringement proceedings was retained by the licensor it has been held that the licensee was only a non-exclusive licensee and, therefore, lacked standing. *See Frazier v. Austin Explosives Co.*, C.A. No. C-10-2, 2010 WL 2352059, at *3-4 (S.D. Tex. June 10, 2010). In *Frazier v. Austin Explosives*, the issue presented was whether a party to a patent license agreement could intervene in an infringement action. The licensee argued that because it held an exclusive license it had standing to intervene. The court disagreed. First, it held that the mere fact the license used the word "exclusive" was not controlling. *Id.* at *3. Instead, the court looked to the entire license agreement and concluded that, because it denied the licensee "important rights," the license was a non-exclusive license that did not support standing. Most important, noted the court, was the fact that the license agreement did not grant the licensee the "'right to prevent others from making, using, or selling the patented technology.'" *Id.* (quoting *Ortho Pharma*, 52 F.3d at 1032). Rather, that right remained with the licensor, who, under the license agreement, retained the sole and exclusive right to institute and prosecute infringement actions. The court also noted that the license agreement required the licensee to cooperate with the licensor

14

in the prosecution of any infringement action. *Id.* Citing cases from the Federal Circuit, the court explained that because the "right to sue is the means by which a patentee exercises the right to exclude others," a license that does not grant the licensee the right to enforce the patent "conveys no more than a bare license." *Id.* at *3 (citations omitted). Because the license agreement failed to provide the licensee with the right to sue for infringement, or to recover any damages for infringement, the court concluded that the licensee only had a non-exclusive license and therefore lacked standing to sue, and, without standing, it could not intervene.[11] *Id.* at *4; *see also Fieldturf, Inc. v. Southwest Recreational Industries, Inc.*, 357 F.3d 1266, 1267 (Fed. Cir. 2004) ("First, without granting [the licensee] the right to enforce the patent, either explicitly or impliedly, the document conveys no more than a bare license.").

The same conclusion was reached in *Cirba Inc. v. VMware, Inc.*, C.A. 19-742, 2020 WL 2992348, at *4 (D. Del. June 3, 2020), where, on similar facts, the court held that the licensee was "no more than a bare licensee." The court observed that all property rights in the patent, including all "rights of enforcement," and "all rights to sue or recover for the past infringement thereof," remained with the licensor. *Id.* Specifically, the court noted even though the license agreement gave the licensee "an exclusive, transferable worldwide license to sue" the patent, the agreement also expressly provided that the licensor retained all proprietary rights

---

[11] In a footnote, the *Frazier* court acknowledged that "it would indeed be illogical for the court to interpret the License Agreement so as to allow [the licensee] to join in this infringement lawsuit notwithstanding [the Licensor's] "sole and exclusive right" to bring and prosecute such a suit. *Id.* at *3 n.4.

15

to the patent and that the licensee had "no rights in such proprietary rights." *Id.* Because the licensor remained free "to practice the patents" and "free to enforce (or not enforce)" the patents, the court concluded that the licensee lacked any right to exclude and was, thus, a bare licensee. *See id.* (citing *Ortho Pharm.*, 52 F.3d at 1031). There is no substantive difference between these provisions and those found in the 2014 TLA.

In reaching its conclusion of no standing, the *Cirba* court further noted that it was crucial that the license agreement contained "no prohibition, restriction, or limitation of any kind on [the licensor's] rights to license other entities in addition to [the licensee]." *Id.* at *4. The 2014 TLA is no different. In fact, as noted above, the 2014 TLA affirmatively and expressly grants the licensor the unfettered right to dispose of, sell, or transfer the '514 patent. *See* 2014 TLA ¶ 3.3 ("[Crystal Lagoons B.V.] shall under no circumstance be limited in the exercise of its authority as the holder of the rights to the Technology, being able to howsoever dispose of, sell or transfer for any purpose all or part of the Technology and the rights thereto held by third parties.").

In short, and as in *Cirba*, there is simply no provision in the 2014 TLA that demonstrates that that the licensor, Crystal Lagoons B.V., promised not to grant a license to any other entity or gave that exclusionary right to Crystal U.S. *See id.* at *5 (citing *Textile Prod.*, 134 F.3d at 1484 ("To qualify as an exclusive license, an agreement must clearly manifest the patentee's promise to refrain from granting to anyone else a license in the area of exclusivity.")); *see also Rite-Hite*, 56 F.3d at 1552

("To be an exclusive licensee for standing purposes, a party must have received, not only the right to practice the invention within a given territory, but also the patentee's express or implied promise that others shall be excluded from practicing the invention within that territory as well."); *see also In re Cirba Inc.*, No. 2021-154, 2021 WL 4302979, at *1 (Fed. Cir. Sept. 22, 2021) (finding "no error in the district court's holding that [licensee] is a bare licensee without the right to exclude"). The absence of such a promise in this case supports the Court's conclusion that Crystal U.S. was a bare licensee with a non-exclusive license. And a bare license does not provide standing without the grant of a right to exclude others. *See Rite-Hite*, 56 F.3d at 1552-53.

*C. Conclusion*

It was Crystal U.S.'s burden to establish standing, which in this case required it to establish that it had more than a non-exclusive license. *See Ortho Pharma.*, 52 F.3d at 1032-33. Having failed to do so, Crystal U.S.'s patent infringement claims against Cloward are dismissed without prejudice. As a result, all counterclaims filed by Cloward in relation to those claims are also dismissed without prejudice, and all other pending motions concerning those claims are dismissed as moot. *See, e.g., H.R. Technologies, Inc. v. Astechnologies, Inc.*, 275 F.3d 1378, 1386 (Fed. Cir. 2002) (noting that once the district court dismissed plaintiff's infringement claims for lack of standing it was correct for the district court to also dismiss defendant's counterclaims and motions relating to non-infringement). This dismissal does not, at present, impact the claims asserted by Crystal U.S. and

17

Crystal Lagoons Technologies, Inc. against Pacific Aquascape International, Inc., in this consolidated action.

It bears repeating that the fact that a post-filing license agreement may have expanded Crystal U.S.'s rights regarding the '514 Patent (and the other patents joined later in this action) is of no moment. *See Schreiber Foods*, 402 F.3d at 1203. Here standing is determined as of October 20, 2019, the date the initial Complaint was filed. *See id.* at 1202 n.3. The subsequent amendments to that Complaint, as well as the later executed November 2019 License, are of no consequence in making that determination. *See id.* at 1202 n.3 & 1203. Because Crystal U.S. lacked standing when the initial Complaint was filed, dismissal is both warranted and required.

Moving forward, the Plaintiffs should examine closely the various license agreements and assignments concerning the asserted patents to determine which party, if any, has standing to assert patent infringement claims for conduct that pre-dates the execution of the November 2019 License, and which party has standing to assert patent claims against Pacific Aquascape.

IT IS THEREFORE ORDERED that the Defendant Cloward H2O LLC's Motion to Dismiss for Lack of Standing is GRANTED in part as to the patent infringement claims asserted by Crystal Lagoons U.S. Corp.; and

IT IS FURTHER ORDERED that all counterclaims filed by Cloward H2O in relation to those claims are also dismissed without prejudice; and

IT IS FURTHER ORDERED that all pending motions concerning those claims are dismissed as moot.

DATED this 18th day of May 2023.

BY THE COURT:

Hon. Bruce S. Jenkins
United States Senior District Judge