IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CRYSTAL LAGOONS U.S. CORP. and CRYSTAL LAGOONS TECHNOLOGIES INC., | **MEMORANDUM DECISION AND ORDER** |
| Plaintiffs, | Case No. 2:19-cv-00796-RJS-DAO |
| v. | Chief District Judge Robert J. Shelby |
| CLOWARD H2O LLC and PACIFIC AQUASCAPE INTERNATIONAL, INC, | Magistrate Judge Daphne A. Oberg |
| Defendants. | |

Before the court is Defendant Pacific Aquascape International, Inc.'s Motion for Summary Judgment.[1]  Having reviewed the Motion and relevant briefing, the court GRANTS IN PART Pacific's Motion.

## FACTUAL BACKGROUND

This is a patent-infringement case arising out of Defendant Cloward H2O LLC's design and Pacific's construction of a large recreational water structure at the Hard Rock Hotel & Casino located on Seminole Tribal land in Hollywood, Florida (the Lagoon).[2]  Specifically, Plaintiffs allege Defendants infringed on three patents during their design and construction of the Lagoon: U.S. Patent No. 8,062,514 (the '514 Patent), U.S. Patent No. 8,753,520 (the '520 Patent), and U.S. Patent No. 9,708,822 (the '822 Patent) (collectively, the Patents).[3]  In their

---

[1] Dkt. 380, *Defendant's Consolidated Motion for Summary Judgment* (*Motion*).

[2] *See* Dkt. 437, *Plaintiffs' Opposition to Defendant's Consolidated Motion for Summary Judgment* (*Opposition*) at 1.

[3] *Id.*

most basic sense, the '514 Patent is a patented structure to contain a large body of water,[4] the '520 Patent is a method for controlling microbiological properties of a portion of water within a larger body of water,[5] and the '822 Patent is a patented process to maintain and clean large bodies of water without traditional filtration.[6]  The court refers to the '520 and '822 Patents as the Water Treatment Patents.

## PROCEDURAL BACKGROUND

Plaintiff Crystal Lagoons US Corporation originally brought suit against Cloward in October 2019, alleging Cloward had infringed only on the '514 Patent.[7]  Plaintiff Crystal Lagoons Technologies Inc. later joined in the action, and both Plaintiffs asserted claims against Cloward for direct and induced infringement of all three Patents and sought injunctive relief enjoining Cloward from further infringement.[8]  Cloward asserted counterclaims seeking declaratory judgments of noninfringement and invalidity of the Patents.[9]  Around the same time, Plaintiffs filed a separate and nearly identical Complaint against Pacific,[10] and Pacific asserted

---

[4] *See* Dkt. 77, *Third Amended Complaint* ¶ 21.

[5] *See id.* ¶ 32.

[6] *See id.* ¶ 30.

[7] Dkt. 2, *Complaint* ¶ 50.

[8] *Third Amended Complaint* ¶¶ 47, 48, 53, 55, 60.

[9] *See* Dkt. 99, *Cloward H2O LLC's Amended Answer and Counterclaims in Response to Plaintiffs' Third Amended Complaint* ¶¶ 10–42.

[10] *See* Dkt. 161-1, *Complaint* (*Complaint Against Pacific*).

nearly identical counterclaims against both Plaintiffs.[11]  Pacific's case was later consolidated into the present action.[12]

The court later dismissed all of Crystal Lagoons US Corporation's claims asserted against Cloward for lack of standing, and as a result, all counterclaims filed by Cloward in relation to those claims were also dismissed.[13]  At a hearing involving various evidentiary motions, the parties agreed Cloward had been dismissed entirely from the case.[14]  Thus, the only remaining claims are Plaintiffs' claims for direct and induced infringement of the '514 Patent, the '822 Patent, and the '520 Patent against Pacific,[15] and Pacific's counterclaims seeking declaratory judgments of noninfringement and invalidity of the Patents.[16]

In February 2024, the court directed Pacific to file only motions in limine and motions to exclude that would directly affect the court's consideration of an anticipated summary judgment motion.[17]  Pacific filed the present Motion and various evidentiary motions in May 2024.[18]  The

---

[11] *See* Dkt. 23, (case no. 2:21-cv-00507), *Pacific Aquascape International Inc.'s Answer and Counterclaims in Response to Plaintiffs' Complaint* (*Pacific's Answer*) ¶¶ 10–42.

[12] Dkt. 164, *Order Granting Stipulated Motion to Consolidate Actions*.

[13] Dkt. 309, *Memorandum Decision and Order on Standing*.

[14] Dkt. 471, *Minute Entry for Proceedings Held before Judge Robert J. Shelby*.

[15] *Complaint Against Pacific* at 56.

[16] *Pacific's Answer* at 20–24.

[17] Dkt. 348, *Docket Text Order*.

[18] *Motion*; Dkt. 362, *Defendant's Motion in Limine to Preclude Allegations of Non-Compliance with Pool Codes* (*Pool Code Motion*); Dkt. 363, *Defendant's Motion in Limine to Exclude Unpreserved Evidence and Testimony about Plaintiffs' Testing of the Accused Instrumentality* (*Instrumentality Motion*); Dkt. 369, *Defendant's Motion to Exclude Plaintiffs' Expert Richard F. Bero* (*Bero Motion*); Dkt. 372, *Defendant's Motion to Exclude Plaintiffs' Expert Christopher D. Lidstone* (*Lidstone Motion*); Dkt. 375, *Defendant's Motion to Exclude Plaintiffs' Expert Jennifer Norlin* (*Norlin Motion*).

court ruled on the evidentiary Motions on February 4, 2025.[19]  The Motion for Summary Judgment is fully ripe and ready for review.[20]

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[21]  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[22]  A fact is material if, under the governing substantive law, it could affect the outcome of the suit.[23]  When applying this standard, the court views the evidence and makes all reasonable inferences in the light most favorable to the nonmoving party.[24]

In the Tenth Circuit, "the moving party carries the burden of showing beyond a reasonable doubt that it is entitled to summary judgment."[25]  Even though a defendant "does not have the ultimate burden of persuasion at trial," when moving for summary judgment, a defendant has "both the initial burden of production . . . and the burden of establishing that summary judgment is appropriate as a matter of law."[26]  This burden may be met by either "producing affirmative evidence negating an essential element of the non-moving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of

---

[19] Dkt. 474, *Memorandum Decision and Order*.

[20] *Opposition*; Dkt. 449, *Defendant's Reply to Plaintiffs' Opposition to Defendant's Consolidated Motion for Summary Judgment* (*Reply*).

[21] Fed. R. Civ. P. 56(a).

[22] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[23] *Id.*; *see also United States v. Simons*, 129 F.3d 1386, 1388 (10th Cir. 1997) ("The substantive law of the case determines which facts are material.").

[24] *N. Nat. Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008).

[25] *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008) (citation omitted).

[26] *Id.* (citation omitted).

persuasion at trial."[27]  When determining whether a nonmovant has provided sufficient evidence, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[28]  If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.[29]  But "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."[30]  Ultimately, this threshold inquiry ascertains whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[31]

In ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [that party's] favor."[32]  Nonetheless, "the judge must view the evidence presented through the prism of the substantive evidentiary burden."[33]

## ANALYSIS

In its Motion, Pacific seeks summary judgment with respect to noninfringement of all Patents, invalidity of the '514 and '520 Patents, and damages.  A natural starting point for the court is addressing the validity of the '514 and '520 Patents.  Finding the '514 Patent is valid and the '520 Patent is invalid, the court then addresses only Pacific's arguments regarding direct

---

[27] *Id.* (citation omitted).

[28] *Anderson*, 477 U.S. at 249.

[29] *Id.* (citations omitted).

[30] *Id.* at 255.

[31] *Id.* at 250.

[32] *Id.* at 255 (citation omitted).

[33] *Id.* at 254.

infringement of the '514 and '822 Patents, indirect infringement of the same Patents, and damages.

## I.    Validity of the '514 Patent

Pacific first argues the asserted claims of the '514 Patent are indefinite and invalid because they each recite "color, transparency and cleanness similar to swimming pools or tropical seas" without an adequate and objective benchmark for what that phrase means.[34] Plaintiffs contend this language is a nonlimiting portion of the '514 Patent Claim 1 preamble, which cannot render a claim indefinite.[35] Still, Pacific insists that even if the language is nonlimiting, the claims are anticipated or obvious as each claim is disclosed in prior art pool references.[36] For the reasons that follow, the court ultimately determines Pacific is not entitled to summary judgment based on invalidity of the '514 Patent.

The court turns first to the issue of construing the preamble as limiting or nonlimiting. While preamble language is often treated as nonlimiting in nature, "it is not unusual for courts to treat preamble as limiting."[37] There is no litmus test for determining whether preamble language is limiting.[38] Indeed, "whether to treat a preamble as a claim limitation is determined on the facts of each case in light of the claim as a whole and the invention described in the patent."[39] Preamble language that merely states the purpose or intended use of an invention is generally not

---

[34] *Motion* at 19.

[35] *Opposition* at 23. Plaintiffs also inaccurately argue the court has already rejected Pacific's indefiniteness argument. *See id.* The order cited by Plaintiffs in support of this argument states "[t]he Court declines to address the indefiniteness issue related to patent validity raised by Defendant's Motion." Dkt. 180, *Order Regarding Additional Claim Construction* at 2.

[36] *See Motion* at 28–29.

[37] *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 952 (Fed. Cir. 2006).

[38] *Id.* (citation omitted).

[39] *Id.* (quoting *Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 831 (Fed. Cir. 2003)).

treated as limiting the scope of the claim.[40]  Similarly, a preamble is not limiting when the claim body describes a structurally complete invention such that deletion of the relevant preamble phrase does not affect the structure or steps of the claimed invention.[41]  But when the preamble recites essential structure that is important to the invention or necessary to give meaning to the claim, the preamble is found to be limiting.[42]  In other words, a preamble is limiting when it is "necessary to give life, meaning, and vitality to the claim."[43]  Furthermore, "when the limitations in the body of the claim 'rely upon and derive antecedent basis from the preamble, then the preamble may act as a necessary component of the claimed invention.'"[44]

Here, the '514 Patent Claim 1 preamble recites: "A structure to contain a large water body, including a water body larger than 15,000 m³, for recreational use with color, transparency and cleanness characteristics similar to swimming pools or tropical seas . . . ."[45]  A plain reading of this language reveals how the clause beginning with "for recreational use with color" simply states the purpose or intended use of the invention.  It does no more than provide "context in which the invention operates,"[46] and it is not so essential that without it the "performance of the recited steps is nothing but an academic exercise."[47]  Even when the court removes the phrase from the preamble, the remaining claim language sets out the complete invention.  No limitations in the body of the claim depend upon or derive antecedent basis from the recreational use, color,

---

[40] *Id.* (citations omitted).

[41] *Am. Med. Sys., Inc. v. Biolitec, Inc.*, 618 F.3d 1354, 1358–59 (Fed. Cir. 2010) (citation omitted); *see also Bicon, Inc.*, 441 F.3d at 952 (observing how when the body of the claim sets out the complete invention, the preamble is not ordinarily treated as limiting the scope of the claim).

[42] *Bicon, Inc.*, 441 F.3d at 952.

[43] *Am. Med. Sys., Inc.*, 618 F.3d at 1358 (internal quotation marks and citation omitted).

[44] *Id.* (quoting *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1339 (Fed. Cir. 2003)).

[45] Dkt. 378-2, *United States Patent No.: US 8,062,514 B2* at 19:27–30.

[46] *Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 320 F.3d 1339, 1345 (Fed. Cir. 2003).

[47] *Id.*

transparency, or cleanness characteristics described in this portion of the preamble.  As such, Pacific's arguments attempting to construe this portion of the preamble as limiting and indefinite necessarily fail.[48]

In contrast, the court reads the phrase "[a] structure to contain a large water body, including a water body larger than 15,000 m³" to be limiting.  It is well established "one part of [a] preamble [may] be limiting even though another portion is not."[49]  The Federal Circuit is also clear that claims "must be read in view of the specification, of which they are a part" as the specification "is always highly relevant to the claim construction analysis" and is usually dispositive.[50]  Viewing the claim language in light of the invention described in the specification, the court finds defining the size of the water structure is not merely a circumstance in which the method may be useful, but it is "the *raison d'être* of the claimed method itself."[51]  Indeed, the Patent's first heading is entitled "Structure to Contain a Large Water Body of at Least 15,000 m³."[52]  The Patent's description of the invention lists "providing a structure with skimmers able to contain a large water body larger than 15,000 m³" as an essential feature of the invention.[53]  This size-related language in the preamble recites an essential structure giving meaning to the remainder of the claim, and all other limitations in the claim build on this language.  This

---

[48] *See Sunoco Partners Mktg. & Terminals L.P. v. Power Springs Logistics, LLC*, No. 17-1390-LPS-CJB, 2019 WL 4051949, *10 (D. Del. Aug. 28, 2019) *report and recommendation adopted*, No. CV 17-1390-LPS-CJB, 2020 WL 2316016 (D. Del. May 11, 2020) ("In light of the Court's conclusion that these preamble terms are not limiting, no further construction (or consideration of Defendants' indefiniteness argument) is required.").

[49] *See Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1370–71 (Fed. Cir. 2020).

[50] *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed Cir 2005) (citations omitted).

[51] *Boehringer Ingelheim Vetmedica, Inc.*, 320 F.3d at 1345.

[52] *United States Patent No.: US 8,062,514 B2* at 1:1–3.

[53] *Id.* at 7:6–7.

language is limiting.  Without it, the claims' requirements would lose the "essence of the invention."[54]

Still, Pacific argues even if the recited size is a limitation, the claims are anticipated or obvious by prior art pool references because (1) there is no dispute that technology employed in common swimming pools predating the '514 Patent meets most elements of the claims identified by Plaintiffs and (2) the size—the only difference between the '514 Patent and the prior art—is not patentable.[55]  The court is not persuaded.

Anticipation is a question of fact[56] that must be shown by clear and convincing evidence.[57]  To be anticipating, a prior art reference (1) must disclose each and every limitation of the claimed invention, (2) must be enabling, and (3) must describe the claimed invention sufficiently to have placed it in possession of a person of ordinary skill in the field of the invention.[58]  If there is a genuine issue of material fact relevant to any one of these factors, summary judgment is not proper.[59]

Here, Pacific points to prior art references disclosing (1) pool bottoms and walls covered with a plastic liner made of a non-porous material able to be thoroughly cleaned; (2) pools of at least two meters deep; (3) pools with skimmers; (4) pools filled with water by fresh water feeding pipes; and (5) pool vacuums that can be used to clean plastic liners on the bottoms and walls.[60]  But Pacific cannot identify a prior art reference disclosing pools larger than 15,000 m³.

---

[54] *Boehringer Ingelheim Vetmedica, Inc.*, 320 F.3d at 1345.

[55] *Motion* at 29.

[56] *SRAM Corp. v. AD-II Eng'g, Inc.*, 465 F.3d 1351, 1357 (Fed. Cir. 2006) (citation omitted).

[57] *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000) (citation omitted).

[58] *Id.* (citation omitted).

[59] *Id.*

[60] *Motion* at 28–29.

As discussed above, the size requirement described in the preamble is limiting; therefore, it must be disclosed in a prior art reference for Pacific's anticipation argument to succeed. Moreover, Pacific makes no attempt to address the latter two anticipation factors: that the prior art reference is enabling and describes the claimed invention sufficiently to have placed it in possession of a person of ordinary skill in the field of the invention. Because Pacific failed to address two critical anticipation factors, its invalidity contentions based on anticipation necessarily fail as it cannot establish its entitlement to judgment as a matter of law—especially when it must demonstrate anticipation by clear and convincing evidence.

Alternatively, Pacific argues that even if the recited size is a limitation, the '514 Patent claims are still anticipated or obvious because size is not patentable.[61] Again, because Pacific failed to address two of the three anticipation factors, it has failed to prove anticipation by clear and convincing evidence. And similarly, Pacific has not met its burden to establish obviousness by clear and convincing evidence at this stage of the litigation.[62] "[P]recedent clearly establishes that the district court must make *Graham* findings before invalidating a patent for obviousness," which include "four factual inquiries": 1) the scope and content of the prior art; 2) the level of ordinary skill in the art; 3) the differences between the claimed invention and the prior art; and 4) secondary considerations of nonobviousness, which include commercial success, long-felt but unresolved need, failure of others, copying, and unexpected results.[63] Pacific does not mention these factors in its briefing, and a consideration of these factors has led courts to reject claims of

---

[61] *Id.* at 29.

[62] *United States v. Telectronics, Inc.*, 857 F.2d 778, 785 (Fed. Cir. 1988); *Exxon Rsch. & Eng'g Co. v. United States*, 265 F.3d 1371, 1376 (Fed. Cir. 2001);.*Sonix Tech. Co., Ltd. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017) (citation omitted).

[63] *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662–63 (Fed. Cir. 2000).

obviousness even when the only difference between the prior art and the claimed invention involved a change in proportion or size.[64]

Additionally, Pacific presents anticipation and obviousness arguments for only Claim 1 of the '514 Patent.[65]  But Crystal Lagoons also asserts dependent Claims 2–4 and 7.[66]  Because Claim 1 is an independent claim and has not been shown to be invalid, its corresponding dependent claims cannot be invalidated at this stage of the litigation.[67]  With respect to these dependent claims, Pacific appears to argue only that Claim 7 of the '514 Patent is invalid because "Crystal Lagoons' expert does [not] provide any reason for the validity of that claim."[68]  But patents enjoy a statutory presumption of validity,[69] and Pacific provides no authority suggesting that failure to produce expert testimony in support of patent validity somehow negates this presumption.  This argument is unsupported and unpersuasive.

Ultimately, at this stage of the litigation, Pacific has failed to demonstrate by clear and convincing evidence that the '514 Patent is invalid.

---

[64] *See Fox Factory, Inc. v. SRAM, LLC*, 813 F. App'x 539 (Fed. Cir. 2020) (unpublished) (affirming the finding that claims to a bicycle chain ring were not proven obvious even though the accused infringer argued that the "only difference between the prior art and the claimed invention is the degree to which the widened teeth should fill the outer chain link spaces, measured halfway up the tooth").  The Federal Circuit explained "[w]hile Fox Factory is correct that 'a mere change in proportion . . . involve[s] no more than mechanical skill,' rather than the level of invention required by 35 U.S.C. § 103, . . . the Board found that SRAM's optimization of the X-Sync chainring's teeth, as claimed in the '250 patent, displayed significant invention . . . based [on] . . . secondary considerations that strongly indicated that the X-Sync chainring's success surprised skilled artisans." *Id.* at 542.  Thus, "[t]he Board did not err in concluding that such evidence defeated SRAM's contention of routine optimization." *Id.*

[65] *See generally Motion* at 27.

[66] *See Opposition* at 31.

[67] *See RCA Corp. v. Applied Digit. Data Sys., Inc.*, 730 F.2d 1440, 1446 (Fed. Cir. 1984) (explaining how if prior art does not anticipate an independent claim, it cannot anticipate its associated dependent claim).

[68] *Motion* at 30.

[69] 35 U.S.C. § 282(a).

## II.        Invalidity of the '520 Patent

Pacific next challenges both the validity and its alleged infringement of the '520 Patent.[70] Because the court determines the '520 Patent is invalid, it need not address Pacific's infringement contentions.[71]

Pacific challenges the validity of the '520 Patent pursuant to 35 U.S.C. § 101, which restricts the scope of patentable subject matter to "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."  In *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*[72] and *Alice Corporation Pty. Ltd. v. CLS Bank International*,[73] the Supreme Court created and affirmed a two-part test for "distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts."[74]  First, courts must determine whether the claims at issue are directed to a patent-ineligible concept,[75] *i.e.*, a law of nature,

---

[70] *Motion* at 14, 31.

[71] The court nevertheless observes Plaintiffs failed to identify specific evidence suggesting Pacific performed the claimed steps of the '520 Patent.  While specific evidence demonstrating Pacific's infringement of most (if not all) the claimed steps is likely lacking, the most unsupported step is step two, which requires Pacific to have calculated both a "minimum ORP [Oxidation Reduction Potential] level" and a "minimum period of time" based on the salinity and temperature of the water.  *See* Dkt. 378-4, *United States Patent No.: US 8,753,520 B2* at 19:46–20:13.  Plaintiffs identify no evidence suggesting Pacific used the calculations set forth in the Patent to maintain the Lagoon's water.  The only evidence Plaintiffs can point to is deposition testimony from Jennifer Norlin where she acknowledged Cloward "would have had to have made decisions based on water quality and their endpoint" while acknowledging she never saw "the[] calculations . . . in the documents [she] reviewed from Cloward."  Dkt. 378-10, *Videotaped Videoconference Deposition of Jennifer Norlin, P.E.* at 224:1–225:18.  The cited deposition testimony relates to Cloward, not Pacific.  Further, Norlin never testified "the decision trees and equations had to have been followed" by Pacific as Plaintiffs claim in their Opposition.  *Opposition* at 21.  She only suggested Cloward made unspecified decisions "based on water quality and their endpoint."  *Videotaped Videoconference Deposition of Jennifer Norlin, P.E.* at 224:7–9.  There is no evidence supporting Plaintiffs' contention that Pacific performed each and every claimed step of the '520 Patent.  Had the court found the '520 Patent to be valid, Pacific would be entitled to summary judgment on the issue of noninfringement.

[72] 566 U.S. 66 (2012) (hereafter *Mayo*).

[73] 573 U.S. 208 (2014) (hereafter *Alice*).

[74] *Id.* at 217.

[75] *Id.* (citation omitted).

natural phenomenon, or abstract idea.[76]  If so, courts proceed to the second step, which is described as a search for an "inventive concept," and must determine whether the additional elements transform the nature of the claim into a patent-eligible application.[77]  Under this step, the elements of the claim are considered both individually and as an ordered combination.[78]

Turning to step one, courts consider "what the patent asserts to be the 'focus of the claimed advance over the prior art'"[79] and ask "whether the claims at issue are *directed to* one of th[e] patent-ineligible concepts" described above.[80]  In doing so, courts focus on the language of the asserted claims, considered in light of the specification.[81]  The Supreme Court has cautioned, however, that too broad an interpretation of ineligible subject matter could eviscerate patent law as all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena or abstract ideas.[82]  Accordingly, at step one, "it is not enough to merely identify a patent-ineligible concept underlying the claim; we must determine whether that patent-ineligible concept is what the claim is 'directed to.'"[83]

Here, the '520 Patent is a method for controlling the microbiological properties of a portion of water within a larger water body.[84]  The method claim is comprised of the following steps: (1) identifying a portion of water within a larger water body to be used for recreation and

---

[76] *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1292 (Fed. Cir. 2020) (citing *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166–67 (Fed. Cir. 2018)).

[77] *Alice*, 573 U.S. at 217 (citation omitted).

[78] *TecSec, Inc.*, 978 F.3d at 1292.

[79] *Id.* (citations omitted).

[80] *Vanda Pharms. Inc. v. West-Ward Pharms. Int'l Ltd.*, 887 F.3d 1117, 1134 (Fed. Cir. 2018) (citation omitted).

[81] *TecSec, Inc.*, 978 F.3d at 1292 (citations omitted); *but see Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1293 (Fed. Cir. 2020) (explaining how Section 101 eligibility focuses on the claims, not the specification).

[82] *Mayo*, 566 U.S. at 71.

[83] *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1050 (Fed. Cir. 2016).

[84] *United States Patent No.: US 8,753,520 B2* at 19:34–35.

dividing the portion of water into zones; (2) calculating both a "minimum ORP [Oxidation Reduction Potential] level" and a "minimum period of time," wherein the ORP level and period of time are calculated based on the salinity and temperature of the water; (3) dispensing a chemical agent into the water in order to maintain the minimum ORP level for the minimum period of time; and (4) repeating step 3 as needed to prevent the ORP from dropping below a certain ORP level.[85]

The '520 Patent specification repeatedly describes how traditional swimming pool water treatment technologies require the addition of large quantities of chemical agents in order to maintain suitable disinfection parameters.[86] Treating a large water body like a lake or lagoon in this way would be economically and environmentally unfeasible.[87] But, by essentially tracking and treating a *portion* of a large water body designated as a "recreational zone" in a way similar to what has been employed in traditional swimming pools, one can "overcom[e] the limitation [and] impossibility of treating the whole water body."[88] Notably, the Patent does not require a physical barrier in order to contain the portion of water to be treated, so it describes a process to allow virtually any portion of a large water body to be selected, tested, treated, and used for recreation.[89]

Pacific urges the court to view the '520 Patent's focus of the claimed advance over the prior art as the precise point of novelty: the mathematical calculation described in step 3 of the Patent.[90] This purported advance over the prior art, Pacific argues, is the technique of

---

[85] *Id.* at 19:34–20:20.

[86] *See, e.g.*, *id.* at 3:63–65.

[87] *Id.* at 3:63–4:3.

[88] *Id.* at 1:27–30.

[89] *Id.* at 19:34–45.

[90] *Motion* at 32.

minimizing chemical use by calculating the minimum water treatment necessary down to a minimized amount of time and treating only a small portion.[91]  Plaintiffs insist the point of novelty does not automatically constitute the focus of the claimed advance over the prior art.[92] Instead, Plaintiffs cite *CarrdioNet, LLC v. InfoBionic, Inc.* for the proposition that the court must consider "the claims 'in their entirety to ascertain whether their character as a whole is directed to excluded subject matter.'"[93]  The court finds the case cited by Plaintiffs instructive as it further clarifies that, under step one, courts look to whether the claims "focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery."[94]

A holistic review of the '520 Patent claims and specification reveals how the method claims are not directed at improving any relevant technology; instead, the '520 Patent merely describes a way to use existing technology (testing techniques and chemical treatments) to maintain certain, well-established cleanliness characteristics in a portion of water instead of the whole.  Thus, the claims are essentially directed to the natural result of using chemicals to control the microbiology of water.  And the fact that microbiological properties of water react to certain chemicals is an unpatentable concept—it is a law of nature.[95]

---

[91] *Id.*

[92] *Opposition* at 33.

[93] 955 F.3d 1358, 1367 (Fed. Cir. 2020) (citation omitted).

[94] *Id.* (citation omitted).

[95] The fact that human action is involved in the addition of chemicals to the portion of water does not change the result.  As described in *Mayo*, "[w]hile it takes a human action (the administration of a thiopurine drug) to trigger a manifestation of this relation in a particular person, the relation itself exists in principle apart from any human action.  The relation is a consequence of the ways in which thiopurine compounds are metabolized by the body—entirely natural processes."  566 U.S at 77.  Here, similarly, the fact that certain microorganisms respond to certain chemicals in water is a result of natural reactions and processes.

Having determined the Patent is directed to an unpatentable concept, the court must turn to step two and search for an "inventive concept" by determining whether the additional elements transform the nature of the claim into a patent-eligible application.[96]  Under this step, the elements of the claim are considered both individually and as an ordered combination.[97]

The first claimed step of the Patent involves identifying a portion of water within a larger water body to be used for recreation and dividing the portion of water into three zones.[98]  One zone is designated as the most unfavorable zone, which corresponds to the zone that exhibits the lowest ORP value within the identified portion of water.[99]  Tellingly, the Patent does not describe an improved process of testing or selecting a portion of water to be used for recreation, nor does it describe a new type of water barrier to be constructed.[100]  According to the Patent, one simply declares any portion of water within a larger body as the recreational zone. Moreover, the claim does not describe a new or more accurate way to test the zone with the lowest ORP level.  Indeed, the Patent acknowledges how ORP can be determined by visual inspection, methods based on experience, analytical methods,[101] or by using ORP meters that have electrodes in order to measure the voltage across a circuit within the water.[102]  Ultimately, one can select any portion of water under this step, and existing technology is employed to reveal the natural fact of which zone has the lowest ORP level.  There is no inventive concept added at step one.

---

[96] *Alice*, 573 U.S. at 217 (citation omitted).

[97] *TecSec, Inc.*, 978 F.3d at 1292 (citations omitted).

[98] *United States Patent No.: US 8,753,520 B2* at 19:34–45.

[99] *Id.*

[100] *Id.* at 17:37–41.

[101] *Id.* at 15:16–21.

[102] *Id.* at 15:34–37.

The second step involves calculating both a "minimum ORP level" and a "minimum period of time," wherein the ORP level and period of time are calculated based on the salinity and temperature of the water.[103] Pacific contends this step is the Patent's only point of novelty.[104] There are two parts of the process described in this step: the periodic testing of the salinity and temperature of the water, which provides the variables for the minimum ORP and period calculation, and performing the minimum ORP and period calculation itself, which enables a person to accurately track and maintain the required cleanliness of a portion of water. But neither part describes an inventive concept. The Patent describes no new means of testing for the salinity and temperature of the water. The Patent acknowledges salinity can be determined by using existing technology, including visual tests, salinometers, hydrometers, or refractometers.[105] It also acknowledges temperature can be determined by visual tests, thermometers, thermocouples, resistance temperature detectors, pyrometers, infrared devices, or it may be publicly known or can be gathered from other sources.[106] Indeed, the '520 Patent testing requirements to determine the salinity and temperature of the water, by any preferred method, is simply a means to reveal something that occurs naturally. As the Supreme Court has concluded, "diagnostic methods that involve physical administration steps are directed to a natural law."[107] Likewise, the part of the Patent step involving a mathematical formula fails to describe an inventive concept. The Patent acknowledges ORP has long been the primary tool to standardize water disinfection parameters.[108] ORP is described as the natural "tendency of a

---

[103] *Id.* at 19:46–20:14.

[104] *Motion* at 33.

[105] *United States Patent No.: US 8,753,520 B2* at 15:22–28.

[106] *Id.* at 15:29–33.

[107] *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1168 (Fed. Cir. 2019) (citing *Mayo*, 566 U.S. at 92).

[108] *United States Patent No.: US 8,753,520 B2* at 3:37–62.

chemical compound to acquire electrons from another species,"[109] and it has long been used to treat water and kill dangerous microorganisms that can create an unsafe water environment.[110] Understanding the natural consequences of and using a mathematical formula to describe the relation between salinity, temperature, ORP, and timing adds no inventive concept. Mathematical formulas are "patent-ineligible abstract idea[s]."[111]  And this particular mathematical formula is used to describe an entirely natural interaction between variables.  Put another way, this calculation of ORP and period limits constitutes "human mental work," and it is a "basic tool[] of scientific and technological work" that is open to all.[112]  Nothing in the second step transforms the nature of the claim into a patent-eligible application.

The third and fourth step require dispensing a chemical agent into the water, as often as necessary, in order to maintain the minimum ORP level for the minimum period of time.[113] Notably, the Patent does not describe a new concentration of chemicals to inject into the water that limits the expense or environmental impact of the water treatment as the Patent is agnostic as to the type and concentration of the chemical employed.  Nor does the Patent describe a new method to carry out the injection process of chemicals into a lagoon.  Instead, the Patent again acknowledges the traditional methods employed in cleaning other bodies of water, and it directs users to dispense an "effective amount" of an unnamed "chemical agent" to maintain the

---

[109] *Id.* at 3:46–48.

[110] *Id.* at 3:46–62.

[111] *Alice*, 573 U.S. at 218 (citing *Parker v. Flook*, 437 U.S. 584, 594–95 (1978) where the Court previously explained "if a claim is directed essentially to a method of calculating, using a mathematical formula, even if the solution for a specific purpose, the claimed method is nonstatutory").

[112] *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1371 (Fed. Cir. 2011) (citation omitted).

[113] *United States Patent No.: US 8,753,520 B2* at 20:14–20.

minimum ORP level during the minimum period of time. These steps do not transform the nature of the claim into a patent-eligible application.

When the court views the claimed steps collectively, they remain insufficient to transform the Patent into a patentable method. Similar to the *Mayo* case, "the claims inform a relevant audience about certain laws of nature[, and] any additional steps consist of well-understood, routine, conventional activity already engaged in by the scientific community; and those steps, when viewed as a whole, add nothing significant beyond the sum of their parts taken separately."[114]

Still, Plaintiffs insist the claims are not directed at ineligible subject matter because they are directed to a specific use in a specific context,[115] and they cite as support *Vanda Pharmaceuticals Inc. v. West-Ward Pharmaceuticals International Limited* (*Vanda*).[116] But this case is not *Vanda*. There, a disputed patent claimed a method of treating schizophrenia patients with iloperidone with a dosage range based on the patient's genotype.[117] Specifically, the method claim in *Vanda* required specific steps of (1) determining the patient's CYP2D6 metabolizer genotype by (a) obtaining a biological sample and (b) performing a genotyping assay; and (2) administering specific dose ranges of iloperidone depending on the patient's CYP2D6 genotype.[118] The Federal Circuit found it was critical that the inventors not only "recognized the relationships between iloperidone, CYP2D6 metabolism, and QTc prolongation" but they claimed "an application of that relationship."[119] Unlike the claim at issue in *Mayo*, the

---

[114] 566 U.S. at 79–80.

[115] *Opposition* at 33.

[116] 887 F.3d 1117 (Fed. Cir. 2018).

[117] *Id.* at 1121.

[118] 887 F.3d 1117, 1134 (Fed. Cir. 2018).

[119] *Id.* at 1135.

claims in *Vanda* required a treating doctor to administer iloperidone at specific amounts depending on the result of a genotyping assay, which constituted "'a new way of using an existing drug' that is safer for patients because it reduces the risk of QTc prolongation."[120]  This led the court to conclude the claims were "directed to a specific method of treatment for specific patients using a specific compound at specific doses to achieve a specific outcome."[121]  This is not the case here.

Similar to *Vanda*, the '520 Patent recognizes the relationships between certain variables, but unlike *Vanda*, the '520 Patent does not claim a specific application of that relationship.  The '520 claims do not involve a specific method of treating specific water bodies with specific compounds at specific doses to achieve a specific outcome.  Instead, the method applies to any portion of virtually any water body; it allows for the use of any compound at any dose, provided the relevant audience dumps in enough chemicals to keep the water at a certain ORP level for a certain period of time.  This case is much more similar to *Mayo* where the Court found invalid certain patents that set forth processes embodying researchers' findings that concentrations of metabolites in a patient's blood indicating that a dosage of a thiopurine drug is either too high or too low for a patient, which could result in harm or ineffectiveness.[122]  The Court read the method patents as consisting of an "administering" step, a "determining" step, and a "wherein" step.[123]  The Court determined the administering step merely identified a relevant audience, namely, doctors who treat patients with certain diseases with thiopurine drugs;[124] the

---

[120] *Id.*

[121] *Id.* at 1136.

[122] *Mayo*, 566 U.S. at 74.

[123] *Id.* at 78.

[124] *Id.*

"determining" step simply told the doctor to determine the level of the relevant metabolites in the blood through whatever process the doctor wished to use;[125] and the "wherein" step informed the relevant audience of how a certain level indicated a need to increase or decrease the amount of the drug administered to a subject.[126]  Thus, the Court held "the claims inform a relevant audience about certain laws of nature; any additional steps consist of well-understood, routine, conventional activity already engaged in by the scientific community; and those steps, when viewed as a whole, add nothing significant beyond the sum of their parts taken separately."[127] Such is the case here.  The steps of the '520 Patent describe a relevant audience, direct the audience to determine the current level of ORP, and direct the audience to maintain a minimum level of ORP for a certain period of time by increasing or withholding unnamed chemicals from the water.

At best, the only "inventive concept" suggested by the '520 Patent when viewing the steps as a whole is the idea that by using existing technology to maintain a small portion of water, one can create a safe, sanitary section while avoiding the expense maintaining the entire water body.  But this abstract principle is just as unpatentable as a law of nature.[128]  By using existing technology to improve an isolated area instead of the whole, the isolated area is improved more quickly and cheaply than if the entire area were developed at once.  This principle manifests itself when lawyers elect to specialize in a particular practice area to avoid the time-consuming process of mastering every aspect of the law.  This idea is present when

---

[125] *Id.* at 79.

[126] *Id.* at 75.

[127] *Id.* at 79–80.

[128] *See Alice*, 573 U.S. at 218 (explaining how "[t]he abstract ideas category embodies the longstanding rule that an idea itself is not patentable" and citing *Le Roy v. Tatham*, 14 How. 156, 175 (1853) for the proposition that "[a] principle, in the abstract, is a fundamental truth; an original cause; a motive; these cannot be patented, as no one can claim in either of them an exclusive right" (cleaned up)).

weightlifters skip leg day to focus on the rapid development of other muscles. This phenomenon is even present in children, who, when asked to clean their room, quickly stuff toys in a closet. All these elect to master, develop, or beautify something more immediate, usable, or noticeable at the expense of the whole, and consequently, they often see more prompt results.

Ultimately, the '520 Patent is invalid under the two-step framework articulated by the Supreme Court in *Alice* and *Mayo*. Because the '520 Patent is invalid, the court does not reach Pacific's noninfringement and damages contentions related to this Patent.

### III.    Direct Infringement of the '514 Patent

Next, Pacific argues it is entitled to summary judgment of no direct infringement of the '514 Patent.[129] A claim for direct infringement involves allegations that either "the [accused product] infringes the Asserted Patents literally—that it contains elements identical to all the limitations of the allegedly infringed patents' claims—or [it infringes] under the doctrine of equivalents—that it 'performs substantially the same function in substantially the same way to obtain the same result.'"[130] Infringement under the doctrine of equivalents is a question of fact, but "where the evidence is such that no reasonable jury could determine two elements to be equivalent, district courts are obliged to grant partial or complete summary judgment."[131] Pacific argues three undisputed facts justify a summary judgment ruling in its favor that it has not directly infringed the '514 Patent. The court disagrees.

First, Pacific argues the Lagoon employs traditional pool filtration technology in which the entire volume of water is filtered twice a day.[132] Plaintiffs acknowledged in earlier pleadings

---

[129] *Motion* at 6.

[130] *Longhorn Vaccines & Diagnostics, LLC v. Spectrum Sols., LLC*, 564 F. Supp. 3d 1126, 1133 (D. Utah 2021) (citation omitted).

[131] *U.S. Philips Corp. v. Iwasaki Elec. Co. Ltd.*, 505 F.3d 1371, 1375 (Fed. Cir. 2007) (citations omitted).

[132] *Motion* at 6.

that the ability "to filter the entire volume of water" in this way "would not infringe Crystal Lagoons patents."[133]  Pacific points to this admission as conclusive proof that the Lagoon, which undisputedly uses such a traditional filtration system, cannot infringe the '514 Patent as a matter of law.[134]  But Plaintiffs' operative pleading contains no such admission, and it is well established that an admission in a prior pleading has no legal effect after a valid amendment.[135]  Moreover, "[i]t is the claims that define the metes and bounds of the patentee's invention,"[136] and here, none of the '514 Patent claims require the absence of a traditional filtration system.  As Plaintiffs have argued previously, the '514 Patent can be infringed regardless of whether there is a filtration system constructed and operated in parallel.[137]  Additional claim language of the '514 Patent supports this conclusion.  Claim 1 of the '514 Patent begins by reciting that "the structure includes" certain claim elements.[138]  The Federal Circuit "has consistently interpreted 'including' and 'comprising' to have the same meaning, namely, that the listed elements . . . are essential but

---

[133] Dkt. 2, *Complaint* ¶ 67; Dkt. 11, *First Amended Complaint* ¶ 63.

[134] *Motion* at 6.

[135] *See, e.g.*, *Davis v. TXO Prod. Corp.*, 929 F.2d 1515, 1517 (10th Cir. 1991) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." (citations omitted)); *West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 171 (3d Cir. 2013) ("Even if Plaintiffs' allegations in the original complaint constituted judicial admissions, it does not follow that they may not amend them."); *Maloney v. Scottsdale Ins. Co.*, 256 F. App'x 29, 32 (9th Cir. 2007) (unpublished) ("When a complaint containing a judicial admission is amended, the information admitted in the original complaint is no longer conclusively established."); *Huey v. Honeywell, Inc.,* 82 F.3d 327, 333 (9th Cir. 1996) ("When a pleading is amended or withdrawn, the superseded portion ceases to be a conclusive judicial admission . . . ."); *Giannone v. U.S. Steel Corp.,* 238 F.2d 544, 547 (3d Cir. 1956) (recognizing that "withdrawn or superseded pleadings" do not constitute judicial admissions); *InterGen N.V. v. Grina,* 344 F.3d 134, 144–45 (1st Cir. 2003) ("An amended complaint supersedes the original complaint, and facts that are neither repeated nor otherwise incorporated into the amended complaint no longer bind the pleader."); *188 LLC v. Trinity Indus., Inc.,* 300 F.3d 730, 736 (7th Cir. 2002) ("When a party has amended a pleading, allegations and statements in earlier pleadings are not considered judicial admissions."); *Hibernia Nat'l Bank v. Carner,* 997 F.2d 94, 101 (5th Cir. 1993) ("To the extent that Hibernia did make a 'judicial confession[ ]' [in its original complaint,] that confession was amended away." (citations omitted)).

[136] *Throner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1367 (Fed. Cir. 2012).

[137] *See* Dkt. 45, *Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment of Non-infringement* at 36.

[138] *United States Patent No.: US 8,062,514 B2* at 19:30–31.

other elements may be added."[139]  Thus, the fact that a traditional filtration method happens to be used at the Lagoon does not, by itself, conclusively establish non-infringement of the '514 Patent.  It is possible the Lagoon both uses a traditional filtration system and still infringes the '514 Patent.  Pacific has not demonstrated its non-infringement as a matter of law based solely on the existence of the Lagoon's traditional filtration system.[140]

Second, Pacific points to claim language of the '514 Patent requiring "the structure [to] include[] a bottom and walls covered with a plastic liner made of a non-porous material able to be thoroughly cleaned."[141]  Pacific argues the vertical walls of the Lagoon are undisputedly covered in concrete, not plastic liner, rendering the walls incapable of being thoroughly cleaned.[142]  Plaintiffs do not dispute the presence of concrete on the vertical walls but explain how the Lagoon's floor, sloped walls, and vertical walls are all technically covered in cleanable plastic liner, with concrete covering the liner only on the Lagoon's vertical walls.[143]  This leaves approximately eighty percent of the Lagoon with exposed plastic liner able to be cleaned, including the sloped portions of the Lagoon.[144]  This fact is not disputed by Pacific.[145]  Plaintiffs again argue summary judgment is inappropriate as Claim 1 of the '514 Patent recites the open-ended term "including," allowing for additions to the accused structure, including concrete-

---

[139] *Lucent Techs., Inc. v. Gateway, Inc.*, 525 F.3d 1200, 1214 (Fed. Cir. 2008) (citations omitted).

[140] Pacific also argues Crystal Lagoons admitted no third party is infringing any of its intellectual property in an 8-K filing with the Securities and Exchange commission.  *Motion* at 18.  But Pacific overlooks a crucial carveout in the filing where Crystal Lagoons agreed to set forth additional disclosures, which are deemed part of the representations and warranties made in the filing.  *Opposition* at 23 n.7.  These disclosures identify the present litigation.  *Id.*

[141] *United States Patent No.: US 8,062,514 B2* at 19:30–32.

[142] *Motion* at 8.

[143] *Opposition* at 12–13.

[144] *Id.*

[145] *See generally Reply*; Dkt. 378-37, *Videotaped Deposition of Cory Severson* at 162:2–6.

covered, vertical walls.[146]  They also argue it is at least a jury question whether or not the eighty-percent-exposed portions of the Lagoon meet the claim element, both literally[147] and under the doctrine of equivalents.[148]

      The court agrees with Plaintiffs that there is at least a genuine issue of material fact precluding summary judgment on this issue.  A reasonable jury could conclude that, under the doctrine of equivalents, the Lagoon's use of plastic liner, which is eighty percent exposed and capable of being cleaned, "performs substantially the same function in substantially the same way to obtain the same result"[149] as the liner described in '514 Patent claim.  Indeed, direct infringement under the doctrine of equivalents is a question of fact, and summary judgment of noninfringement is appropriate only "where the evidence is such that no reasonable jury could determine two elements to be equivalent."[150]  The purpose of the doctrine of equivalents is to ensure that an accused infringer cannot avoid infringement simply by changing "minor or insubstantial details of a claimed invention while retaining their essential functionality."[151]  Here again, a reasonable jury could find the Lagoon's vertical walls with concrete to be an insubstantial detail, and it could agree with Plaintiffs' expert that "equivalently, [the Lagoon is] a structure wherein the structure includes a bottom and walls covered with a plastic liner made of non-porous material able to be thoroughly cleaned."[152]  Thus, summary judgment is not appropriate.

---

[146] *See Lucent*, 525 F.3d at 1214.

[147] *Opposition* at 13.

[148] *Id.* at 22.

[149] *Longhorn Vaccines & Diagnostics, LLC*, 564 F. Supp. 3d at 1133 (citation omitted).

[150] *U.S. Philips Corp.*, 505 F.3d at 1375 (citations omitted).

[151] *Sage Prods., Inc. v. Devon Indus., Inc.,* 126 F.3d 1420, 1424 (Fed. Cir. 1997).

[152] *See* Dkt. 378-5, *Expert Report of Christopher D. Lidstone, CPG Regarding Infringement of U.S. Patent No. 8,062,514* ¶ 72.

Third, Pacific argues there is no dispute the Lagoon lacks required elements of the following claim language of the '514 Patent: "wherein the structure includes a system of skimmers for the removal of impurities and surface oils, [and] a fresh water feeding pipe system that allows entrance of fresh water and results in water removal by displacement of surface water through the skimmer system."[153]  Specifically, Pacific focuses on two Lagoon differences: first, the skimmers do not remove displaced surface water and impurities; instead, they "catch" the impurities and "recycle" the water.[154]  Second, the addition of fresh water does not *result in* water removal through the skimmer system.[155]  Neither distinction is persuasive.

As to the first argument, the claim language of the '514 Patent is agnostic as to the ultimate fate of the impurities and the water; the Patent claims only require these be "removed" and "displaced" from the water structure via a skimmer system.[156]  This undisputedly occurs in the present Lagoon.  There is no dispute the Lagoon uses skimmers to draw surface water from the Lagoon into a disinfection system.[157]  These skimmers are similar to skimmers in "all swimming pools that significantly pre-date the '514 Patent,"[158] wherein they are positioned along the borders of the Lagoon, and catch water, debris, and impurities that flow over the grate-like structure.[159]  Because the water flows into the skimmers and enters a "recycled" state, it is

---

[153] *United States Patent No.: US 8,062,514 B2* at 19:34–38.

[154] *Motion* at 10.

[155] *Id.*

[156] *United States Patent No.: US 8,062,514 B2* at 19:35–37.

[157] *See* Dkt. 378-12, *Expert Rebuttal Report* at 20.  Pacific's own expert explains how the Lagoon "uses skimmers to skim the surface water" using a system "comprised of a pump that draws water from the surface skimmers and floor drains on the suction side, and then pushes the water through sand beds in large filter tanks" that thereafter puts the water "through a disinfection process" and recirculates the water into the Lagoon.  *Id.*

[158] *Id.*

[159] *See Expert Report of Christopher D. Lidstone, CPG Regarding Infringement of U.S. Patent No. 8,062,514* ¶¶ 77–84.

obvious that the water is "removed" from the main body of water filling the swimmable structure for a time. And, as explained by Pacific's expert, after going through a disinfections process, the water is "recirculated in the [L]agoon via designed water jets or inlets."[160] The fact that the water must be reinjected into the main body of water demonstrates how it was removed at one point. Moreover, it is undisputed these skimmers cause surface oils and impurities to be removed from the Lagoon, at least for a time, by "catching" them on a filter before water is recycled and returned to the Lagoon.[161] This likewise satisfies the removal requirement for impurities.

As to the second argument, Pacific does not dispute that the Lagoon has a freshwater feeding pipe system that allows the entrance of fresh water into the Lagoon.[162] Pacific's expert, Douglas R. Ferrell, explained how the pipe feeds water into the Lagoon to make up for water losses due to evaporation, splashed water out of the Lagoon, or other ancillary water losses.[163] Based on this testimony, and understanding how the skimmer system would not function without the addition of fresh water from the feeding pipe,[164] it is obvious that ongoing influxes of fresh water from the freshwater pipe system eventually result in water removal or recycling through the skimmer system. Without the freshwater feeding pipe system, the Lagoon's water would continuously deplete due to "ancillary water losses" until the skimmer system would become

---

[160] *Expert Rebuttal Report* at 20.

[161] *Motion* at 10.

[162] *Opposition* at 12 (citing Dkt. 378-37, *Videotaped Deposition of Cory Severson* at 111:14–112:17, 113:4–10, 189:8–13 and Dkt. 128-2, *Declaration of Javiera De La Cerda in Opposition to Defendants' Second Motion for Summary Judgment of Noninfringement* ¶ 35).

[163] *Expert Rebuttal Report* at 21.

[164] *See Declaration of Javiera De La Cerda in Opposition to Defendants' Second Motion for Summary Judgment of Noninfringement* ¶ 35.

entirely inoperable.[165]  It is, at least in part, the continuous influx of water from the pipe system

that keeps water levels high enough for water to flow into the surrounding skimmers.  Thus, the

differences between the Lagoon and the claim language of the '514 Patent highlighted by Pacific

are insufficient to demonstrate it is entitled to relief as a matter of law.[166]

## IV.    Direct Infringement of the '822 Patent

Next, Pacific moves for summary judgment with respect to noninfringement of the '822

Patent.[167]  Specifically, Pacific argues there is no admissible evidence that it performed the

method steps of the asserted method claims of the '822 Patent.[168]  The court agrees with Pacific.

The asserted claims of the '822 Patent are method claims, meaning they require certain

steps to be performed.  Indeed, "[i]nfringement of a method claim 'occurs when a party performs

all of the steps of the process.'"[169]  And here, the '822 Patent requires, among other things, that a

potential infringer add "a flocculating agent to the water at a concentration of 0.02 to 1 ppm at a

frequency of at least once every 6 days to precipitate impurities in the water . . . ."[170]  Summary

judgment in favor of Pacific is warranted because Plaintiffs have no admissible evidence of

Pacific performing this essential step of the process.

---

[165] *See Expert Rebuttal Report* at 21.

[166] The court also observes there would be several disputes of fact as to whether the Lagoon's freshwater feeding pipe system and skimmers would satisfy the '514 Patent claim requirements under the doctrine of equivalents, precluding an award of summary judgment in favor of Pacific on this issue.  *See Opposition* at 22.

[167] *Motion* at 10.

[168] *Id.* at 11.

[169] *Ricoh Co., Ltd. v. Quanta Comput. Inc.*, 550 F.3d 1325, 1333 (Fed. Cir. 2008) (citation omitted); *see also i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 950 (Fed. Cir. 2010) ("Direct infringement occurs only when someone performs the claimed method." (citation omitted)).

[170] Dkt. 378-3, *United States Patent No.: US 9,708,822 B2* at 19:60–65.

The Lagoon has no flocculation system and employs a traditional filtration system designed to filter the volume of water over twice a day.[171]  Still, Plaintiffs insist it is at least a jury question whether Pacific added flocculants to the water in the claimed concentrations and frequencies based on the following pieces of evidence: (1) deposition testimony from Mr. Siragusa, who was hired by Pacific to clean the Lagoon in anticipation of the Lagoon's grand opening, where he admitted to using certain flocculants to clean the Lagoon water;[172] (2) extrajudicial tests performed by Crystal Lagoons of the Lagoon's water, which revealed the presence of flocculants at various times;[173] and (3) a dosing chart detailing "the chemical treatment prescribed by CES Water Systems."[174]  But none of this evidence creates a genuine issue of material fact for a factfinder.  First, even setting aside the issue of whether Mr. Siragusa's actions can be imputed to Pacific, the deposition testimony from Mr. Siragusa establishes only that flocculants were added to the Lagoon sometime prior to its opening.  There is no analysis or testimony suggesting his apparently rogue flocculant additions were added at the required "concentration of 0.02 to 1 ppm," nor does it suggest flocculants were added "at a frequency of at least once every 6 days" as required by the '822 Patent.  Indeed, Plaintiffs' expert admitted Plaintiffs never obtained this critical information.[175]  Second, as explained in this court's Memorandum Decision and Order resolving various evidentiary issues in favor of Pacific, all evidence related to Plaintiffs' extrajudicial testing of the Lagoon's water is

---

[171] *Motion* at 12, 14.

[172] *See Opposition* at 16 (citing Dkt. 378-17, *Deposition of: Anthony Siragusa Jr.* at 51:8–52:5, 82:4–22, 88:5–89:14, 93:16–96:1, 177:20–178:5).

[173] *Id.*; Dkt. 363-1, *Videotaped Videoconference Deposition of Sigfrido Grimau* at 49:10–89:5.

[174] *Opposition* at 17.

[175] Dkt. 378-10, *Videotaped Videoconference Deposition of Jennifer Norlin, P.E.* at 136:6–17.

inadmissible due to sanctionable misconduct.[176]  It therefore has no effect on the resolution of the present Motion.  Third, the CES Water Systems chart is admittedly only a "recommendation from [a] vendor," which lists various agents and suggested doses for use at the Lagoon.[177] Plaintiffs present no evidence regarding whether Pacific or others ever followed these recommendations.[178]

At bottom, Plaintiffs have no evidence that Pacific added "a flocculating agent to the [Lagoon's] water at a concentration of 0.02 to 1 ppm at a frequency of at least once every 6 days to precipitate impurities in the water" as required by the '822 Patent.[179]  While it is Pacific's burden to establish the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law, Plaintiffs, in their opposition, "must set forth *specific facts* showing that there is a *genuine issue* for trial as to those dispositive matters for which [they carry] the burden of proof" to survive summary judgment.[180]  Plaintiffs have not done so.  Accordingly, the court grants Pacific's Motion with respect to direct infringement of the '822 Patent.[181]

## V.    Indirect Infringement of the '514 and '822 Patents

Next, Pacific moves for summary judgment with respect to Plaintiffs' indirect infringement claims.[182]  Indirect infringement includes induced and contributory theories of

---

[176] Dkt. 474, *Memorandum Decision and Order* at 10–15.

[177] *Videotaped Videoconference Deposition of Jennifer Norlin, P.E.* at 135:15–136:2.

[178] *Id.*

[179] *United States Patent No.: US 9,708,822 B2* at 19:60–65.

[180] *Universal Money Centers, Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1529 (10th Cir. 1994) (citations omitted) (emphasis in original).

[181] As argued by Pacific, there are likely other grounds to find in favor of Pacific with respect to infringement of the '822 Patent.  But because Plaintiffs clearly cannot meet the required element involving the addition of flocculants, the court does not reach those arguments.  *See, e.g.*, *Motion* at 14.

[182] *Id.* at 18.

infringement.[183]  Induced infringement requires a plaintiff to establish that there is direct

infringement[184] and that the defendant possessed specific intent to encourage another's

infringement.[185]  Contributory infringement, on the other hand, requires the patent owner to

show the following elements: (1) that there is direct infringement, (2) that the accused infringer

had knowledge of the patent, (3) that the component has no substantial noninfringing uses, and

(4) that the component is a material part of the invention.[186]  The contributory infringement

doctrine "was devised to identify instances in which it may be presumed from distribution of an

article in commerce that the distributor intended the article to be used to infringe another's patent

. . . ."[187]  Indeed, when one makes and sells an article, where the article is "good for nothing

else" but infringement, "there is no injustice in presuming or imputing an intent to infringe."[188]

        Here, Plaintiffs assert no claims for contributory infringement, only induced

infringement,[189] and Pacific primarily challenges Plaintiffs' lack of evidence demonstrating

Pacific's knowledge of the Patents.[190]  Specifically, Pacific argues all Plaintiffs' allegations of

infringement took place prior to when it became aware of the asserted patents; thus, it could not

have indirectly infringed the Patents as a matter of law.[191]  Plaintiffs respond by citing to

---

[183] 35 U.S.C. § 271(b), (c).

[184] *Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304–05 (Fed. Cir. 2002).

[185] *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990).

[186] *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010) (citation omitted).

[187] *H. Lundbeck A/S v. Lupin Ltd.*, 87 F.4th 1361, 1373 (Fed. Cir. 2023) (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932 (2005)).

[188] *Metro-Goldwyn-Mayer Studios Inc.*, 545 U.S. at 932 (citations omitted).

[189] *See Third Amended Complaint* ¶¶ 48, 68, 76 (bringing claims for direct and induced infringement of the Patents); *Id.* at 60 (seeking only "[a] judgment that [Pacific] infringed and induced infringement" of the Patents); *Complaint Against Pacific* ¶¶ 53, 63, 69 (bringing claims for direct and induced infringement of the Patents); *Id.* at 56 (seeking only "[a] judgment that [Pacific] infringed and induced infringement" of the Patents).

[190] *Motion* at 18–19.

[191] *Id.* at 19.

deposition testimony of Cory Severson, the president of Pacific, who testified he became aware of the Patents "when Corry Cloward called [him] and told [him] he had been sued."[192]  Plaintiffs insist the call took place sometime around October 2019,[193] and despite Mr. Severson's awareness of Crystal Lagoons' patents, Pacific completed construction and turned over the Lagoon to Hard Rock in May 2020.[194]  As such, Plaintiffs argue Pacific knew of the Patents but continued to directly and indirectly infringe until at least May 2020.[195]  Pacific counters this argument by citing more deposition testimony of Mr. Severson where he clarified he did not know whether he became aware of Crystal Lagoons' patents at the time of the lawsuit.[196]

But the court finds the timing and substance of the call between Mr. Severson and Mr. Cloward to be immaterial to resolve the issue of induced infringement.  Pacific's alleged awareness of the Patents, without more, could only constitute a genuine dispute of material fact precluding summary judgment on the issue of contributory infringement, a claim Plaintiffs have not asserted.  This evidence is insufficient to demonstrate Pacific's specific intent to encourage another's infringement.  Indeed, "inducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities."[197]  There must be evidence that the accused infringer knowingly aided and abetted direct infringement and took active steps to encourage, recommend, or promote infringement.[198]  "Examples of active steps include 'advertising an infringing use or instructing

---

[192] Dkt. 378-37, *Videotaped Deposition of Cory Severson* at 19:5–10.

[193] *Opposition* at 21.

[194] *Videotaped Deposition of Cory Severson* at 119:21–24.

[195] *Opposition* at 22.

[196] *Reply* at 11 (citing *Videotaped Deposition of Cory Severson* at 19:11–24).

[197] *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (citation omitted).

[198] *H. Lundbeck A/S v. Lupin Ltd.*, 87 F.4th 1361, 1370 (Fed. Cir. 2023) (citations omitted).

how to engage in an infringing use'"[199] in such a way that they "evidence intent to encourage
infringement"[200] or enable a court to infer "an affirmative intent to infringe the patent."[201]
There is a difference between describing an infringing mode, and recommending, encouraging,
or promoting an infringing use.[202] Here, even assuming both that Cloward was infringing the
Patents and Pacific was aware of Cloward's infringement, Plaintiffs failed to identify any
evidence suggesting more than Pacific's potential "knowledge of [a] direct infringer's activities"
and construction of a potentially infringing structure.[203] There is nothing Plaintiffs have
identified in the record to suggest Pacific's culpable intent to affirmatively direct or encourage
others to infringe. Again, Plaintiffs have failed to set forth specific facts in their opposition that
show there is a genuine issue for trial with respect to their claims for induced infringement.[204]
Accordingly, the court grants summary judgment in favor of Pacific with respect to these claims.

### VI.    Damages

Finally, Pacific argues that Crystal Lagoons' claim for damages based on alleged
infringement of the '514 Patent should be limited to the time Crystal Lagoons filed suit against
Pacific because Crystal Lagoons failed to mark its patented lagoons with the '514 Patent in the
manner required by 35 U.S.C. § 287(a),[205] which states:

> Patentees, and persons making, offering for sale, or selling within the United States any
> patented article for or under them, or importing any patented article into the United
> States, may give notice to the public that the same is patented, either by fixing thereon the
> word "patent" or the abbreviation "pat.", together with the number of the patent, or by
> fixing thereon the word "patent" or the abbreviation "pat." together with an address of a

---

[199] *Id.* (citation omitted).

[200] *Id.* (citation omitted).

[201] *Takeda Pharms. U.S.A., Inc. v. West-Ward Pharm. Corp.*, 785 F.3d 625, 631 (Fed. Cir. 2015) (citation omitted).

[202] *Id.* (citations omitted).

[203] *H. Lundbeck A/S*, 87 F.4th at 1370 (citations omitted).

[204] *Universal Money Centers, Inc.*, 22 F.3d at 1529 (citations omitted) (emphasis in original).

[205] *Motion* at 35.

> posting on the Internet, accessible to the public without charge for accessing the address,
> that associates the patented article with the number of the patent[.] . . . In the event of
> failure so to mark, no damages shall be recovered by the patentee in any action for
> infringement, except on proof that the infringer was notified of the infringement and
> continued to infringe thereafter, in which event damages may be recovered only for
> infringement occurring after such notice.  Filing of an action for infringement shall
> constitute such notice.

Importantly, § 287(a)'s requirements extend to a patentee's licensees, "because the statute

extends to 'persons making or selling any patented article for or under [the patentee].'"[206]

Plaintiffs do not dispute that they and their licensees failed to physically mark lagoons

employing the '514 Patent pursuant to § 287(a).  But Plaintiffs insist they nonetheless complied

with § 287(a) by "virtually" marking their licensed lagoons beginning in December 2019 by

listing the '514 Patent on the Crystal Lagoons website.[207]  As § 287(a) indicates, a patentee may

use a website to publicly associate the patent and the patented article.  However, the existence of

a website is only one part of the required marking.  Section 287(a) also requires that the internet

address and the word "patent" or the abbreviation "pat." be affixed to the physical, patented

article.[208]  Because Plaintiffs never marked their lagoons employing the '514 Patent technology

---

[206] *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017) (citation omitted).
For context, Crystal Lagoons generates revenue by issuing a collective license of all its intellectual property to
lagoon builders—which necessarily includes the '514 Patent—for the design, construction, and operation of its
lagoon technology.  Dkt. 369-1, *Expert Report of Richard F. Bero, CPA, CVA* ¶¶ 20, 154, 178–80.  Notably, Crystal
Lagoons does not design, build, and operate artificial water lagoons, nor does it license its Patents and other
intellectual property on a patent-by-patent basis; instead, it licenses all of its technology only when it has ongoing
involvement in a project such as providing (and getting paid for) its ongoing systems fees services.  *Id.* ¶ 20.

[207] *Opposition* at 36.

[208] 35 U.S.C. § 287(a).

with such a label, they have not provided the required notice via website publication as a matter
of law.[209]

Alternatively, Plaintiffs argue Pacific had actual notice of its infringement shortly after
Plaintiffs filed their original complaint against Cloward in October 2019.[210]  Plaintiffs claim that
because Crystal Lagoons filed its first Complaint against Cloward on October 21, 2019, and
because Mr. Cloward spoke to Mr. Severson (the president of Pacific) about the lawsuit "shortly
after the initial complaint," Pacific had actual notice on or about October 21, 2019.[211]
Additionally, at a hearing on the Motion, Plaintiffs urged the court to infer actual notice due to
the close relationship between all parties and the relatively small market for lagoon-related
technology in the United States.[212]  But as the Federal Circuit has "long explained," § 287(a)'s
actual notice requirement "is satisfied when the recipient is informed of the identity of the patent

---

[209] The court also observes Plaintiffs would be unable to demonstrate how the Crystal Lagoons website associates
the patented article with the number of the patent, as required by 35 U.S.C. § 287(a). Indeed, an adequate marking
on a website must provide "a level of notice commensurate with that of physical marking" by associating "the
patented article with the number of the patent." *Mfg. Res. Int'l, Inc. v. Civiq Smartscapes, LLC*, 397 F. Supp. 3d
560, 577 (D. Del. 2019) (citing 35 U.S.C. § 287).  And "[m]ere direction to a general website listing patents for all
the patentee's products does not [suffice]." *Id.*  Allowing a patentee to merely list all patents that could possibly
apply to a product in this way would "create[] a research project for the public." *Id.*  But this is precisely what the
Crystal Lagoons website does.  The December 2019 iteration of the website states the following: "Innovation is the
cornerstone of Crystal Lagoons, which is constantly evolving to provide its clients with the World's Top Amenity in
the nature of man-made turquoise lagoons of virtually unlimited sizes for recreational or industrial applications.  The
following is a non-exhaustive list of pending or registered patents of Crystal Lagoons in the United States.
Equivalent patents have been applied for and/or registered in more than 180 countries and territories."  Dkt. 437-7,
*Declaration of Javiera De La Cerda in Support of Plaintiffs' Opposition to Defendant PAI's Motion for Summary
Judgment* at Ex. A, p.4.  The website then lists twenty different patents by their patent number, including the '514
Patent, without associating them with any patented articles.  *Id.*  In fact, besides listing the patent numbers, no other
information about the patents is provided.  While the webpage does acknowledge one patented article: "man-made
turquoise lagoons of virtually unlimited sizes," the webpage also ambiguously indicates there are both "recreational"
and "industrial" applications for the listed patents.  *Id.*  The '514 Patent is only "for recreational use" while Patents
8,454,838, 9,120,689, 8,518,269, and 9,051,193—which are listed on the 2019 website—are related to methods and
systems for treating water in industrial processes.  *Id.*  Moreover, other patents are included on the website and relate
to "floating lakes" and the treatment of the water in such lakes, not lagoons.  Clearly, not all patents on the website
apply to only man-made turquoise lagoons for recreational use, and the '514 Patent was not adequately associated
with this patented application as of December 2019.

[210] *Opposition* at 38.

[211] *Id.* at 39.

[212] *See* Dkt. 4879, *Minute Entry for Proceedings Held before Judge Robert J. Shelby*.

and the activity that is believed to be an infringement, accompanied by a proposal to abate the infringement, whether by license or otherwise."[213]  It is irrelevant "whether the defendant knew of the patent or knew of his own infringement."[214]  Instead, the § 287(a) notice inquiry focuses "on the action of the patentee, not the knowledge or understanding of the infringer."[215]  And here, similar to *Lubby Holdings LLC*, Plaintiffs cannot show that Crystal Lagoons provided Pacific with "[an] affirmative communication of a *specific* charge of infringement by a *specific* accused product or device"[216] prior to filing their Complaint against Pacific on August 5, 2021.[217]  Assuming Plaintiffs' notice-related arguments are factually accurate, they could suggest only Pacific's general awareness of the Patents, which is insufficient under § 287(a). There is no evidence of affirmative communications from Crystal Lagoons to Pacific about Pacific's alleged infringement of the Patents, nor is there evidence suggesting Mr. Severson or Pacific's employees were aware of a specific charge of infringement by a specific accused product or device.  Therefore, the court grants Pacific's Motion on this issue.  Because Plaintiffs do not allege Pacific engaged in post-complaint infringement,[218] and because Plaintiffs did not

---

[213] *Lubby Holdings LLC v. Chung*, 11 F.4th 1355, 1360 (Fed. Cir. 2021) (quoting *SRI Int'l, Inc. v. Advanced Tech. Lab'ys., Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997)).

[214] *Id.*

[215] *Id.* (citation omitted).

[216] *Id.* (alteration and emphasis in original).

[217] *See* Dkt. 161-1, *Complaint*.

[218] *Opposition* at 39.

provide the statutorily required notice to Pacific until it filed its Complaint in August 2021,[219]

Plaintiffs are statutorily barred from recovering infringement damages in this case.[220]

## CONCLUSION

For the foregoing reasons, the court GRANTS IN PART Pacific's Motion for Summary

Judgment.[221]  The court GRANTS Pacific's Motion with respect to the invalidity of the '520

Patent and direct and induced infringement of the '822 Patent.  The court also GRANTS

Pacific's Motion with respect to no induced infringement of the '514 Patent.  The court DENIES

Pacific's Motion with respect to invalidity and noninfringement of the '514 Patent, and the court

GRANTS Pacific's Motion with respect to infringement damages.  Because Defendants are

entitled to summary judgment with respect to all claims related to infringement of the Water

Treatment Patents, Defendants' outstanding Motion to Exclude Plaintiffs' Expert Jennifer

---

[219] Dkt. 161-1, *Complaint*.

[220] Plaintiffs also filed a Notice of Supplemental Authority on February 21, 2025, seeking to provide legal support for several of their § 287(a) arguments made at the hearing.  *See* Dkt. 482, *Plaintiffs' Notice of Supplemental Authority*.  Specifically, Plaintiffs cite *Wine Ry. Appliance Co. v. Enter. Ry. Equip. Co.*, 297 U.S. 387, 398 (1936) and *Arctic Cat Inc.*, 876 F.3d at 1368 for the proposition that "[t]he notice provisions of § 287 do not apply when a patentee never makes or sells a patented article."  Plaintiffs insist Pacific never met its "initial burden of production to articulate the products [it] believe[s] are unmarked 'patented articles' subject to § 287," which forecloses Pacific's § 287 challenge.  *Plaintiffs' Notice of Supplemental Authority* at 1–2 (citing *Arctic Cat Inc.*, 876 F.3d at 1368).  The court is not persuaded.  The initial burden described in *Arctic Cat Inc.* is "a low bar" whereby "[t]he alleged infringer need only put the patentee on notice that he or his authorized licensees sold specific unmarked products which the alleged infringer believes practice the patent."  *Arctic Cat Inc.*, 876 F.3d at 1368.  Pacific did so.  In its Motion, Pacific first cited to Plaintiffs' Final Infringement Contentions, which lists Plaintiffs' lagoons "that [admittedly] embody and/or practice the inventions of the asserted claims of the Asserted Patents."  *Motion* at 36 (citing Dkt. 378-33, *Plaintiffs' LPR 3.1 Final Infringement Contentions*).  Next, Pacific described how "Crystal Lagoons claims that each of its lagoons in the United States is patented under the '514 Patent."  *Id.* (citing *Plaintiffs' LPR 3.1 Final Infringement Contentions*).  Finally, Pacific cited Plaintiffs' answers to certain interrogatories as implicit admissions that Plaintiffs never marked these "lagoons in the United States with the word' patent' or the abbreviation 'pat.' together with the number of the '514 Patent or with an Internet address that associates the lagoon with the number of the '514 Patent."  *Id.* (citing Dkt. 378-22, *Plaintiffs' Answers and Objections to Cloward H2O LLC's Second Set of Interrogatories* at 2).  Because Pacific directed Plaintiffs to the lagoons believed to be unmarked patented articles subject to § 287, the burden then shifted to Plaintiffs to direct the court to specific facts showing there is a genuine issue for trial regarding damages.  *Universal Money Centers, Inc.*, 22 F.3d 1527 at 1529 (citations omitted).  Plaintiffs have not done so.  Accordingly, Pacific is entitled to summary judgment on this issue.

[221] Dkt. 380.

Norlin—who was retained to opine on the validity and infringement of the Water Treatment Patents—is DENIED AS MOOT.[222]

SO ORDERED this 25th day of February 2025.

BY THE COURT:

_____
ROBERT J. SHELBY
United States Chief District Judge

---

[222] Dkt. 375.